# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MICHAEL RIZZO,                                    :            **CIVIL ACTION NO. _____**

               Plaintiff,            :

         -against-                          :            **VERIFIED COMPLAINT**

NEW YORK CITY DEPARTMENT OF               :
SANITATION and CITY OF NEW YORK,

             Defendants.            :            **JURY TRIAL DEMANDED**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

       Plaintiff, MICHAEL RIZZO, through Counsel, states for his Verified Complaint as follows:

## PRELIMINARY STATEMENT

1. Plaintiff, Michael Rizzo, stands before this honorable Court seeking justice and vindication of his fundamental rights and resolute commitment to his sincerely held religious beliefs. With a career spanning over two decades as a dedicated Sanitation Worker within the New York City Department of Sanitation ("DSNY"), Mr. Rizzo's unwavering devotion to his duties and his community exemplifies the very essence of public service.

2. From his earliest days of service, when he began his civil service journey at the tender age of twenty-three, Plaintiff's dedication to his role as a Sanitation Worker remained steadfast. The events of September 11, 2001, indelibly etched in the memories of all Americans, thrust Mr. Rizzo and his colleagues into the heart of an unprecedented crisis, a crisis to which he responded without hesitation, without complaint, and without the protective gear afforded to other agencies.

3. Through weather conditions that tested the limits of human endurance, Mr. Rizzo's dedication to his duties never wavered. He navigated the myriad challenges of his role, from clearing snow-choked streets during the city's worst blizzards to rendering aid in emergencies

ranging from car accidents to house fires, from thwarting robberies to aiding ambulances stranded in the snow.

4.   His commitment to his fellow New Yorkers, as well as the City of New York itself, earned him accolades and recognition, including the Certificate of Achievement for Attendance and Service. Yet, this recognition was more than a mere token; it was a testament to his unwavering commitment and undeniable impact.

5.   When the COVID-19 pandemic swept across the globe, Plaintiff, an essential worker, continued to carry out his duties, ensuring that his city remained clean and functional despite the risks. As the pandemic raged on, he and his colleagues found themselves without adequate protective equipment, forced to rely on donations from private citizens to safeguard themselves as they fulfilled their vital roles.

6.   As the pandemic's tumultuous waves continued, a new challenge emerged in the form of a Vaccine Mandate. Despite his long-standing service, Mr. Rizzo's deeply rooted religious beliefs clashed with this Mandate, leaving him at a crossroads between his commitment to his faith and his dedication to his profession. In good faith, he sought reasonable accommodation, a bridge between his unwavering beliefs and this new condition of employment.

7.   His request was met with a dismissive denial, the very foundation of his faith and conscience seemingly cast aside. The initial denial by the DSNY, bereft of reasoning or clarity, left Mr. Rizzo grappling for understanding and recourse. His calls and emails to the DSNY went unanswered, leaving him isolated and bewildered in the face of a profound injustice. The subsequent appeal to the Citywide Panel demonstrated Mr. Rizzo's unyielding determination to uphold his beliefs while continuing to serve his community. Yet, these efforts were met with further rejection, compounding the anguish he already bore. The Citywide Panel's response,

devoid of any explanation, simply declared, "does not meet criteria," leaving Mr. Rizzo in a state of uncertainty and disillusionment.

8.   In a just and transparent process, individuals deserve to understand the basis upon which their deeply-held beliefs are denied consideration. The Defendants, however, failed to provide Mr. Rizzo with even a semblance of justification, leaving him in the dark regarding the reasoning behind their decisions. This lack of communication, and refusal to engage in an interactive process or cooperative dialogue, compounded the emotional turmoil Mr. Rizzo was already enduring.

9.   Defendants, bereft of any rightful basis, rejected the Plaintiff's religious convictions, a role they are neither qualified nor entitled to undertake. Mr. Rizzo has demonstrated his unwavering faith diligently, providing a comprehensive account of how his beliefs conflict with the Vaccine Mandate. Despite the relentless demands of a strenuous job, working twelve hour shifts, seven days a week, Mr. Rizzo undertook the task of articulating his beliefs, reflecting a commitment that goes beyond the physical realm.

10.  Yet, rather than engaging in an interactive process as required, the Defendants' response was marked by their refusal to comprehend or engage meaningfully with Mr. Rizzo's profound religious convictions. Despite the lack of clarity or communication on the part of the Defendants, Mr. Rizzo made diligent attempts to articulate his faith to the Defendants. Yet, they ceased any dialogue, devoid of good faith efforts to understand or accommodate his religious obligations. As he navigated the appeals process, Mr. Rizzo was met not with explanations, but with inscrutable judgments that contradicted the fundamental tenets of fairness and justice.

11.  Now, unjustly terminated from a position he held with honor for more than two decades, Mr. Rizzo stands before this Court seeking redress for the egregious violation of his civil rights.

He seeks not only to restore his rightful place within the Department of Sanitation but to affirm the sanctity of individual religious convictions in the face of governmental mandates. This lawsuit is a pursuit of justice, an assertion of civil rights, and a testament to the steadfast faith of a man who has devoted his life to service.

12. The Defendants, the Department of Sanitation and the City of New York, have not only dismissed a dedicated public servant's sincerely held religious beliefs but have also subjected him to irreparable harm, distress, and undue duress. This lawsuit seeks to restore justice and dignity to a man who has given so much of himself to his city and his faith, and to safeguard religious freedom and the sanctity of personal convictions in a just society.

## PARTIES

13. Plaintiff is a citizen of the United States and a resident and domiciliary of Nassau County, State of New York.

14. Plaintiff was a Sanitation Worker who was employed by Defendants DSNY and the City of New York for over twenty years. Plaintiff was terminated on February 11, 2022 because Defendants refused to reasonably accommodate his religious beliefs.

15. Plaintiff's sincerely held religious beliefs as a Roman Catholic require him to refuse the COVID-19 vaccine because, among other religious reasons, they are produced, developed, and/or tested with aborted fetal cell lines.

16. Defendant New York City Department of Sanitation is a municipal corporation duly organized and existing under and by virtue of the Laws of the State of New York. The New York City Department of Sanitation's principal office is located at 125 Worth Street, New York NY 10013.

17. Defendant City of New York is a municipality organized and existing under the laws of New York State. The City of New York was and is responsible for the policy, practice, supervision, and conduct of its Officers and Agencies at all relevant times hereto. The City of New York's principal office is located at 1 Centre Street, New York NY 10007.

18. At all times herein mentioned, Defendants have been an "employer" as defined by Title VII of the Civil Rights Act of 1964, the NYSHRL (N.Y. Exec. Law § 292(5)) and the NYCHRL (N,Y.C. Admin. Code § 8-102).

19. At all times herein mentioned, Defendants DSNY and NYC employed no fewer than fifteen (15) persons.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to hear claims so related under the New York State Human Rights Law and the New York City Human Rights Law.

21. Venue is proper in this district under 28 U.S.C. §1391(b) because Defendant maintains a principal place of business within this District and a substantial part of the events giving rise to the cause of action arose here.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

22. All conditions precedent to filing claims under Title VII have been performed or have occurred. In particular, Plaintiff filed a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"); and the EEOC issued a right-to-sue notice on May 18, 2023.

23. This case is brought within 90 days of receipt of the EEOC notice.

24. Plaintiff has fully exhausted his administrative remedies and is entitled to file in the district court. This Complaint is filed within the appropriate time.

**STATEMENT OF FACTS**

25. Plaintiff, Michael Rizzo, (hereinafter "Plaintiff" or "Mr. Rizzo") was employed as a Sanitation Worker for DSNY from approximately September 5, 2000, up until his wrongful termination on February 11, 2022.

26. Mr. Rizzo was employed by Defendants DSNY and the City.

27. Mr. Rizzo was a senior employee in his district.

28. Mr. Rizzo was a dedicated public servant for over twenty-one years.

29. On January 18, 2008, DSNY awarded Mr. Rizzo with a Certificate of Achievement for Attendance and Service.

30. In early 2020, COVID-19 began circulating in New York City.

31. In March of 2020, the Governor of New York State issued an executive order closing "non-essential" businesses.

32. As an "essential worker" Mr. Rizzo worked throughout the COVID-19 pandemic.

33. For a significant period during this time, the Defendants did not provide Mr. Rizzo and other DSNY employees with Personal Protective Equipment, such as masks and gloves, or hand sanitizer.

34. Defendants never trained or taught DSNY employees how to remain safe while working during the COVID-19 pandemic.

35. On September 13, 2021, the Defendants implemented the City's policy which required all DSNY employees to either submit weekly negative COVID-19 PCR test results or provide proof of vaccination in order to work.

36. On October 20, 2021, Dr. Dave Chokshi, the New York City Commissioner of Health
and Mental Hygiene, issued an Order ("Vaccine Mandate") requiring employees of New York
City ("City Workers") to receive a COVID-19 vaccine by October 29, 2021.

37. The Order stated in pertinent part: "Nothing in this Order shall be construed to prohibit
any reasonable accommodation otherwise required by law."

38. On October 23, 2021, DSNY notified employees that employees who did not comply
with the Vaccine Mandate would be placed on Leave Without Pay ("LWOP") on November 1,
2021, and that employees who submitted a request for accommodation by October 27, 2021
would be allowed to continue working while their request was pending.

39. On October 27, 2021, Mr. Rizzo notified DSNY that his sincerely held religious beliefs
conflicted with the Vaccine Mandate and requested a reasonable accommodation to the Vaccine
Mandate.

40. On October 28, 2021, Ryan David, Director of the DSNY's Office of Equity, Diversity &
Inclusion, emailed Mr. Rizzo and acknowledged receipt of Mr. Rizzo's request for an
accommodation. The e-mail also notified Mr. Rizzo that he was permitted to continue working
while remaining unvaccinated while his accommodation request was under consideration,
provided that he submit weekly negative PCR test results.

41. The same day, DSNY promulgated its Policy and Administrative Procedure 2021-03
regarding the Vaccine Mandate ("DSNY COVID-19 Policy"). The DSNY COVID-19 Policy
stated that DSNY employees who were granted reasonable accommodations would have to
submit proof of a weekly negative COVID-19 PCR test result. Employees could utilize on-site
testing at DSNY locations or seek weekly tests elsewhere. In the event DSNY did not provide or
ceased to provide on-site testing at DSNY locations, accommodated employees were eligible for

up to three hours per week of excused leave for the purpose of receiving a weekly COVID-19 PCR test.

42. On November 5, 2021, Mr. Rizzo received an e-mail from Christopher Morella, Associate Counsel for DSNY, requesting "supplemental information to assist DSNY with making a determination as to [Mr. Rizzo's] request". The e-mail stated in pertinent part:

> Before DSNY issued a decision regarding your request, you are encouraged to provide additional information regarding the following:
> - Please provide additional information regarding how complying with the vaccination mandate will conflict with your sincerely held religious belief. This information may include how long you have held this belief or how your belief has impacted other medical decisions you have made in the past.
> - Please provide additional information to help DSNY understand how your objection is based on your religion. This may include additional information about your religious practices or documentation from clergy or others with knowledge of your religion.

43. DSNY never notified Mr. Rizzo that he should or could have had legal or union representation before having Morella, DSNY's attorney, contact Mr. Rizzo.

44. On or about November 7, 2021, Mr. Rizzo called DSNY, specifically either Morella or Ryan David, Director of the DSNY's Office of Equity, Diversity & Inclusion, and left a voicemail asking for a return phone call regarding the supplemental information requested. Mr. Rizzo did not receive a response.

45. Mr. Rizzo did not understand what supplemental information was being requested but he did his best to articulate his religious beliefs clearly while under time constraints and working twelve hour shifts seven days a week. On November 10, 2021, Mr. Rizzo responded to Morella's e-mail:

> Apologies I have not had a chance to reply to you earlier. As you may know we have been on 12HR shifts 7 days a week and finding dedicated time to write back and not fall asleep has been difficult to come by.
>
> I am a bit confused as to what supplemental information DSNY is requesting I submit in

order to make a determination to grant my request for religious exemption. As stated in my initial request I was born and raised Catholic and have completed all my sacraments from Baptism to Confirmation, and most recently performed my sacred duty of becoming Godfather to 4 nieces and nephews. Is the department requesting me to submit documentation of my completed sacraments?

I am a simple man, I keep my body clean from tattoos, drugs, alcohol, smoking, meds and other substances that would alter me, my body or goes against my beliefs. My Religious beliefs and practices have strengthened throughout my life experiences as well as through my continued prayer with God. Through prayer together God and I determine what life I am to lead that will result in joining my family in Heaven.
1 Corinthians 3:16-17: *"You are God's temple and God's Spirit dwells in you. If anyone destroys God's temple, God will destroy him. For God's temple is Holy, and you are that temple."*
1 Corinthians 6:19-20: *"Your body is a temple of the Holy Spirit within you, whom you have from God. You are not your own, for you were bought with a price, so glorify your body."*

Conscience as the Catholic Church teaches us is the most secret core and sanctuary of a man, there he is alone with God, whose voice echoes in his depths. By asking me to provide additional supplemental information does the department mean for me to divulge what is discussed between God and myself in prayer?

St Paul wrote: *"In all his activity a man is bound to follow his conscience in order that he may come to God, the end and purpose of life. It follows that he is not to be forced to act in a manner contrary to his conscience. Nor on the other hand, is he to be restrained from
acting in accordance with his conscience especially in matters religious."*

The Catholic Church teaches us that a person may refuse medical intervention, including a vaccination, if his or her conscience comes to this judgment. A person is morally required to obey his or her conscience and so I have practiced my faith by declining medical interventions in the past. There is no authoritative Church teaching universally obliging Catholics to receive any vaccine and so vaccination must be voluntary and made by the person who is the potential recipient, not by public health authorities or by other individuals who might judge differently in their own situations.

Vaccination is not a universal obligation, and a person must obey their own conscience. Therefore, if a Catholic comes to an informed judgment they should not receive a vaccine, then the Catholic Church requires that the person follow this judgment of conscience through prayer and refuse the vaccine. The Catechism is clear: *"Man has the right to act in conscience and in freedom so as personally to make moral decisions. 'He must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters.'"*

The burden of having our livelihood taken away continues to cause tremendous amounts of stress on me and my brothers and sisters. I believe we all have the right not to be hindered in leading our lives in accordance with our religious conscience beliefs and practices.

1 Corinthians 15:44: *"It is sown a natural body; it is raised a spiritual body. If there is a natural body, there is also a spiritual body"*

46. Mr. Rizzo received no response from the DSNY.

47. On November 18, 2021, the DSNY denied Mr. Rizzo's request for reasonable accommodation to the Vaccine Mandate, stating: "Because the information you provided in support of your request has not sufficiently demonstrated to DSNY that there is a basis for granting you an exemption to the above Order, <u>DSNY is denying your request for an accommodation</u>."

48. DSNY gave Mr. Rizzo two options: (a) submit an appeal to the New York City Vaccine Mandate Reasonable Accommodation Appeals Panel ("Citywide Panel"), or (b) submit an appeal to Scheinman Arbitration and Mediation Services ("SAMS") which was subject to the terms of waiving his right to sue in the event his appeal was denied. He was given until November 23, 2021 to submit an appeal to either the Citywide Panel or SAMS.

49. On November 19, 2021, Mr. Rizzo called Christopher Morella, Associate Counsel for DSNY regarding his denial but received no response. On the same day, he e-mailed Morella again, asking him to call him, and also asking if he had received Mr. Rizzo's November 10, 2021 e-mail which provided supplemental information. Morella did not respond.

50. On November 23, 2021, Mr. Rizzo submitted his appeal to the Citywide Panel:

Appeal Option 1

I would like to appeal the decision received regarding my request for religious exemption as it does in fact violate my sincerely held religious beliefs, practices, and observances.

In my reply to the request of additional information I responded with open ended questions requesting a bit more clarity on what additional information the department was requesting I supply. I never received clarification on the additional information required and replied with my understanding to the vaguely posted questions to the best of my ability.

The questions and my responses addressing those question posted to me were as follows:

**How does complying with the vaccination mandate conflict with my sincerely held religious beliefs?**
*"I am a simple man, I keep my body clean from tattoos, drugs, alcohol, smoking, meds and other substance that would alter me, my body or goes against my beliefs."*

1 Corinthians 3:16-17:  *"You are God's temple and God's Spirit dwells in you. If anyone destroys God's temple, God will destroy him. For God's temple is holy, and you are that temple."*

1 Corinthians 6:19-20:  *"Your body is a temple of the Holy Spirit within you, whom you have from God. You are not your own, for you were bought with a price, so glorify your body."*

*"Conscience as the Catholic Church teaches us is the most secret core and sanctuary of a man, there he is alone with God, whose voice echoes in his depths."*

*"Therefore, if a Catholic comes to an informed judgment they should not receive a vaccine, then the Catholic Church requires that the person follow this judgment of conscience decision through prayer and refuse the vaccine."*

What this means is that I keep my body clean as intended by God, I do not desecrate my body with that which God would consider sinful, including but not limited to vaccines that were created using human cell lines derived from abortion during any stage of the vaccine's development, including the testing phase. The bodies of innocent victims that were aborted deserve the same respect as any other person, not to be treated as a commodity to be scavenged for body parts. The body is the Temple, and we are compelled to protect it from defilement.

Job 31:15:  *"Did not he who made me in the womb make them? Did not the same one form us both within our mothers?"*

Psalm 127: 3:  *"Children are heritage from the Lord, offspring a reward from him"*

**Include how long I have held my beliefs:**
"As stated in my initial request I was born and raised Catholic and have completed all my sacraments from Baptism to Confirmation."

"My Religious beliefs and practices have strengthened throughout my life experiences as well as through my continued prayer with God."

What this means is that I was born into a Catholic home, both my parents are Catholic. I was Baptized after 3 weeks and completed all my sacraments from Baptism to Conformations.
As I have grown older and have gone through my trials and tribulations I have continually sought God's guidance which has helped me learn more of what we must do to please God and allowed me to grow stronger and more knowledgeable in my beliefs.

**How have my beliefs impacted other medical decisions I have made in the past?**
"A person is morally required to obey his or her conscience and so I have practiced my faith by declining medical interventions in the past.

What this means is that in the past when certain medical interventions have been recommended, I have chosen to decline them if I learn that they may be considered sinful in the eyes of God. The Church warns that we must always obey our conscience as this is where God's voice echoes to us and if we were to deliberately go against it, we would condemn ourselves.

**Include information about my religious practices:**
"Through prayer together God and I determine what life I am to lead that will result in joining my family in Heaven."

What this means is that I pray, I pray to God so that I can make certain that I am living my life as he intended. God blessed me with life, and I keep myself from intentionally sinning against him.

We (DSNY) have worked nonstop during the heightened stages of not only this pandemic but during other times when the city has needed us most. Through God's hand I have been kept healthy and from harm's way. I am not looking for praise or acolytes, I just want to continue to work and provide for my family without being hindered because of my religious beliefs.

51. On January 24, 2022, Mr. Rizzo was notified that the Citywide Panel denied his appeal.

There was no reasoning provided for the denial:

> The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request.

> The decision classification for your appeal is as follows: Does Not Meet Criteria

52. No one from the Citywide Panel contacted Mr. Rizzo regarding his appeal before denying his request for a reasonable accommodation.

53. On January 27, 2022, Mr. Rizzo was discharged from work. Mr. Rizzo's name was in red on the operations board in the garage stating Mr. Rizzo could not work. Mr. Rizzo was caused embarrassment and damage to his reputation in front of his co-workers and superiors.

54. On January 28, 2022, Defendants placed Mr. Rizzo on Leave Without Pay ("LWOP").

55. On February 11, 2022, DSNY sent a letter by e-mail and overnight mail notifying Mr. Rizzo that his employment had been terminated effective February 11, 2022, and that his health insurance was also terminated the same day.

56. On June 17, 2022, the DSNY sent Mr. Rizzo a letter by overnight mail offering Mr. Rizzo "the opportunity to return to [his] employment if [he] become[s] fully vaccinated".

57. On or about February 9, 2023, the New York City Department of Health and Mental Hygiene amended the Vaccine Mandate, no longer requiring exclusion from the workplace for City Workers who do not provide proof of COVID-19 vaccination. However, the Vaccine Mandate still requires City Workers to provide proof of COVID-19 vaccination.

58. Soon thereafter, Mr. Rizzo contacted DSNY Human Resources and requested reinstatement.

59. On March 8, 2023, DSNY acknowledged Mr. Rizzo's request to return to work. The letter notified Mr. Rizzo that DSNY required him to waive his rights to backpay in order to return to work. Mr. Rizzo did not sign any waiver.

60. Mr. Rizzo has been unable, despite reasonable efforts, to find comparable employment.

61. Mr. Rizzo remains ensnared in an unrelenting dilemma, continuously suffering from the constant and persistent coercion of being forced to choose between upholding his cherished religious beliefs and returning to his employment.

62. The harrowing trajectory of Mr. Rizzo's plight has exacted a profound toll, not only on his immediate circumstances but on the very fabric of his being. His pursuit of a reasonable accommodation was not confined to a mere procedural battle; rather, it became an ordeal that has consumed nearly every facet of his existence over the past two years. From his initial appeal for exemption, the subsequent denial, and the labyrinthine process that followed, each juncture has weighed heavily upon him, rendering days as moments lost, and moments as treasures beyond reclamation.

63. The consequences of this protracted struggle are both immeasurable and deeply poignant. The time lost during this grueling process, time that could have been enjoyed with loved ones, including his cherished Godchildren, or devoted to the pursuit of his own family, has instead been squandered in navigating a quagmire of uncertainty and distress. The financial repercussions of his termination, and the subsequent inability to secure comparable employment, have cast a shadow of instability over his life. His endeavors to safeguard his basic needs, to keep a roof overhead and maintain a sense of dignity, have been fraught with challenges and fears, leading to the disheartening experience of having utilities shut off and grappling with the haunting prospect of losing his home.

64. The weight of this ordeal has taken a severe toll on Mr. Rizzo's mental, emotional, and psychological well-being. The burden of uncertainty, the relentless fight against depression, and the ceaseless worry about his future have been constant companions. His health has suffered, with escalating stress levels contributing to significant weight loss, elevated blood pressure and

sleepless nights characterized by waves of anxiety about the unknown. The inability to access medical or psychological care due to the loss of health insurance has further compounded his challenges, leaving him to navigate these profound hardships largely on his own.

65. The emotional trauma is further exacerbated by the indignity he endures, a sentiment borne from the unjust termination that paints him as disposable, as if his decades of dedicated service were inconsequential. The opportunity for a dignified retirement has been snatched away, leaving him with a sense of abandonment and betrayal after twenty-one years of unswerving commitment to his city. The pursuit of happiness, so vital to the human experience, has been marred by ridicule and disregard, leaving him adrift in a sea of frustration and unfulfilled aspirations.

66. The saga of Mr. Rizzo's adversity extends beyond the boundaries of economic strain and emotional distress—it has encroached upon his very health and well-being. A hero who responded to the call of duty during the calamity of 9/11, he faced life's trials with unwavering commitment and fortitude, demonstrating the essence of selflessness and dedication to his community. His valor during 9/11 is indelibly etched in the annals of his service, yet the very medical care that he rightfully deserved, having been exposed to the dangers of that catastrophic event, was denied him. The obligation of ensuring his well-being, of providing access to the necessary medical checkups to safeguard against latent repercussions from his heroic response, has been wantonly discarded.

67. Compelled to pay out-of-pocket for dental procedures initiated before his termination, his journey has been punctuated by the lack of means to engage in necessary follow-ups with medical practitioners, truncating his pursuit of comprehensive healthcare. The privilege of

accessing essential medical services that should have been a natural consequence of his heroic service now remains an elusive mirage, underscoring the gravity of the deprivation he endures.

68. The enduring impact of this tribulation is an indelible stain on Mr. Rizzo's life. He has been forced to endure not only the practical repercussions of his termination but also the emotional turmoil and isolation that accompany it. The weight of this injustice defies quantification, as the very fabric of his existence has been irrevocably altered by a series of events that disregarded his rights, his dignity, and his unwavering commitment to his faith and community.

## CLAIMS

### FIRST CAUSE OF ACTION
### (Failure to Accommodate in Violation of Title VII of the Civil Rights Act of 1964

69. Plaintiff reincorporates the foregoing as if fully written herein.

70. Title VII was enacted with the purpose of prohibiting employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. §2000e *et seq*.

71. Under Title VII, it is an unlawful employment practice for an employer:

(1) to fail or to refuse to hire or discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C §2000e-2(a).

72. Title VII imposes an affirmative obligation on employers to make reasonable accommodations for their employees' religious beliefs and practices. 42 U.S.C §2000e(j); 20 C.F.R. §1605.2(b).

73. The term "religion" includes all aspects of religious observance and practice, as well as belief. 42 U.S.C §2000e(j). Religious beliefs as stated in 42 U.S.C §2000e(j) also include "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views."  29 C.F.R. 1605.1.

74. It is well-settled law, acknowledged by the Supreme Court of the United States all the way down to the district courts and administrative agencies in between, that an individual seeking to demonstrate a sincerely held religious belief need not prove that his belief is part of the recognized dogma of a religious sect. *Widmar v. Vincent*, 454 U.S. 263 (1981)("The beliefs need not be consistent with the dogma of any organized religion, whether to not the plaintiffs belong to any recognized religious organization."); *Bowles v. NYCTA*, (S.D.N.Y. 2006)(holding whether the church prohibits what he believes it prohibits was irrelevant); *Redmond v. GAF Corporation*, 574 F.2d 897 (7th Cir. 1978)("Title VII is not restricted to protecting those practices which are mandated or prohibited by a tenet of the religion."); *What You Should Know: Workplace Religious Accommodation*, Equal Employment Opportunity Commission, (03-06-2014), https://www.eeoc.gov/laws/guidance/what-you-should-know-workplacereligiousaccommodation ("a religious practice may be sincerely held by an individual even if newly adopted, not consistently observed, or different from the commonly followed tenets of the individual's religion.").

75. "The fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee." 29 C.F.R. 1605.1.

76. An employee's belief or practice can be "religious" under Title VII even if the employee is affiliated with a religious group that does not espouse or recognize that individual's belief or

practice, or if few – or no – other people adhere to it. *Welsh v. U.S.*, 398 U.S. 333, 343 (finding that petitioner's beliefs were religious in nature although the church to which he belonged did not teach those beliefs); *Thomas v. Rev. Bd. Of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715 (1981) (disagreement among sect workers as to whether their religion made it sinful to work in an armaments factory irrelevant to whether belief was religious in nature because "[t]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect.").

77. The Supreme Court of the United States cautions: "it must be remembered that, in resolving these exemption problems, one deals with the beliefs of different individuals who will articulate them in a multitude of ways. In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith must be given great weight." *U.S. v. Seeger*, 85 S.Ct. 850, 863, 380 U.S. 163, 184 (1965); *See also EEOC v. United Health Programs of Am., Inc.*, 213 F. Supp. 3d 377, 393 (E.D.N.Y. 2016) ("Delineating the meaning of 'religion' for purposes of Title VII often requires resort to First Amendment cases, where non-traditional religious practices are a frequent source of litigation."). It is impermissible "to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989).

78. Under Title VII, the burden is on the employer to demonstrate "that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employers' business." 42 U.S.C. §2000e(j).

79. Undue hardship is shown "when a burden is substantial in the overall context of an employer's business". *Groff v DeJoy*, ___US___ , ___, 143 S Ct 2279, 2294 (2023). "[A]n

employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 2295 (internal citations omitted).

80. Mr. Rizzo has a bona fide religious belief that conflicts with the Vaccine Mandate.

81. Mr. Rizzo cannot receive the COVID-19 vaccine because to do so would violate his sincerely held religious beliefs.

82. Mr. Rizzo notified the Defendants that his sincerely held religious beliefs conflicted with the Vaccine Mandate and requested a reasonable accommodation.

83. Mr. Rizzo was placed on LWOP and then terminated for failure to comply with the Vaccine Mandate.

84. Defendants did not engage in an interactive process to determine the feasibility of accommodating Mr. Rizzo.

85. Mr. Rizzo made every attempt to articulate and explain his sincerely held religious beliefs to Defendants.

86. Defendants made no good faith effort to Mr. Rizzo's need for a religious accommodation.

87. Defendants unreasonably ceased any dialogue with Mr. Rizzo regarding his request for accommodation.

88. Defendants accommodated other DSNY employees in the same or similar employment position as Mr. Rizzo.

89. It would not cause an undue hardship to accommodate Mr. Rizzo with weekly PCR testing.

90. As a direct and proximate result of Defendants' failure to accommodate, Mr. Rizzo suffered, and continues to suffer, severe mental anguish and emotional distress, including but not

limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages in an amount to be determined at trial.

91. Mr. Rizzo is entitled to injunctive and other equitable relief, including front pay and back pay, compensatory damages, including pain and suffering, and punitive damages at an amount to be determined at trial, and attorney's fees.  42 U.S.C. §§ 1981a(a)(1), 2000e-5(g)(1), (k).

92. Under Title VII, Plaintiffs can "recover punitive damages . . . [by] demonstrat[ing] that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

93. The United States Supreme Court held that under Title VII, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999).

94. Defendants engaged in discrimination by failing to accommodate Mr. Rizzo and rejecting his sincerely held religious beliefs.

95. Defendants acted with malice.

96. Defendants acted with reckless indifference to Mr. Rizzo's federally protected rights.

97. The City promulgated guidance to private sector employers regarding religious accommodation requests to the City's COVID-19 Vaccine Mandate, and acknowledged the refusal to receive the COVID-19 vaccine based upon the use of aborted fetal cell lines in the testing, research, development, and/or manufacturing of the vaccines.

98. The Defendants knew that they were required under Title VII to engage in a good faith discussion with Mr. Rizzo in an attempt to understand his accommodation needs. However, the Defendants did not engage in such good faith interactive process.

99. The Defendants knew that Mr. Rizzo's beliefs qualified as religious under the law. There is no common sense reading of his request where Mr. Rizzo's objection to the Vaccine Mandate is not based on sincerely held religious beliefs. However, Defendants categorically rejected Mr. Rizzo's religious beliefs.

100.     The City's FAQ on New York City Employees Vaccine Mandate recognized that "[a] sincerely held religious, moral or ethical belief may be a basis for a religious accommodation."

101.     The Defendants' Equal Employment Opportunity Police, promulgated by Department of Citywide Administrative Services, specifically cites to United States Equal Employment Opportunity Commission guidance on religious discrimination, and explicitly notes that "the law protects not only people who belong to traditional organized religions… and also other who have sincerely held religious, ethical, or moral beliefs."

102.     Defendants absolutely knew that by refusing to acknowledge that Mr. Rizzo's religious beliefs were entitled to legal protection they were violating Title VII.

## SECOND CAUSE OF ACTION

### (Disparate Impact Discrimination
### in Violation of Title VII of the Civil Rights Act of 1964)

103.     Plaintiff reincorporates the foregoing as if fully written herein.

104.     Disparate impact discrimination is also barred by Title VII, and "occurs when an employer uses facially neutral policies or practices that a have a disproportionately adverse effect on protected groups." *Ricci v. DeStefano,* 557 U.S. 557, 577–78 (2009).

21

105.       "Disparate-impact claims do not require a showing of discriminatory intent."

*United States v. Brennan,* 650 F.3d 65, 90 (2d Cir. 2011). Rather, "a plaintiff establishes a *prima*

*facie* violation by showing that an employer uses 'a particular employment practice that causes a

disparate impact on the basis of race, color, religion, sex, or national origin.' " *Ricci,* 557 U.S. at

578, 129 S.Ct. 2658 (citing 42 U.S.C. § 2000e–2(k)(1)(A)(i)).

106.       An employer can rebut a *prima facie* case "by demonstrating that the practice is

'job related for the position in question and consistent with business necessity.' " *Id.* The

plaintiff, in turn, can rebut that showing by "showing that the employer refuses to adopt an

available alternative employment practice that has less disparate impact and serves the

employer's legitimate needs." *Id.* (citing §§ 2000e–2(k)(1)(A)(ii) and (C)).

107.       "The basis for a successful disparate impact claim involves a comparison between

two groups—those affected and those unaffected by the facially neutral policy." *Tsombanidis v.*

*W. Haven Fire Dep't,* 352 F.3d 565, 575 (2d Cir.2003)

108.       The Defendants' Vaccine Mandate caused a disparate impact on the basis of

religion.

109.       The Defendants refused to adopt alternative employment practices, such as

weekly PCR testing, which serves the Defendants' legitimate business needs.

110.       Weekly PCR testing would minimize the spread of COVID-19 in the workplace.

111.       Masking would minimize the spread of COVID-19 in the workplace.

112.       Health screenings would minimize the spread of COVID-19 in the workplace.

113.       Antibody testing would minimize the spread of COVID-19 in the workplace.

114.    There are other mitigation strategies that could have been implemented instead of the Vaccine Mandate which would have allowed religious people who oppose the COVID-19 vaccine to remain working.

115.    Those who religiously oppose the COVID-19 vaccination were unable to continue working due to the Vaccine Mandate.

116.    Those who did not religiously oppose the COVID-19 vaccination were able to continue working.

117.    As a direct and proximate result of Defendants' discrimination, Mr. Rizzo suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages in an amount to be determined at trial.

118.    Mr. Rizzo is entitled to injunctive and other equitable relief, including front pay and back pay, compensatory damages, including pain and suffering, and punitive damages at an amount to be determined at trial, and attorney's fees.  42 U.S.C. §§ 1981a(a)(1), 2000e-5(g)(1), (k).

### **THIRD CAUSE OF ACTION**

### **(Failure to Accommodate in Violation of the New York City Human Rights Law)**

119.    Plaintiff reincorporates the foregoing as if fully written herein.

120.    At all relevant times, the NYCHRL has been in full force and effect and has applied to Defendants' conduct.

121.    Pursuant to the NYCHRL,

It shall be an unlawful discriminatory practice for an employer or an employee or agent thereof to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion, … and the employer shall make reasonable accommodation to the religious needs of such person.

N.Y.C. Admin. Code § 8–107(3)(a).

122.    At all relevant times, the Defendants had the power to hire, promote, and discharge Mr. Rizzo.

123.    Mr. Rizzo has sincerely held religious beliefs which prohibit him from receiving the COVID-19 vaccines.

124.    The Defendants required Mr. Rizzo to receive the COVID-19 vaccine to retain his employment.

125.    Mr. Rizzo requested a reasonable accommodation to the Defendants' requirement that he receive the COVID-19 vaccination.

126.    Defendants denied Mr. Rizzo's request for a reasonable accommodation.

127.    Defendants failed to provide Mr. Rizzo with a reasonable accommodation of his religious observance, practice, and belief (i.e., that he is prohibited from taking the COVID-19 vaccine), which precludes him from complying with the Vaccine Mandate.

128.    In 2005, the New York City Council amended the NYCHRL by passing the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), N.Y.C. Local L. No. 85.

In amending the NYCHRL, the City Council expressed the view that the NYCHRL had been "construed too narrowly" and therefore "underscore[d] that the provisions of New York City's Human Rights Law are to be construed independently from similar or identical provisions of New York state or federal statutes." Restoration Act § 1. To bring about this change in the law, the Act established two new rules of construction. First, it created a "one-way ratchet," by which interpretations of state and federal civil rights statutes can serve only " 'as a *floor* below which the City's Human Rights law cannot fall.' " *Loeffler,* 582 F.3d at 278 (quoting Restoration Act § 1). Second, it amended the NYCHRL to require that its provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights

24

laws, including those laws with provisions comparably-worded to provisions of this title[,]
have been so construed." Restoration Act § 7 (amending N.Y.C. Admin. Code § 8–130).

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *see also*

*Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.,* 814 F. Supp.2d 355, 365-66 (S.D.N.Y.

2011) ("[T]he Second Circuit has directed the district courts to conduct an analysis of the

NYCHRL claims that is separate from that undertaken for Title VII and New York State Human

Rights Law claims." (citing *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 278-79 (2d Cir.

2009)).

129.    In 2011, New York City enacted the Workplace Religious Freedom Act,

amending sections 8-102 and 8-107 of the NYCHRL, and adopting a stiffer standard for

assessing undue hardship. The committee report accompanying this amendment stated that the

City Council's intention is "to provide greater protection to workers under the City Human

Rights Law than the federal, and even the State, human rights provisions provide." N.Y.C.

Council, Report of Committee on Civil Rights on Proposed Int. No. 632, Aug. 16, 2011. "The

standard for assessing undue hardship under the NYCHRL differs from that under federal law

when considering requests for reasonable accommodation." *COVID-19 & Employment*

*Protections*, "Vaccinations," NYC Human Rights, accessible at

https://www1.nyc.gov/site/cchr/community

/covid-employment.page (last updated 11/1/2021).

130.    The New York City Human Rights Law explicitly defines undue hardship:

"Reasonable accommodation", as used in this subdivision, shall mean such accommodation
to an employee's or prospective employee's religious observance or practice as shall not
cause undue hardship in the conduct of the employer's business. The employer shall have the
burden of proof to show such hardship. "Undue hardship" as used in this subdivision shall
mean an accommodation requiring significant expense or difficulty (including a significant
interference with the safe or efficient operation of the workplace or a violation of a bona fide

seniority system).

N.Y.C. Admin. Code § 8-107(3)(b).

131.    Mr. Rizzo was able to perform the essential duties of his job with a reasonable accommodation.

132.    Accommodating the Mr. Rizzo would not require significant expense or difficulty from the Defendants.

133.    Accommodating Mr. Rizzo would not significantly interfere with the safe or efficient operation of the Defendants' workplace.

134.    Accommodating the Mr. Rizzo would not require the Defendants to violate a bona fide seniority system.

135.    Defendants accommodated other DSNY employees with weekly PCR testing.

136.    The NYCHRL prohibits Defendants from denying Mr. Rizzo's request for a reasonable accommodation until it engaged in a cooperative dialogue with the Mr. Rizzo:

The determination that no reasonable accommodation would enable the person requesting an accommodation to satisfy the essential requisites of a job or enjoy the right or rights in question may only be made after the parties have engaged, or the covered entity has attempted to engage, in a cooperative dialogue.

N.Y.C. Admin. Code § 8-107 (28)(e).

137.    However, Defendants violated the NYCHRL by denying Mr. Rizzo's request for a reasonable accommodation without engaging in a cooperative dialogue.

138.    Instead of accommodating Mr. Rizzo's religious beliefs, Defendants terminated Mr. Rizzo because he could not receive the COVID-19 vaccination.

139.    Instead of accommodating Mr. Rizzo's religious beliefs, Defendants placed Mr. Rizzo on LWOP because he could not receive the COVID-19 vaccination.

26

140.     Mr. Rizzo was terminated because the Defendants refused to accommodate his
religious beliefs.

141.     Defendants had no objective basis for questioning the religious nature of Mr.
Rizzo's religious beliefs.

142.     Defendants had no objective basis for questioning the sincerity of Mr. Rizzo's
religious beliefs.

143.     Mr. Rizzo sufficiently articulated and explained the religious nature of his conflict
with the Vaccine Mandate.

144.     Defendants simply rejected Mr. Rizzo's religious beliefs without reason.

145.     Defendants discriminated against Mr. Rizzo because he is Catholic.

146.     Defendants cannot demonstrate that accommodating Mr. Rizzo would cause an
undue hardship.

147.     Defendants accommodated other DSNY employees in the same or similar
position as the Mr. Rizzo.

148.     Defendants permitted other DSNY employees to submit weekly PCR testing
instead of receiving the COVID-19 vaccination.

149.     As a direct and proximate result of Defendants' unlawful discriminatory practices,
Mr. Rizzo has suffered, and continues to suffer, substantial losses, including but not limited to
the loss of past and future earnings, compensation and benefits, increases, promotions, bonuses,
and other employment benefits, for which he is entitled to an award of monetary damages which
exceeds the jurisdictional limits of all lower courts, and other relief.

150.     As a direct and proximate result of Defendants' failure to accommodate, Mr.
Rizzo suffered, and continues to suffer, severe mental anguish and emotional distress, including

27

but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages in an amount to be determined at trial.

151.    As a direct and proximate result of Defendants' failure to accommodate, Mr. Rizzo is thus entitled to injunctive and declaratory relief, as well as compensatory damages, including pain and suffering, and punitive damages for the injuries and loss sustained as a result of Defendants' unlawful discriminatory conduct under the NYCHRL, in an amount to be determined at trial.

152.    Defendants willfully violated Mr. Rizzo's right to a reasonable accommodation.

153.    Defendants willfully violated Mr. Rizzo's right to a cooperative dialogue.

154.    Defendants willfully violated Mr. Rizzo's right to an interactive process.

155.    Defendants willfully and wrongfully terminated Mr. Rizzo.

156.    Defendants knew they were acting in violation of the law.

157.    The City promulgated guidance to private sector employers regarding religious accommodation requests to the City's COVID-19 Vaccine Mandate, and acknowledged the refusal to receive the COVID-19 vaccine based upon the use of aborted fetal cell lines in the testing, research, development, and/or manufacturing of the vaccines.

158.    The Defendants knew that they were required under the law to engage in a good faith discussion with Mr. Rizzo in an attempt to understand his accommodation needs. However, the Defendants did not engage in such good faith interactive process or cooperative dialogue.

159.    The Defendants knew that Mr. Rizzo's beliefs qualified as religious under the law. There is no common sense reading of his request where Mr. Rizzo's objection to the Vaccine

Mandate is not based on sincerely held religious beliefs. However, Defendants categorically rejected Mr. Rizzo's religious beliefs.

160.    The City's FAQ on New York City Employees Vaccine Mandate recognized that "[a] sincerely held religious, moral or ethical belief may be a basis for a religious accommodation."

161.    Defendants knew that they were legally required to engage in a cooperative dialogue but failed to engage in such dialogue with Mr. Rizzo regarding his request for an accommodation before summarily denying his request.

162.    Defendants knew that they were legally required to engage in an interactive process but failed to engage in such process with Mr. Rizzo regarding his request for an accommodation before summarily denying his request.

163.    Defendants violated their own employment policies and procedures by failing to engage in a cooperative dialogue with Mr. Rizzo.

164.    Defendants violated their own employment policies and procedures by failing to engage in an interactive process with Mr. Rizzo.

165.    Defendants violated their own employment policies and procedures by refusing to accommodate the Mr. Rizzo.

166.    Defendants violated their own employment policies and procedures by denying Mr. Rizzo's beliefs were religious.

167.    Defendants did not consider the Mr. Rizzo's individual job duties before refusing to accommodate him.

168.    Defendants callously rejected the Mr. Rizzo's request for accommodation displaying a blatant lack of any true consideration before hastily issuing a boilerplate denial.

169.    Defendants acted with malice.

170.    Defendants' actions amount to willful or wanton negligence.

171.    Defendants' discrimination was willful.

172.    Defendants' discrimination was reckless.

173.    Defendants consciously disregarded Mr. Rizzo's right to a reasonable accommodation.

174.    Defendants consciously disregarded Mr. Rizzo's right to a cooperative dialogue.

175.    Defendants consciously disregarded Mr. Rizzo's right to an interactive process.

176.    Defendants consciously disregarded Mr. Rizzo's right to retain his employment.

177.    Defendants' conduct was so reckless as to amount to a conscious disregard of the rights of the Mr. Rizzo.

178.    Defendants acted with reckless indifference to Mr. Rizzo's rights.

179.    As a direct and proximate result of Defendants' conduct, Mr. Rizzo is entitled to punitive damages under NYCHRL in an amount to be determined at trial.

180.    Mr. Rizzo is further entitled to an award of attorney's fees, expert fees, and other costs under the NYCHRL. N.Y.C. Admin. Code §8-502(g).

## FOURTH CAUSE OF ACTION

### (Failure to Accommodate in Violation of the NYSHRL)

181.    Plaintiff reincorporates the foregoing as if fully written herein.

182.    At all relevant times, the NYSHRL has been in full force and effect and has applied to Defendants' conduct.

183.    The NYSHRL provides:

It shall be an unlawful discriminatory practice for any employer, or an employee or agent thereof, to impose upon a person as a condition of obtaining or retaining employment, including opportunities for promotion, advancement or transfers, any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion,

including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or other holy day in accordance with the requirements of his or her religion or the wearing of any attire, clothing, or facial hair in accordance with the requirements of his or her religion, unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business.

N.Y. Executive Law § 296(10)(a).

184.    "Undue hardship" is defined as "an accommodation requiring significant expense or difficulty (including significant interference with the safe or efficient operation of the workplace…)." N.Y. Executive Law § 296(10)(d).

185.    If the undue hardship is alleged based on a safety concern, "the employer must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective information to ascertain: the nature, duration and severity of the risk; the probability that the potential injury will actually occur, and whether reasonable accommodations, such as modification of policies, practices or procedures, will mitigate the risk." 9 CRR-NY 466.11.

186.    At all relevant times, the Defendants were employers of the Mr. Rizzo.

187.    Mr. Rizzo has sincerely held religious beliefs which prohibit him from receiving the COVID-19 vaccines.

188.    The Defendants required Mr. Rizzo to receive the COVID-19 vaccine to retain his employment.

189.    Mr. Rizzo requested a reasonable accommodation to the Defendants' requirement that he receive the COVID-19 vaccination.

190.    Defendants rejected Mr. Rizzo's religious beliefs without reason.

191.   Defendants had no objective basis for questioning the religious nature of Mr. Rizzo's religious beliefs.

192.   Defendants had no objective basis for questioning the sincerity of Mr. Rizzo's religious beliefs.

193.   Mr. Rizzo sufficiently articulated and explained the religious nature of his conflict with the Vaccine Mandate.

194.   Defendants simply rejected Mr. Rizzo's religious beliefs without reason.

195.   Defendants discriminated against Mr. Rizzo because he is Catholic.

196.   Defendants denied Mr. Rizzo's request for a reasonable accommodation.

197.   Defendants failed to provide Mr. Rizzo with a reasonable accommodation of his religious observance, practice, and belief (i.e., that he is prohibited from taking the COVID-19 vaccine), which precludes him from complying with the Vaccine Mandate.

198.   Mr. Rizzo was able to perform the essential duties of his job with a reasonable accommodation.

199.   Accommodating the Mr. Rizzo would not require significant expense or difficulty from the Defendants.

200.   Accommodating the Mr. Rizzo would not significantly interfere with the safe or efficient operation of the Defendants' workplace.

201.   Accommodating the Mr. Rizzo would not require the Defendants to violate a bona fide seniority system.

202.   Defendants failed to engage in any interactive process with Mr. Rizzo regarding his accommodation request.

203.    Defendants failed to engage in good faith with the Mr. Rizzo in order to understand his need for accommodation.

204.    Defendants unreasonably cut off any dialogue with the Mr. Rizzo regarding his religious beliefs.

205.    Mr. Rizzo, while working twelve-hour shifts seven days a week, sufficiently articulated his sincerely held religious beliefs to the Defendants.

206.    Defendants' requirements for demonstrating a sincerely held religious belief that conflicts with the Vaccine Mandate are unreasonable and unlawful.

207.    Defendants violated the NYSHRL by denying Mr. Rizzo's request for a reasonable accommodation without first engaging in an interactive process.

208.    Instead of accommodating Mr. Rizzo's religious beliefs, Defendants terminated Mr. Rizzo because he could not receive the COVID-19 vaccination.

209.    Instead of accommodating Mr. Rizzo's religious beliefs, Defendants placed Mr. Rizzo on LWOP because he could not receive the COVID-19 vaccination.

210.    Defendants refused to allow Mr. Rizzo to keep his job because he could not receive the COVID-19 vaccine without violating his religious beliefs.

211.    Mr. Rizzo was terminated because the Defendants failed to consider any reasonable accommodations to the Vaccine Mandate.

212.    Even after the Vaccine Mandate has been amended by the New York City Department of Health and Mental Hygiene, Defendants failed and refused to eliminate its discriminatory policies and practices and failed and refused to remedy the effects of Mr. Rizzo's termination and placement on LWOP.

213.    As a direct and proximate result of Defendants' failure to accommodate, Mr. Rizzo has

suffered, and continues to suffer, substantial losses, including but not limited to the loss of

past and future earnings, compensation and benefits, increases, promotions, bonuses, and

other employment benefits, for which he is entitled to an award of monetary damages which

exceeds the jurisdictional limits of all lower courts, and other relief.

214.    As a direct and proximate result of Defendants' failure to accommodate, Mr. Rizzo

suffered, and continues to suffer, severe mental anguish and emotional distress, including but

not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem

and self confidence, and emotional pain and suffering for which he is entitled to an award of

monetary damages in an amount to be determined at trial.

215.    Mr. Rizzo is thus entitled to injunctive and declaratory relief, as well as compensatory

and punitive damages for the injuries and loss sustained as a result of Defendants' unlawful

discriminatory conduct under the NYSHRL, in an amount which exceeds the jurisdictional

limits of all lower courts.

216.    Defendants willfully violated Mr. Rizzo's right to a reasonable accommodation.

217.     Defendants willfully violated Mr. Rizzo's right to a cooperative dialogue.

218.    Defendants willfully violated Mr. Rizzo's right to an interactive process.

219.    Defendants willfully and wrongfully terminated Mr. Rizzo.

220.    Defendants knew they were acting in violation of the law.

221.    The City promulgated guidance to private sector employers regarding religious

accommodation requests to the City's COVID-19 Vaccine Mandate, and acknowledged the

refusal to receive the COVID-19 vaccine based upon the use of aborted fetal cell lines in the

testing, research, development, and/or manufacturing of the vaccines.

222.    The Defendants knew that they were required under the law to engage in a good faith discussion with Mr. Rizzo in an attempt to understand his accommodation needs. However, the Defendants did not engage in such good faith interactive process or cooperative dialogue.

223.    The Defendants knew that Mr. Rizzo's beliefs qualified as religious under the law.  There is no common sense reading of his request where Mr. Rizzo's objection to the Vaccine Mandate is not based on sincerely held religious beliefs. However, Defendants categorically rejected Mr. Rizzo's religious beliefs.

224.    The City's FAQ on New York City Employees Vaccine Mandate recognized that "[a] sincerely held religious, moral or ethical belief may be a basis for a religious accommodation."

225.    Defendants knew that they were legally required to engage in a cooperative dialogue but failed to engage in such dialogue with Mr. Rizzo regarding his request for an accommodation before summarily denying his request.

226.    Defendants knew that they were legally required to engage in an interactive process but failed to engage in such process with Mr. Rizzo regarding his request for an accommodation before summarily denying his request.

227.    Defendants violated their own employment policies and procedures by failing to engage in a cooperative dialogue with Mr. Rizzo.

228.    Defendants violated their own employment policies and procedures by failing to engage in an interactive process with Mr. Rizzo.

229.    Defendants violated their own employment policies and procedures by refusing to accommodate the Mr. Rizzo.

230.    Defendants violated their own employment policies and procedures by denying Mr. Rizzo's beliefs were religious.

231.    Defendants did not consider the Mr. Rizzo's individual job duties before refusing to accommodate him.

232.    Defendants callously rejected the Mr. Rizzo's request for accommodation displaying a blatant lack of any true consideration before hastily issuing a boilerplate denial.

233.    Defendants acted with malice.

234.    Defendants' actions amount to willful or wanton negligence.

235.    Defendants' discrimination was willful.

236.    Defendants' discrimination was reckless.

237.    Defendants consciously disregarded Mr. Rizzo's right to a reasonable accommodation.

238.    Defendants consciously disregarded Mr. Rizzo's right to a cooperative dialogue.

239.    Defendants consciously disregarded Mr. Rizzo's right to an interactive process.

240.    Defendants consciously disregarded Mr. Rizzo's right to retain his employment.

241.    Defendants' conduct was so reckless as to amount to a conscious disregard of the rights of the Mr. Rizzo.

242.    Defendants acted with reckless indifference to Mr. Rizzo's rights.

243.    As a direct and proximate result of Defendants' conduct, Mr. Rizzo is entitled to punitive damages under the NYSHRL in an amount to be determined at trial.

244.    Mr. Rizzo is further entitled to an award of attorney's fees, expert fees, and other costs under the NYSHRL. Executive Law § 297(10).

## **FIFTH CAUSE OF ACTION**

### **(Failure to Engage in a Cooperative Dialogue in Violation of the NYCHRL)**

245.    Plaintiff reincorporates the foregoing as if fully written herein.

246.    The NYCHRL requires employers to engage in a cooperative dialogue with an employee

who requests a reasonable accommodation on the basis of religion.

247.    The NYCHRL provides a separate cause of action against employers who fail to engage

in a cooperative dialogue with employees, like the Mr. Rizzo, who request a reasonable

accommodation:

It shall be an unlawful discriminatory practice for an employer, labor organization or
employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a
cooperative dialogue within a reasonable time with a person who has requested an
accommodation or who the covered entity has notice may require such an accommodation:
(1) For religious needs as provided in subdivision 3 of this section.

N.Y.C. Admin. Code § 8-107 (28)(a).

248.    Defendants were obligated to engage in a cooperative dialogue with Mr. Rizzo regarding

his need for a reasonable accommodation to the Vaccine Mandate.

249.    Defendants refused to engage in any cooperative dialogue and simply denied Mr. Rizzo's

request for a reasonable accommodation.

250.    Defendants violated N.Y.C. Admin. Code § 8-107 (28)(a)(1) by failing to engage in a

cooperative dialogue with the Mr. Rizzo regarding his request for a reasonable

accommodation to the Vaccine Mandate.

251.    The NYCHRL prohibits Defendants from denying the Mr. Rizzo's request for a

reasonable accommodation until it engaged in a cooperative dialogue with the Mr. Rizzo:

The determination that no reasonable accommodation would enable the person requesting an
accommodation to satisfy the essential requisites of a job or enjoy the right or rights in
question may only be made after the parties have engaged, or the covered entity has
attempted to engage, in a cooperative dialogue.

N.Y.C. Admin. Code § 8-107 (28)(e).

252.    However, Defendants violated the NYCHRL by denying Mr. Rizzo's request for a

reasonable accommodation without first engaging in a cooperative dialogue.

253.    Mr. Rizzo sufficiently articulated sincerely held religious beliefs that conflict with the

Vaccine Mandate.

254.    Mr. Rizzo was fully capable of satisfying the essential requisites of his job with a

reasonable accommodation.

255.    DSNY questioned Mr. Rizzo's religious beliefs and required Mr. Rizzo to further explain

his beliefs. Mr. Rizzo complied with this request and further explained his religious beliefs.

Mr. Rizzo also asked DSNY what further information was required of him. DSNY never

responded.

256.    The Citywide Panel never had *any* communications with Mr. Rizzo regarding his

accommodation needs before denying his reasonable accommodation request.

257.    Defendants never had any communications with Mr. Rizzo regarding any potential

accommodations that may address his accommodation needs before denying his reasonable

accommodation request.

258.    Defendants never had any communications with Mr. Rizzo regarding alternatives to his

accommodation request before denying his reasonable accommodation request.

259.    Defendants never had any communications with Mr. Rizzo regarding the difficulties that

any potential accommodations may pose to Defendants before denying his reasonable

accommodation request.

260.    As a direct and proximate result of Defendants' unlawful discriminatory practices, Mr.

Rizzo has suffered, and continues to suffer, substantial losses, including but not limited to the

loss of past and future earnings, compensation and benefits, increases, promotions, bonuses,

and other employment benefits, for which he is entitled to an award of monetary damages which exceeds the jurisdictional limits of all lower courts, and other relief

261.    As a direct and proximate result of Defendants' unlawful discriminatory practices, Mr. Rizzo suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages in an amount to be determined at trial.

262.    As a direct and proximate result of Defendants' violations of the NYCHRL, N.Y.C. Admin. Code § 8-107 (28)(a)(1) and § 8-107 (28)(e), Mr. Rizzo is entitled to declaratory and injunctive relief and Defendants are liable to Mr. Rizzo for compensatory damages, including pain and suffering, and punitive damages in an amount to be determined at trial  pursuant to N.Y.C. Admin. Code §8-502(a), and for costs and reasonable attorney's fees pursuant to N.Y.C. Admin. Code §8-502(g).

## SIXTH CAUSE OF ACTION

### (Violation of the Free Exercise Clause of the First Amendment of the United States Constitution)

263.    Plaintiff reincorporates the foregoing as if fully written herein.

264.    The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the government's burdening of a sincerely held religious belief. The First Amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I

265.    The Supreme Court has held that "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc.v. Hialeah*, 508 U.S. 520, 546 (1993). A non-neutral or non-generally

applicable law must be the least restrictive means available to further a compelling government interest in order to withstand strict scrutiny.

266.    Mr. Rizzo's sincerely held religious beliefs prohibit him from receiving the COVID-19 vaccine.

267.    The Defendants' Vaccine Mandate substantially burdens Mr. Rizzo's free exercise of religion, in that compliance would require violation of his religious beliefs as the sole alternative to suffering adverse employment actions, including LWOP and termination.

268.    The Defendants' refusal to accommodate Mr. Rizzo's religious beliefs substantially burdens Mr. Rizzo's free exercise of religion.

269.    Defendants' refusal to accommodate the Mr. Rizzo and other employees' religious beliefs created coercive pressure on Mr. Rizzo to change or violate his sincerely held religious beliefs.

270.    The Defendants' Vaccine Mandate is not neutral or generally applicable.

271.    Defendants' Vaccine Mandate is not neutral because the Defendants have refused to accept sincerely held religious beliefs that conflict with the Vaccine Mandate.

272.    Defendants' Vaccine Mandate is not generally applicable because it provides for reasonable accommodations, including religious and medical exemptions.

273.    The Defendants do not have a compelling interest in requiring Mr. Rizzo to violate his sincerely held religious beliefs as a result of the inconclusive functionality of the presently-available COVID-19 vaccines in preventing viral transmission, carry, and illness. Moreover, Defendants' interest in mandating the Mr. Rizzo to be vaccinated cannot be compelling where other employees are provided reasonable accommodations for both religious and medical reasons.

274.    Less restrictive means to reduce the spread of COVID-19 are available to the Defendants, including masking, PCR testing, antibody testing, temperature checks, among others. As such, the Defendants' COVID-19 vaccination mandate fails strict scrutiny.

275.    Defendants' failure to accommodate the Mr. Rizzo and all other employees' religious beliefs fail to provide the least restrictive means of furthering any stated interest.

276.    The Defendants previously had a "Test or Vax" policy in place, where unvaccinated employees were permitted to submit weekly PCR testing.

277.    Defendants' refusal to accommodate Mr. Rizzo, and its policies, practices, customs and procedures to refuse all religious accommodations, impose discipline on Mr. Rizzo for exercising his right to free exercise of his religious beliefs.

278.    Defendants' actions injured and continue to injure Mr. Rizzo by chilling his religious activity through the withholding of pay, discipline, termination, and the threat of termination.

279.    Mr. Rizzo is entitled to a declaration that the Defendants violated his First Amendment right to the free exercise of religion. Mr. Rizzo is entitled to equitable relief and an injunction, reinstating him to his previous position of employment and enjoining the Defendants from taking any adverse employment actions against him due to his vaccination status. Further, Mr. Rizzo is entitled to reasonable costs of this lawsuit, including attorneys' and experts' fees pursuant to 42 U.S.C. § 1988 and other applicable law, as well as compensatory damages, including pain and suffering, and punitive damages against the Defendants, including emotional distress and pain and suffering in an amount to be proven at trial. The U.S. Supreme Court has held that individual damages are available against violators. *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020).

280.    A court must consider: "(1) degree of reprehensibility of the defendant's conduct, (2) relationship of the punitive damages to the compensatory damages, and (3) criminal and civil penalties imposed by the state's law for the misconduct in question." *Jennings v. Yurkiw*, 18 F.4th 383, 390 (2d Cir. 2021) (quoting *Payne v. Jones*, 711 F.3d 85, 101 (2d Cir. 2013)).

281.    Defendants' violation of Mr. Rizzo's religious exercise evidenced an indifference to and a reckless disregard of his religious rights.

282.    The harm caused was not only economic but also a danger to his health. Defendants' deliberate actions to sever his employment demonstrate a reckless disregard for his physical health.

283.    The Defendants' intentional actions caused profound disruption to Mr. Rizzo's physical health and well-being. His interruption in the middle of a course of dental treatment serves as a poignant example of the tangible impact of their conduct. Having commenced dental procedures prior to his termination, Mr. Rizzo was abruptly compelled to discontinue these treatments due to the loss of his employment and medical coverage. This interruption not only disrupted his health regimen but also left him financially burdened, exacerbating the distress he was already experiencing.

284.    Furthermore, the deliberate lack of reasonable accommodation has hindered his ability to seek proper medical care, a situation that is exacerbated by his status as a 9/11 responder. In failing to address his medical needs and insurance coverage, the Defendants have exposed him to even greater financial uncertainty, leaving him without the safety net that is crucial for someone who has put their health at risk for the benefit of their community.

285.    The toll on Mr. Rizzo's mental health has manifested in various physical symptoms that are directly attributable to the Defendants' actions. His weight loss, depression, high blood

pressure, and inability to sleep are demonstrative of the significant mental anguish he has endured due to the Defendants' callous treatment. The Defendants' disregard for his sincerely held religious beliefs, refusal to engage in meaningful dialogue, and intentional termination have catalyzed a cascade of health-related issues that transcend mere economic ramifications.

286.     Defendants' actions demonstrated a reckless disregard for his overall well-being, prioritizing compliance with the Vaccine Mandate over the profound implications their decisions had on his physical and mental health. This level of recklessness speaks to a broader indifference to the health and safety of their employees.

287.     Mr. Rizzo is financially vulnerable. As a dedicated and hardworking middle-class individual, Mr. Rizzo's livelihood is intricately tied to his role as a blue-collar Sanitation Worker. Dependent upon his salary to sustain his basic needs and maintain his modest lifestyle, any disruption to his income has profound consequences for his financial stability. By depriving him of the opportunity to continue his employment, they have thrust him into a state of economic vulnerability that he was ill-prepared to endure. The termination of his employment, without just cause or consideration for his deeply-held convictions, has left him grappling with the challenge of making ends meet, jeopardizing his ability to provide for his own well-being and meet his financial obligations

288.     The Defendants' conduct involved repeated actions. The DSNY failed to engage in a cooperative dialogue and interactive process. The DSNY failed to accommodate. The Citywide Panel failed to engage in a cooperative dialogue and interactive process. The Citywide Panel failed to accommodate.

289.     The harm Mr. Rizzo suffered was the result of intentional malice, trickery, and deceit. Mr. Rizzo's pursuit of an accommodation was met with deliberate malice, cunning deception,

and a flagrant lack of good faith on the part of the Defendants. Despite his earnest efforts to

clarify and elaborate on his deeply-held religious convictions, the Defendants intentionally

withheld essential guidance, leaving him in the dark about the precise nature of the

information they sought. The deliberate omission of specific criteria or clarifications

rendered Mr. Rizzo's attempts at compliance futile and bound to fail.

290.    Furthermore, the Defendants' failure to engage in meaningful and sincere dialogue with

Mr. Rizzo showcases a calculated effort to obstruct the accommodation process. Their

intentional refusal to seek understanding or facilitate the provision of a reasonable

accommodation demonstrates a calculated disregard for his rights and well-being.

291.    This calculated malice is further compounded by the deceptive manipulation of Mr.

Rizzo's situation. By failing to elucidate the parameters for his accommodation and leaving

him without recourse for clarification, the Defendants set him up for a predetermined failure.

This intentional trickery and manipulation not only undermined his genuine efforts to uphold

his religious beliefs but also perpetuated an atmosphere of unjust treatment.

292.    In this trifecta of intentional malice, trickery, and deceit, the Defendants have exhibited a

clear disregard for Mr. Rizzo's rights, well-being, and the sincere pursuit of a reasonable

accommodation. Their actions are emblematic of a calculated and reprehensible approach

that meets the threshold for punitive damages.

### **Prayer for Relief**

**WHEREFORE**, the Plaintiff prays that this Court grant judgment to him containing the

following relief:

A.      A declaratory judgment that the Defendants' failure to accommodate and failure to engage in a cooperative dialogue with Plaintiff are unlawful discriminatory practices under the New York City Human Rights Law and the New York State Human Rights Law;

B.      A declaratory judgment that the Defendants' failure to accommodate Plaintiff is in violation of Title VII of the Civil Rights Act of 1964;

C.      A declaratory judgment that the Defendants' actions have violated the Plaintiff's First Amendment right to the Free Exercise of religion;

D.      An order that Defendants reinstate Plaintiff to his former position with full seniority, status, salary increments, bonuses and benefits, to the same extent that he would have received but for Defendants' unlawful conduct;

E.      An order that Defendants grant Plaintiff's request for a reasonable accommodation that will allow Plaintiff to perform the essential functions of his job;

F.      An award to Plaintiff of compensatory damages for the Plaintiff's lost wages, back pay, front pay, overtime, and benefits, in an amount to be determined at trial;

G.      An award to Plaintiff of compensatory damages for the pain and suffering, humiliation, mental anguish, damages to reputation and livelihood, and emotional distress sustained by him in an amount to be determined at trial;

H.      An award to Plaintiff for costs in this action, including reasonable attorney's fees and expert fees under 42 U.S.C. §1988, Title VII of the Civil Rights Act of 1964, the New York City Human Rights Law, and New York State Human Rights Law;

I.      An award to Plaintiff for punitive damages in an amount to be determined at trial, , in order to punish the Defendant's intentional unlawful discriminatory practices;

J.      An order for civil fines and penalties pursuant to New York Executive Law §
297(9);

K.      An award of pre- and post-judgment interest on all amounts awarded to the
Plaintiff at the highest rates and from the earliest dates allowed by law on all causes of
action;

L.      Such other and further relief this Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38(b) of the
Local Rules, Plaintiff demands trial by jury for all the issues leaded herein so triable.


Dated:  Staten Island, New York
        August 14, 2023

                                        Respectfully submitted,


                                        /s/ James Mermigis
                                        _____

                                        James G. Mermigis
                                        The Mermigis Law Group, P.C.
                                        85 Cold Spring Road, Suite 200
                                        Syosset, New York 11791
                                        T: (516) 353-0075
                                        James@MermigisLaw.com


                                        _____
                                        Christina Martinez, Esq.
                                        245 Bricktown Way, Suite J
                                        Staten Island NY 10309
                                        T: (347) 215-4543
                                        ChristinaMartinezEsq@gmail.com
                                        *Pro Hac Vice Application Pending*


                                        ***Attorneys for Plaintiff***

## **VERIFICATION**

STATE OF NEW YORK              )
                                                  )    ss. Mineola
COUNTY OF NASSAU           )

I, MICHAEL RIZZO being duly sworn, deposes and says:

1. I am the Plaintiff in the within action.

2. I have reviewed the contents of this Complaint and verify that the statements contained herein are true to the best of my knowledge, except as to matters alleged on information and belief, and as to those matters, I believe them to be true.

3. I am aware that if any of the statements contained in the Complaint are willfully false, I am subject to punishment.

MICHAEL RIZZO

Sworn to before me this

14 day of August, 2023

Notary Public

GEORGE MAVRAKIS
Notary Public - State of New York
NO. 01MA6145043
Qualified in Nassau County
My Commission Expires 5-1-26