Docket No.  23-cv-07190-JMF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL RIZZO,

                                                                Plaintiff,

                              v.

NEW YORK CITY DEPARTMENT
OF SANITATION AND CITY
OF NEW YORK,

                                                              Defendants.

**DEFENDANT NEW YORK CITY DEPARTMENT OF SANITATION AND
DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE COMPLAINT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants New York City*
*Department of Sanitation and City of New*
*York*
*100 Church Street, Room 2-141*
*New York, New York  10007*

*Of Counsel:  Rodalton Poole*
*Tel:  (212) 356-2441*
*Matter No.:  2023-072359*

# Table of Contents

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS .................................................................... 1

    A. BACKGROUND ...................................................................... 1

ARGUMENT ................................................................................ 4

    POINT I ............................................................................ 4

        Plaintiff's Title VII Disparate Impact Claim Fails
        Because He does not sufficientLY allege disparity. ................... 4

    POINT II ........................................................................... 10

        Plaintiff's Title VII Failure to Accommodate Claim
        Fails because His Termination Does Not Constitute
        Discipline. ...................................................................... 10

    POINT III ........................................................................... 13

    POINT IV ........................................................................... 15

        Plaintiff's cooperative dialogue claim fails because
        DSNY complied with CHRL ................................................ 15

    POINT V ............................................................................ 16

        PLaintiff's free exercise claim must be dismissed
        BECAUSE a rational basis exists for enforcement
        of the vaccine mandate ...................................................... 16

    POINT VI ........................................................................... 17

        DSNY is a non-suable entity ................................................ 17

    POINT VII .......................................................................... 17

        Punitive damages are not recoverable against
        municipalities .................................................................. 17

CONCLUSION ............................................................................. 18

**Cases**

556 U.S. 662 (2009)...................................................................................................... 5

*Algarin v. NYC Health + Hosps. Corp.*,  2023 U.S. Dist. LEXIS 108666 ................................... 15

*Algarin v. NYC Health + Hosps. Corp.*,  2023 U.S. Dist. LEXIS 108666 (S.D.N.Y. June 23,

2023) ........................................................................................................................... 15

*Ashcroft v. Iqbal* ............................................................................................................. 5

*Baker v. Home Depot*, 445 F.3d 541 (2nd Cir. 2006) .................................................... 12

*Bath v. Fire Dept. of City of N.Y.*, 2023 N.Y. Misc. LEXIS 2744 ................................ 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 5

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) ............... 20

*D'Cunha v. Northwell Health Sys.*¸ 2023 WL 7986441 (2d Cir. Nov. 17, 2023) ........................ 12

*Dicapua v. City of New York*, 2023 NYLJ LEXIS 2465 (Richmond County Sup. Ct. Sept. 6,

2023) ........................................................................................................................... 18

Evans v. N.Y.C. Health, 2023 U.S. Dist. LEXIS 139159 (S.D.N.Y. Aug. 7, 2023) .................... 13

*Krohn v. N.Y. City Police Dep't.* 2 N.Y. 3d 329 (Ct. of Appeals of N.Y. May 4, 2004)............. 21

*Lych v. Bd. of Educ. of. N.Y.*, 2023 NYLJ LEXIS 1815 (N.Y. Sup. Ct. Jul. 13, 2023)............... 18

*Maier v. Besser*, 73 Misc. 2d 241 (Onondaga County Sup. Ct. Dec. 29, 1972)............................ 8

*Malone v. New York Pressman's Union No. 2*, 2011 WL 2150551 (S.D.N.Y. May 31, 2011) ..... 9

*Mandala v. NTT Data, Inc.*, 975 F.3d 202 at 209 .......................................................... 7

*Marte v. Montefiore Med. Ctr.*, 2022 U.S. Dist. LEXIS 186884 (S.D.N.Y. Oct. 12, 2022) ........ 15

*Mason v. General Brown Cent. School Dist.*, 851 F. 2d 47 (2d Cir. Jun. 24, 1988) ..................... 8

*Matter of Marsteller v. City of New York*, AD 3d., 2023 WL 4065500 (1st Dept. 2023) ............ 18

*Matter of Schweit v. New York City Fire Dept..*, 2023 N.Y. Misc. LEXIS 4322 (N.Y. County Sup. Ct. Aug. 17, 2023) ........................................................................ 17

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F. 3d 102 (2d Cir. 2021)..................... 17

*Moody v. Related Co., L.P.*, 620 F. Supp. 3d 51 (S.D.N.Y. Aug. 10, 2022) ............................... 11

*Mora v. N.Y. State Unified Ct. Sys.*, 2023 U.S. Dist. LEXIS 166477 (S.D.N.Y. Sept. 19, 2023) 20

*Mora v. N.Y. State Unified Ct. Sys.*, 2023 WL 6126486 (S.D.N.Y. Sept. 19, 2023).................... 20

NYC Admin. Code § 8-107 (28) (e) ............................................................................................ 18

*Okwedy v. Molinari*, 69 Fed. Appx. 482, 484 (2d Cir. 2003)........................................................ 19

*Samuels v. William Morris Agency*, 2011 WL 2946708 (S.D.N.Y. Jul. 18, 2011) ....................... 5

*Watson v. N.Y. Pressman's Union No. 2, NYP Holdings, Inc.*, 444 Fed. Appx. 500 (2d Cir. 2011) ..................................................................................................................................... 9

*We the Patriots, U.S.A., Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021)........................................... 13

*Wilson v. New York*, 2017 U.S. Dist. LEXIS 10492 (E.D.N.Y. Jan. 24, 2017)............................. 10


**Statutes**

42 U.S.C. § 2000-e2(k)(1)(A)(i). ................................................................................................. 6

N.Y.C. Charter Ch. 17, § 396 ..................................................................................................... 21

## PRELIMINARY STATEMENT

Plaintiff Michael Rizzo ("Plaintiff"), a former sanitation worker for Defendant New York City Department of Sanitation ("DSNY"), brings this action against DSNY and the City of New York ("the City"). Plaintiff alleges religious discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), New York City Human Rights Law ("CHRL"), New York State Human Rights Law ("SHRL"), and the Free Exercise Clause of the First Amendment of the United States Constitution, and seeks punitive damages.

Plaintiff's Complaint ("Compl.") must be dismissed in its entirety for failure to state a claim. As it pertains to his Title VII, SHRL and CHRL claims, Plaintiff fails to allege plausible facts that demonstrate disparate impact to a protected class and that his termination constitutes discipline. Additionally, an outright exemption from the mandate would have constituted an undue hardship for DSNY. With regard to the First Amendment claim, the Second Circuit has already deemed the mandate constitutional and rationally-based. Furthermore, DSNY is a non-suable entity. Lastly, punitive damages cannot be assessed against a municipality.

For these reasons, and as set forth fully below, the Complaint must be dismissed in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

### A. Background

In early 2020, Covid-19 began to circulate throughout New York City. Compl. ¶ 30.  Due to the health crisis brought on by the deadly virus, in March of 2020,  the governor of New York  issued an executive order closing non-essential businesses. *See* Compl. ¶ 31. Early on, DSNY, and the City at large, faced a shortage of personal protective equipment; DSNY was therefore unable to provide all employees with masks, gloves, and hand sanitizer. Comp. ¶ 33; *see*

*https://www.nyc.gov/assets/doh/downloads/pdf/han/advisory/2020/covid-19-03202020.pdf*.  (Last

accessed Nov. 29, 2023). However, the City's essential personnel was required to continue

performing its duties. *See* Compl. ¶ 5. Thus, despite the health risks, DSNY sanitation workers

continued their essential tasks, ensuring the cleanliness and function of New York City. *Id*.

Plaintiff, a DSNY sanitation worker, worked in the field, directly with the public. Compl.¶¶ 3 and

5.

        On December 11, 2020, the FDA approved the first Covid-19 vaccines.

*https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-*

*vaccine#:~:text=Since%20Dec.,age%20on%20May%2010%2C%202021*.  (Last accessed Nov.

29, 2023). On October 20, 2021, Mayor Bill DeBlasio issued a mandate that City employees

become vaccinated against Covid-19. *See https://www.nyc.gov/office-of-the-mayor/news/698-*

*21/mayor-de-blasio-vaccine-mandate-new-york-city-workforce* (last accessed Nov. 24, 2023).

Mayor DeBlasio noted that "Vaccines [were] critical to combatting the COVID-19 pandemic." *Id*.

Addressing City workers directly in his order, Mayor DeBlasio also stated,"[S]erving the people

of New York City . . . comes with a responsibility to keep yourself and your community safe." *Id*.

Next, on October 31, 2021, the then commission of the New York City Department of Health and

Mental Hygiene ("DOHMH"), Dave A. Chokshi, issued a Commissioner's Order ("Vaccine

Mandate" or "Mandate") requiring all New York City employees to show proof of vaccination

against COVID-19 by 5:00 p.m. on October 29, 2021. Comp. ¶ 38.  In his justification for the

order, Commissioner Chokshi stated that the "public health emergency within New York City

continue[d]," and that the order was necessary for the health and safety of the City and its

residence. *See https://www.nyc.gov/assets/doh/dowloads/pdf/covid/-19-vaccination-requirement-*

*contractors-supplemental.pdf*. (Last accessed Nov. 24, 2023). However, the Commissioner noted

that the order was not to prohibit reasonable accommodations required by law. *Id*. The mandate provided for accommodations on both religious and medical grounds. Compl. ¶ 272.

On October 23, 2021, DSNY notified its employees that those who were not in compliance with the mandate would be placed on Leave Without Pay unless they submitted a request for a reasonable accommodation by November 1, 2021. Compl. ¶ 38. October 27, 2021, Plaintiff submitted a request for an accommodation to be totally exempt from the mandate, citing his assumption that the vaccine was developed using aborted fetal cells. *See* Compl. ¶ ¶ 15, 39, and 81. Plaintiff also noted that he was a Catholic. Compl. ¶ 15. On November 5, 2021, an Associate Counsel for DSNY emailed Plaintiff requesting more information on his alleged religious beliefs. Compl.¶ 42. Plaintiff responded, citing bible passages and providing the following quote, alleged to have come from St. Paul: "In all his activity[,] a man is bound to follow his conscience in order that he may come to God, the end and purpose of life." Compl. ¶ 45. Plaintiff emphasized that he was required to follow his conscience, and that vaccination must be voluntary. *Id*.

On November 18, 2021, DSNY denied Plaintiff's request for an accommodation, finding he had not sufficiently demonstrated a basis to be exempt from the mandate. Comp. ¶ 47. DSNY notified Plaintiff that he could appeal to the New York City Vaccine Mandate Reasonable Accommodation Appeals Panel, and on November 23, 2021, Plaintiff did so, claiming *inter alia* that the vaccine was developed from "the bodies of innocent victims that were aborted . . ." Plaintiff also reiterated that he was "required" to obey his conscience. Compl. ¶¶ 47-50. On January 24, 2022, the Citywide Panel notified Plaintiff that it had denied his appeal. Comp. ¶ 51.

On January 28, 2022, because he failed to comply with the mandate, Plaintiff was placed on Leave Without Pay. *See* Comp. ¶ 54. On February 11, 2022, DSNY notified him that he was

effectively terminated. Compl. ¶ 55. Later, on June 17, 2022, DSNY wrote Plaintiff offering him

his job back on the condition that he become vaccinated. Compl.¶ 56. Plaintiff refused. *See also*

Compl. ¶57.

On February 6, 2023, Mayor Eric Adams rescinded the vaccine mandate.

*https://www.nyc.gov/assets/dcas/downloads/pdf/guidelines/faq-vaccine-mandate.pdf*.        (Last

accessed Nov. 29, 2023). Employees who were terminated effective February 11, 2022 for failure

to comply with the mandate could submit requests for reinstatement to their former agencies by

March, 10, 2023. *Id*. at p. 2. However, any Agency's decision to reinstate a terminated employee

was discretionary. *Id.*  On March 8, 2023, DSNY notified Plaintiff he could return to work but

specified that he would not be entitled to backpay. ¶ Compl. 59. Again, Plaintiff refused and has,

as of yet, not resumed his City employment. *Id*.

 Plaintiff claims that he was wrongfully denied an exemption from the vaccine mandate

and that the City violated state, city, and federal laws by failing to accommodate him. *See*

Compl.¶¶ 102, 117, and 164-66.

## ARGUMENT

## POINT I

## PLAINTIFF'S TITLE VII DISPARATE IMPACT CLAIM FAILS BECAUSE HE DOES NOT SUFFICIENTLY ALLEGE DISPARITY.

The U.S. Supreme Court has ruled that "[f]actual allegations must be enough to raise a

right to relief above the **speculative** level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(emphasis added). According to *Ashcroft v. Iqbal*, "where the . . . facts do no permit the court to

infer more than the **mere possibility** of misconduct, the complaint has not 'show[n]. . . the pleader

is entitled to relief.'" 556 U.S. 662, 679 (2009) (citing Federal Rule of Civil Procedure 8(a)(2))

(emphasis added). Furthermore, this Court has found that, in a Title VII disparate impact case,

conclusory statements without factual support are insufficient to defeat a 12(b)(6) motion to dismiss. *See Samuels v. William Morris Agency*, 2011 WL 2946708 (S.D.N.Y. Jul. 18, 2011); *see also Jiggets v. Allied Int'l Union*, 2010 WL 2158331 (S.D.N.Y Mar. 16, 2010) (finding that, in a race-based disparate impact case, the plaintiff gave only conclusory statements regarding the treatment of blacks and presented no basis to compare their treatment to white workers).

First, Plaintiff fails to show disparate impact under Title VII because he has not (1) articulated a religious objection nor (2) named a proper comparator to show disparate impact to a protected class.  Title VII prohibits "employers' facially neutral practices that, in fact, are discriminatory in operation." *Ricci v. DeStefano*, 557 U.S. 557, 577-78 (2009).  To establish a prima facie violation, a plaintiff must show that the employer "uses a particular employment practice that causes a disparate impact on the basis of race, color,  religion, sex, or national origin." 42 U.S.C. § 2000-e2(k)(1)(A)(i).  To make out a disparate impact case, a plaintiff must: (1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Brown v. Coach Stores*, 163 F.3d 706, 712 (2d Cir. 1998) ("Allegations which contend only that there is a bottom-line racial imbalance in the work force are insufficient.")  In the instant case, Plaintiff has failed to sufficiently allege disparate impact to a protected class.

As noted in *United Prob. Officers Ass'n v. City of New York*, "this burden [showing disparity] is somewhat greater than the "minimal support" burden in disparate treatment claims." *See* 2022 WL 875864 (S.D.N.Y. Mar. 24, 2022)*.* The Second Circuit Court has ruled that at the prima facie stage, a plaintiff must show that "the disparity is substantial or significant, and must be of a kind and degree sufficient to reveal a casual relationship between the challenged practice and the disparity." *See Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209 (2d Cir. Sept. 21, 2020)

(Plaintiffs, African-American men whose job offers were revoked because of past criminal convictions, cited a statistic regarding racial disparities between blacks and whites being incarcerated; but this general population statistic did not automatically suggest a disparity between blacks and whites in the defendants' hiring pool).

1. **Plaintiff did not articulate a religious objection to the vaccine mandate.**

To survive a motion to dismiss, Plaintiff "must identify the protected class basis upon which the plaintiff believes he or she was discriminated against." *Nesmith v. Mount Vernon City Sch. Dist.*, 2010 U.S. Dist. LEXIS 145528 (S.D.N.Y. Sept. 2, 2010).

By his own admission, Plaintiff's conscience, not his religion, led him to refuse the vaccine. *See* Compl. ¶ 45. What the Complaint presents are Plaintiff's personal assumptions intermingled with unrelated scripture; however, the pleading fails to establish a legitimate protected class. *See Id*. at ¶ 15 and ¶ 45. Plaintiff cites not one religious doctrine, dogma, nor tenant precluding inoculation in the midst of an international health emergency. *See Id*.

Without explaining its relevance, Plaintiff provides a passage, allegedly taken from *I Corinthians*, stating, "You are God's temple and God's Spirit dwells in you." Compl. ¶ 45. However, as the New York Eastern District Court has ruled, "mere invocation of a biblical verse is insufficient to establish that [a plaintiff] holds a religious belief against being vaccinated." *See Beickert v. N.Y.C. Dep't of Educ., 2023 U.S. Dist. LEXIS 170719* (E.D.N.Y. Sept. 25, 2023). In *Beickert*, the plaintiff was required to show that her espoused beliefs stemmed from religious convictions and were not merely "framed in terms of religious belief so as to gain the legal remedy desired." *Id*.

While reliance upon one's conscience may be admirable under different circumstances, Plaintiff cannot show that doing so is necessarily religious and warranting of protection under Title

VII. As the Second Circuit has stated, "[e]veryone makes basic choices" . . . but "[m]erely because these decision are important and may be supported by strong conviction, does not render them religious." *Mason v. General Brown Cent. School Dist.*, 851 F. 2d 47, 52 (2d Cir. 1988). In *Mason*, the court found that philosophical and personal beliefs are not protected by religious clauses, and noted that "[a] way of life, however virtuous and admirable, may not be interposed as a barrier to a reasonable . . . regulation . . ." *Id.* (citing *Maier v. Besser*, 73 Misc. 2d 241, 242 (Onondaga County Sup. Ct. Dec. 29, 1972)).

In the instant case, what the Complaint shows is that Plaintiff has, without evidence, adopted the theory that COVID-19 vaccines are in some way connected to abortion. However, Plaintiff has failed to demonstrate a substantial connection between his personal stance and the principals obligating him to refuse a vaccine because of his alleged religion. Thus, he has not demonstrated that he is a member of a protected class for the sake of Title VII analysis.

**2. The proper comparator group for Plaintiff is employees who refused the COVID-19 vaccine and did not apply for a religious accommodation.**

Next, to succeed on a disparate impact claim, a plaintiff must "utilize the appropriate comparison groups." *Watson v. N.Y. Pressman's Union No. 2, NYP Holdings, Inc.*, 444 Fed. Appx. 500, 501 (2d Cir. 2011); *Malone v. New York Pressman's Union No. 2*, 2011 WL 2150551 (S.D.N.Y. May 31, 2011). The complaint must "identify members of a protected group that are affected by the neutral policy and then identify similarly situated persons who are unaffected by the policy." 444 Fed. Appx. 500, 501.

For example, in *Malone v. New York Pressman's Union No. 2*, the plaintiffs, a class of racial minority and female press workers, challenged a union's policy of permitting the transfer of 14 white males to lucrative positions after it had discontinued an apprentice program designed to advance minority press people. 2011 WL 2150551. Plaintiffs argued that the policy had a disparate

impact on racial minorities and women, all of whom were in the lower-ranked position of Junior Pressman and thus not given priority regarding transfers. *Id*. However, prior to the cancellation of the apprentice program, the white men who transferred had been designated by the union as Journeymen, a position that outranked that of Junior Pressmen, and therefore received priority in staffing. *Id*. There were no African-American nor female Journeymen; however, there were white Junior Pressmen. *Id*. Because the 14 white transfers were Journeymen and therefore given priority with regard to placement based on their title, they were not deemed by the Southern District Court to be similarly situated to the Junior Pressmen plaintiffs. *Id*. In other words, plaintiffs had failed to name the proper comparators, which would have been any white Junior Press workers who received favorable treatment after the apprentice program was cancelled. *See Id*. As the Court stated in *Malone*, "nothing in the Complaint suggests that the impact of the transfer and apprenticeship policies does not fall equally on all Junior Pressman . . ." *Id*. Because the plaintiff's in *Malone* failed to identify the proper comparator group, they failed to state a claim for disparate impact under Title VII. *Id*.

In this case, while Plaintiff asserts his conclusion that "[t]hose who did not religiously oppose the COVID-19 vaccination were able to continue working," (Compl. ¶ 116) he provides no factual support to show impact based on membership in a protected class. A glaring omission from this statement is whether or not the individuals he seeks to compare himself to are vaccinated or unvaccinated. The implication that those who opposed the vaccine for religious reasons were treated differently than those who were similarly situated, which Plaintiff claims "were those able to continue working," is misleading. *See* Comp. ¶ 115-16. Plaintiff implies that the proper comparator group is vaccinated employees, i.e. employees who complied with a condition of employment. *See Id*. However, the individuals "similarly-situated" to Plaintiff were those who

refused the COVID-19 vaccination but did not apply for a religious accommodation. Those employees were also terminated, and any assertion otherwise is conclusory and unsupported by the allegations in the complaint.

Plaintiff has failed to nudge his claim of disparate impact beyond the realm of mere possibility, and this is legally insufficient. *See Wilson v. New York*, 2017 U.S. Dist. LEXIS 10492 (E.D.N.Y. Jan. 24, 2017) (plaintiff provided only a conclusory allegation of disparate impact without more supporting facts, and the claim was dismissed); *see also Moody v. Related Co., L.P.*, 620 F. Supp. 3d 51, 56 (S.D.N.Y. Aug. 10, 2022) (finding plaintiff's only allegation, that a policy had "an adverse . . . impact on African-Americans and Hispanics" compared to whites, was "wholly conclusory," lacked factual support, and was, on its own, insufficient to show disparate impact under the Fair Housing Act). The Complaint fails to show that non-religious employees who opposed the vaccine mandate for secular reasons were affected differently or treated more favorably than those who raised opposition on religious grounds. Further, Plaintiff has presented an assumption regarding the religious beliefs of DSNY and City employees, yet he has provided nothing more than a conclusory statement about workers who may have raised religious objections to receiving the Covid-19 vaccine.

Without more than what amounts to Plaintiff's recitation of the elements of a disparate impact case, no inference can be drawn that the mandate had a dissimilar effect on those who objected to the vaccine on non-religious grounds . On the contrary, what the Complaint shows is that Plaintiff's individual mindset (i.e. his conscience) prevented him from complying with a lawful condition of employment. *See* Compl. ¶ 44. The Complaint is too speculative to show any effect to a protected group, so the disparate impact claim must be dismissed.

**POINT II**

**PLAINTIFF'S TITLE VII FAILURE TO ACCOMMODATE CLAIM FAILS BECAUSE HIS TERMINATION DOES NOT CONSTITUTE DISCIPLINE.**

Next, to make a prima facie case for a failure to accommodate under to Title VII, a plaintiff must show that (1) he held a bona fide religious belief in conflict with a requirement of employment; (2) he informed the employer of his belief; and (3) he was disciplined for failing to comply with the requirement of employment. *Baker v. Home Depot*, 445 F.3d 541 at 545 (2nd Cir. 2006). Additionally, "an employer does not violate Title VII" if an accommodation "would cause the employer to suffer an undue hardship." *D'Cunha v. Northwell Health Sys.¸* 2023 WL 7986441 (2d Cir. Nov. 17, 2023). In this case, Plaintiff has failed to meet his pleading burden because (1) he failed to inform his employer of a bona fide belief [1], and (2) because as a matter of law, his dismissal was not considered discipline.

Since the FDA's approval of the COVID-19 vaccine, courts in the Second Circuit have found that vaccination is a proper condition of employment. For example, in *Marciano v. DeBlasio*, this Court found that an NYPD employee would no longer qualify for his position if he failed to meet a mandatory condition of employment by refusing the Covid-19 vaccine. 589 F. Supp. 3d 423, 436 (S.D.N.Y. Mar. 8, 2022). In *Marciano*, the New York Southern District Court stated that "the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures." *Id*.

Also, in *Kane v. DeBlasio*, this Court ruled that school teachers could not be unvaccinated in classrooms with unvaccinated children without posing a safety risk and thus creating an undue

---

[1] *See* Point I

hardship for the employer. 623 F. Supp 3d 339, 363 (S.D.N.Y. Aug. 26, 2022); *see also We the Patriots, U.S.A., Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir. 2021) (noting that "vaccination is a condition of employment in the healthcare field").

The New York Eastern District Court has also found that, where an employee has failed to meet the conditions of employment, termination will not constitute discipline. *See Garland v. N.Y. City Fire Dep't.*, 574 F. Supp. 3d 120 at 129 (E.D.N.Y. Dec. 6, 2021); *see also Evans v. N.Y.C. Health*, 2023 U.S. Dist. LEXIS 139159 (S.D.N.Y. Aug. 7, 2023) (finding that both the Second Circuit and the Supreme Court "have consistently recognized that the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in public interest, in the face of a public emergency, unconstitutional [2]").

Additionally, in *Garland v. N.Y. City Fire Dep't*, the Eastern District ruled that employees of the New York City Fire Department had failed to satisfy a condition of employment by refusing the Covid-19 vaccine and, therefore, no longer qualified for their positions. 574 F. Supp. 3d 120, 129 (E.D.N.Y. Dec. 6, 2021). The court in *Garland* went on to state that, because of the public health emergency created by COVID-19 and because of plaintiffs' interactions with members of the public on an emergency basis, the Commissioner of FDNY was "within his powers to require COVID-19 vaccination as a qualification of employment." *Id*. Similarly, in *Broker v. New York City Dep't of Educ.*, the Eastern District Court found the Department of Education's vaccine requirement to be "a lawful condition of employment" because the New York City Department of Education had "an obligation to maintain a safe workplace" during the COVID-19 public health emergency. 585 F. Supp. 3d 299, *316 (2022).

---

[2] *See also* Point V

In this case, through his intentional failure to abide by a lawful condition of employment, Plaintiff disqualified himself from his job. As stated above, Plaintiff was a sanitation worker for the City of New York. Compl. ¶ 2. By his own admission, he was required to work without protective gear "as the pandemic raged on." Compl. ¶¶ 2 - 5. Furthermore, Plaintiff rendered "aid in emergencies ranging from car accidents to house fires, from thwarting robberies to aiding ambulances stranded in the snow." *Id*. at ¶ 5. The Complaint further alleges that the vaccine mandate provides for reasonable accommodations, including "medical exemptions." *Id*. at ¶ 272. This means that, at any given time, in the harrowing throes of the pandemic, while rendering aid, Plaintiff could have come in contact with unvaccinated members of the public and colleagues who were medically unable receive a vaccine. Plaintiff is therefore like the firefighters and EMTs in *Garland* and the teachers in *Kane v. Deblasio* in that his job required in-person contact with vulnerable members of the public and fellow employees. *See Garland v. New York* at 129 (E.D.N.Y. Dec. 6, 2021)*; see Kane v. DeBlasio* at 363 (S.D.N.Y. Aug. 26 2022). The safety risks posed by Plaintiff, being unvaccinated, was untenable for the City at the time of the COVID-19 outbreak, and making the vaccine a condition of employment was, therefore, legally justified. *See Id*.

New York Supreme Court has also found the vaccine mandate to be proper because of the threat COVID-19 posed to the City. *See Bath v. Fire Dept. of City of N.Y.*, 2023 N.Y. Misc. LEXIS 2744. The court in *Bath* emphasized that "New York was one of the locations hardest hit by COVID-19, and numerous emergency protections were put in place to help reduce" the spread of the virus; that included issuance of the vaccine mandate in question . *Id.*

As it pertains to New York State Human Rights Law, the New York Southern District Court uses the Title VII framework to conduct failure-to-accommodate analysis. *See Algarin v.*

*NYC Health + Hosps. Corp.*,  2023 U.S. Dist. LEXIS 108666 (S.D.N.Y. June 23, 2023) (applying the federal framework to City and State Human Rights claims); *see Marte v. Montefiore Med. Ctr.*, 2022 U.S. Dist. LEXIS 186884 (S.D.N.Y. Oct. 12, 2022) (noting that claims brought under State Human Rights law utilize the Title VII framework). To restate, a failure to accommodate claim requires a showing that (1) Plaintiff has a bona fide religious belief that conflicts with an employment requirement; (2) he informed the employer of his belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement. *See* 2023 U.S. Dist. LEXIS 108666.  As state above, Plaintiff can show neither that he informed DSNY of a bona fide religious belief in conflict with an employment policy nor that his dismissal constituted discipline. DSNY was within its legal right to dismiss Plaintiff because he was disqualified by failing to comply with the mandate. For that reason, both his Title VII and state failure to accommodate claims fail, also

**POINT III**

**AN OUTRIGHT EXEMPTION FROM THE MANDATE WOULD HAVE CREATED AN UNDUE HARDSHIP BECAUSE, BY PLAINTIFF'S OWN ADMISSION, HE WAS AN ESSENTIAL EMPLOYEE AND PERFORMED EMERGENCY DUTIES.**

Furthermore, the Complaint demonstrates that an outright exemption from the mandate would have caused the City an undue hardship. Under Title VII, "when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer . . . a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Kane v. De Blasio*, 623 F. Supp. 3d 339, 363 (S.D.N.Y. Aug. 26, 2022). In *Kane*, this Court reaffirmed the Citywide Panel's determination that teachers could not have an outright exemption from their vaccine mandate because they worked in-person with unvaccinated students. *See Id*. The Southern District ruled that the plaintiffs' "inability to teach their students safely in person present[ed] more than a <u>de minimis</u>

cost." *Id*. In the instant case, giving that Plaintiff was charged with "rendering aid" to the public, his failure to vaccinate posed a risk similar to that of the unvaccinated teachers in *Kane*. Plaintiff would have, no doubt, come in contact with unvaccinated people, including children, while performing emergency duties. *See* Compl ¶ 3 (Plaintiff navigated challenges such as "rendering aid in emergencies ranging from car accidents to house fires, from thwarting robberies to aiding ambulances stranded in the snow"). Additionally, as noted above, "for a significant time" during the pandemic, he worked without "[p]ersonal protective equipment." Compl. ¶ 33.  Therefore, the Complaint shows that an exemption would have been unsafe, causing an undue hardship for the City.

Even under City Human Rights Law, Plaintiff's claim fails for the same reasoning. As noted by the Second Circuit Court of Appeals, although Title VII's analytic framework is applicable. "courts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F. 3d 102, 109 (2d Cir. 2021).  N.Y.C. Admin. Code 8-107 (3) (a) defines reasonable accommodation as an accommodation to "an employee's or prospective employee's religious observance or practice as shall not cause undue hardship in the conduct of the employee's business." *Marte v. Montefiore Med. Ctr.*, 2022 2022 WL 7059182 (S.D.N.Y. Oct. 12, 2022). In *Matter of Schweit v. New York City Fire Dept.*, the respondent, NYC Fire Department, emphasized that granting to the petitioner a religious exemption from the vaccine mandate would have burdened that agency with an undue hardship. *See* 2023 N.Y. Misc. LEXIS 4322 (N.Y. County Sup. Ct. Aug. 17, 2023). While not ruling on that question due to mootness, the court in *Schweit* stated," Even . . . [it] were to address the merits of the petition . . . FDNY and the Panel's determination to deny petitioner's request for a religious accommodation" was not arbitrary and capricious nor

"violative of the First Amendment or the **New York City Human Rights Law**." *See also Id*.

(emphasis added). Therefore, for the reasons explained fully above, an exemption would have

caused DSNY and the City an undue hardship, so Plaintiff's claim fails under all provisions law.

**POINT IV**

**PLAINTIFF'S COOPERATIVE DIALOGUE CLAIM FAILS BECAUSE DSNY COMPLIED WITH CHRL**

Next, DSNY engaged in cooperative dialogue pursuant to NYC Admin. Code § 8-107 (28)

(e).  New York State courts have ruled that publicly offering information on the process for

reviewing accommodation requests and informing employees on how to submit applications and

appeal denials is enough to satisfy the CHRL cooperative dialogue requirement. *see Lych v. Bd. of*

*Educ. of. N.Y.*, 2023 NYLJ LEXIS 1815 (N.Y. Sup. Ct. Jul. 13, 2023) (citing *Matter of Marsteller*

*v. City of New York*, AD 3d., 2023 WL 4065500 (1st Dept. 2023)) (stating respondents offered

information on the process for reviewing accommodation requests and thus complied with the

NYCHRL requirement to engage in cooperative dialogue)); *see Dicapua v. City of New York*, 2023

NYLJ LEXIS 2465 (Richmond County Sup. Ct. Sept. 6, 2023)(cited the Appellate Division First

Department's ruling that "in publicly offering information on its process for reviewing

accommodation requests and informing employees on how to submit applications and appeal

denials, the Respondents were compliant under NYCHRL").

By Plaintiff's own admission, on October 23, 2021, DSNY sent notice that employees who

submitted requests for accommodation by October 27, 2021 would be allowed to continue working

pending their requests and that all others would be put on LWOP. Compl. ¶ 38. Plaintiff claims he

then requested an accommodation. Id. at ¶ 39.Next, DSNY requested supplemental information

from Plaintiff so that it could make a determination. Compl. ¶ 42.  Plaintiff complied, and his

request was denied. Compl. ¶¶ 45 and 47. Next, DSNY notified Plaintiff that he could appeal to

15

the New York City Vaccine Mandate Reasonable Accommodation Appeals Panel or submit an appeal to arbitration and mediation services. Id. at ¶ 48. On November 23, Plaintiff did submit an appeal. Compl. ¶ 49. Thus, the Complain demonstrates not only that DSNY notified Plaintiff of the accommodation and appeals process but that Plaintiff understood that process because he availed himself to it. Therefore, Plaintiff's claim for failure to engage in cooperative dialogue fails.

## POINT V

## PLAINTIFF'S FREE EXERCISE CLAIM MUST BE DISMISSED BECAUSE A RATIONAL BASIS EXISTS FOR ENFORCEMENT OF THE VACCINE MANDATE

To continue, according to the Second Circuit Court of Appeals, "In order to prevail on a Free Exercise Clause claim, plaintiff generally must establish that 'the object of [the challenged] law is to infringe upon or restrict practices because of their religious motivation,' or that its 'purpose . . . is the suppression of religion on religious conduct.'" *Okwedy v. Molinari*, 69 Fed. Appx. 482, 484 (2d Cir. 2003) (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)). The court in *Okwedy* further stated, "It is not a violation of the Free Exercise Clause to enforce a generally applicable rule, policy or statute that burdens a religious practice as long the government can 'demonstrate a rational basis for [the] enforcement . ..'" *Id*. This Court has found that, "the minimum requirement of neutrality is that a law not discriminate on its face." *Mora v. N.Y. State Unified Ct. Sys.*, 2023 WL 6126486 (S.D.N.Y. Sept. 19, 2023) (citing *Kane v. De Blasio*, 19 F. 4th at 164). Further, "[t]o fail the neutrality prong, it is not enough for a law to simply <u>affect</u> religious practice; the law or the process of its enactment must demonstrate hostility to religion." *Id*.

In the instant case, Plaintiff has not alleged facts to demonstrate that the purpose of the mandate was to discriminate against religion. Furthermore, as it pertains to the Covid-19 vaccine mandates in New York, the Second Circuit Court of Appeals has already ruled them constitutional,

neutral and generally applicable. *See Kane v. DeBlasio*, 19 F. 4th 152, 166 (2d Cir. Nov. 28, 2021);

*see Mora v. N.Y. State Unified Ct. Sys.*, 2023 WL 6126486 (S.D.N.Y. Sept. 19, 2023); *see also*

*Matter of Schweit v. New York City Fire Dept.*, 2023 N.Y. NY Slip Op 32853(U) (N.Y. County

Sup. Ct. Aug. 17, 2023) (in dicta, stated that denial of a request for a religious exemption to the

vaccine mandate did not violate the First Amendment). Thus, Plaintiff's Free Exercise Clause must

be dismissed, also.

## POINT VI

### DSNY IS A NON-SUABLE ENTITY

Next, Section 396 of the New York City Charter states, "All actions and

proceedings for the recovery of penalties for the violation of any law shall be brought in the name

of the city of New York and not in that of any agency, except where otherwise provided by law."

N.Y.C. Charter Ch. 17, § 396. This provision of law "has been construed to mean that New York

City departments, as distinct from the City itself, lack the capacity to be sued." *See Ximines v.*

*George Wingate High Sch.*, 516 F. 3d 156 159-60 (2d Cir. 2008). Thus, all claims against DSNY

must be dismissed.

## POINT VII

### PUNITIVE DAMAGES ARE NOT RECOVERABLE AGAINST MUNICIPALITIES

Finally, though Plaintiff has requested for punitive damages, no such relief is recoverable

against municipalities. *See Dean v. Westchester County DA's Office*, 119 F. Supp. 2d 424, 428

(S.D.N.Y. Nov. 3, 2020) (dismissing claim for punitive damages against Westchester County

District Attorney's Office with prejudice because Title VII allows no such claim). The City of

New York is not "not liable for punitive damages flowing from its employees' misconduct in the

absence of express legislative authorization." *Krohn v. N.Y. City Police Dep't.* 2 N.Y. 3d 329, 336

(Ct. of Appeals of N.Y. May 4, 2004). Specifically, the City of New York is not liable for punitive damages under the CHRL. *Id.* Here, the Complaint has not cited a provision of law entitling him to punitive damages, and any claim to punitive damages against the City must be dismissed, also.

## **CONCLUSION**

For the foregoing reasons, each of Plaintiff's claims is insufficient as a matter of law and should be dismissed. Defendants thus respectfully request that their Motion to Dismiss the Complaint be granted, that the Complaint be dismissed with prejudice, that the relief requested by Plaintiff be denied in all respects, that judgment be entered for Defendants, and that Defendants be granted costs, fees and disbursements together with such other and further relief as the Court deems just and proper.

Dated:　　　New York, New York
　　　　　　December 1, 2023

　　　　　　　　　　　　　　　**SYLVIA O. HINDS-RADIX**
　　　　　　　　　　　　　　　Corporation Counsel of the
　　　　　　　　　　　　　　　　City of New York
　　　　　　　　　　　　　　　Attorney for Defendants
　　　　　　　　　　　　　　　100 Church Street, Room 2-141
　　　　　　　　　　　　　　　New York, New York 10007-2601
　　　　　　　　　　　　　　　(212) 356-2441
　　　　　　　　　　　　　　　ropoole@law.nyc.gov

　　　　　　　　　By:　　　　/s/　Rodalton J. Poole
　　　　　　　　　　　　　　　　Rodalton J. Poole
　　　　　　　　　　　　　　　　Assistant Corporation Counsel