UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL RIZZO,

                        Plaintiff,

        v.


NEW YORK CITY DEPARTMENT OF SANITATION
AND CITY OF NEW YORK,

                        Defendants.


# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Christina Martinez, Esq.
*Attorney for Plaintiff*
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
E-mail: ChristinaMartinezEsq@gmail.com

James G. Mermigis
*Attorney for Plaintiff*
The Mermigis Law Group, P.C.
85 Cold Spring Road, Suite 200
Syosset NY 11791
T: (516) 353-0075
E-mail: James@MermigisLaw.com

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT …………………………………………………..…..… 1

STATEMENT OF FACTS …………………………………………….…..……..… 1

STANDARD OF LAW …………………………………………………………….. 3

ARGUMENT …………………………………………………………………… 4

POINT I …………………………………………………………………… 4

Plaintiff's refusal of the COVID-19 vaccine is a religious practice entitled to protection under the applicable statutes.

POINT II …………………………………………………………….……….. 11

Plaintiff's first, third, and fourth causes of action for failure to accommodate pursuant to Title VII, NYCHRL, and NYSHRL state viable claims for relief.

POINT III…………………………………………………………………….. 14

Defendants' undue hardship arguments are premature.

POINT IV…………………………………………………………………….. 17

Plaintiff's fifth cause of action for the Defendants' failure to engage in a cooperative dialogue in violation of the NYCHRL states a viable claim for relief.

POINT V …………………………………………………………..………. 19

Plaintiff's second cause of action for disparate impact pursuant to Title VII states a viable claim for relief.

POINT VI …………………………………………………………..……… 23

Plaintiff's sixth cause of action for a Free Exercise violation states a viable claim for relief.

CONCLUSION ………………………………………………………………….. 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

Air Force Officer v. Austin, No. 5:22-CV-00009-TES, 2022 WL 468799
(M.D. Ga. Feb. 15, 2022) …………………………………………………………..… 24

Ashcroft v. Iqbal, 556 U.S. 662 (2009) …………………………………...………………… 4

Baker v. The Home Depot, 445 F.3d 541 (2d Cir. 2006) …………………………..………11, 12

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) …………………………….……………… 4, 20

Bowen v. Roy, 476 U.S. 693 (1986) …………………………………………………..… 23

Bowles v. New York City Transit Auth., 285 F. App'x 812 (2d Cir. 2008) …………………13

Brown v. Coach Stores, 163 F.3d 706 (2d Cir. 1998) ……………………………………… 20

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir.2002) …………….…………….. 4, 15

Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135 (2d Cir. 2012)…………………………… 21

Church of the Lukumi Babalu Aye, Inc.v. Hialeah, 508 U.S. 520 (1993) ………………….. 23

Cipolloni v. City of New York, 2018 WL 11462821,
 (E.D.N.Y. May 21, 2018), aff'd, 758 F. App'x 76 (2d Cir. 2018) …………………….…. 22

Citizens United v. Schneiderman, 882 F.3d 374 (2d Cir. 2018) ……………………………… 20

Dahl v. Bd. of Trustees of W. Michigan Univ., 15 F.4th 728 (6th Cir. 2021) ……………….24

Doster v. Kendall, No. 1:22-CV-84, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022) ………... 24

Emp't Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872  (1990) ……………….. 8, 23, 24

E.E.O.C. v. Abercrombie & Fitch, 135 S.Ct. 2028 (2015) …………………………………..… 11

E.E.O.C. v. American Federation of State, County and Mun. Employees, AFL–CIO,

937 F.Supp. 166 (N.D.N.Y.1996) …………………………………………………...………… 8

E.E.O.C. v. Consol Energy, Inc., 860 F.3d 131 (4th Cir. 2017) ……………………………. 8

EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247 (2d Cir. 2014) ………………………….. 20

E.E.O.C v. University of Detroit, 904 F.2d 331 (6th Cir.1990) ……………………………… 8

Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295 (N.Y. 2004)…………………………… 11

Fulton v. City of Philadelphia, 141 S. Ct. 1868 (2021) ……………………………….. 23, 24, 25

Garland v. New York City Fire Dep't, 574 F.Supp.3d 120, 129 (E.D.N.Y. 2021) …………… 14

Goel v. Bunge, Ltd., 820 F.3d 554 (2d. Cir. 2016) ……………………………………………… 15

Goldman v. Belden, 754 F.2d 1059 (2d Cir.1985) ……………………………………………….. 4

Goldman v Sol Goldman Invs. LLC, 2022 US Dist LEXIS 175353 (SDNY Sep. 27, 2022) …. 18

Gordon v. MCI Telecommunications Corp., 791 F.Supp. 431 (S.D.N.Y.1992)……………….. 13

Groff v. DeJoy, 600 U.S. 447  (2023) ……………………………………………………...… 12, 16

Heiden v NY City Health & Hosps. Corp.,
2023 US Dist LEXIS 5583 (SDNY Jan. 11, 2023) ……………………………………………... 18

Hosking v Mem. Sloan-Kettering Cancer Ctr., 186 AD3d 58 (1st Dept 2020) ……………. 17, 19

Jacobsen v. New York City Health & Hospitals Corp., 22 N.Y.3d 824  (2014) ……………..... 19

Jenkins v. New York City Transit Auth., 646 F. Supp. 2d 464 (S.D.N.Y. 2009) ……….. 4, 15, 22

Jolly v. Coughlin, 76 F.3d 468  (2d Cir. 1996) ……………………………………………..….. 7

Kane v. de Blasio, 623 F. Supp. 3d 339, 363 (S.D.N.Y. 2022) ……………………………….. 14

Khan v. Fed. Rsrv. Bank of New York,
No. 02 CIV.8893(JCF), 2005 WL 273027 (S.D.N.Y. Feb. 2, 2005) …………………………. 13

LeBlanc v. United Parcel Serv.,
No. 11-cv-6983 (KPF), 2014 WL 1407706 (S.D.N.Y. 2014) ……………………………….... 14

Lenzi v. Systemax, Inc., 944 F.3d 97 (2d Cir. 2019)…………………………………………... 11

Mandala v. NTT Data, Inc., 975 F.3d 202, 208–09 (2d Cir. 2020) …………………………….. 4

Marciano v. de Blasio, 589 F. Supp. 3d 423, 435 (S.D.N.Y. 2022),
appeal dismissed sub nom. Marciano v. Adams, No. 22-570-CV,
2023 WL 3477119 (2d Cir. May 16, 2023),
cert. denied, No. 23-144, 2023 WL 6558491 (U.S. Oct. 10, 2023) ……………………. 13

Matter of Mental Hygiene Legal Serv. v Daniels, 33 NY3d 44 (NY 2019) …………….... 17

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184 (2d Cir.2007) ……………………….. 3

Menges v. Blagojevich, 451 F.Supp.2d, 992 (C.D.Ill.2006) ……………………………… 8

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102 (2d Cir. 2013) ……..… 18

Mines v. City of New York/DHS,
No. 11 Civ. 7886 (JGK), 2013 WL 5904067 (S.D.N.Y. 2013)…………………………… 13

M.O.C.H.A. Soc'y, Inc. v. City of Buffalo, 689 F.3d 263 (2d Cir. 2012) ……………..…. 21

Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567 (S.D.N.Y. 2008)……..… 13

N.Y.C. Tr. Auth. v Exec. Dept., Div. of Human Rights, 89 NY2d 79 (N.Y. 1996)……. 16, 17

Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67 (2d Cir.1998) ……………………... 14

Patrick v LeFevre, 745 F2d 153 (2d Cir 1984) ………………………………….…………… 9

Peterson v. Hewlett-Packard Co., 358 F.3d 599 (9th Cir. 2004) ………..………...……….. 13

Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 482 (2d Cir.1985) ……………………. 7, 14

Poffenbarger v. Kendall,
No. 3:22-CV-1, 2022 WL 594810 (S.D. Ohio Feb. 28, 2022),
appeal dismissed, No. 22-3413, 2022 WL 3029325 (6th Cir. June 30, 2022) ……………... 24

Republican Party of Minn. v. White, 536 U.S. 765 (2002) ……………………………..…. 25

Reyes v. New York State Off. of Child. & Fam. Servs.,
No. 00 CIV. 7693(SHS), 2003 WL 21709407 (S.D.N.Y. July 22, 2003),
aff'd, 109 F. App'x 466 (2d Cir. 2004) ……………………………………………………... 7, 13

Romanello v. Intesa Sanpaolo, S.p.A., 22 N.Y.3d 881 (N.Y. 2013) ………………………… 14

Shelton v. Univ. of Med. & Dentistry of New Jersey, 223 F.3d 220 (3d Cir. 2000) …………. 8

Smith v. New York City Fire Dep't and City of New York,
Index No. 533033/2022, NYSCEF Doc. No. 40, March 3, 2023 …………………………..... 15

Storey v. Burns International Security Services, 390 F.3d 760 (3d Cir.2004) ………….….. 13

Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002) …………………………………..… 19, 21

Tabura v. Kellogg USA, 880 F.3d 544 (10th Cir. 2018) …………………………..…….. 14

Tandon v. Newsom, 593 U.S. 61 (2021) ……………………………………………...… 23

Thomas v. Rev. Bd. Of Ind. Emp't Sec. Div., 450 U.S. 707 (1981) ………………….…..… 9

Trans World Airlines. Inc. v. Hardison, 432 U.S. 63 (1977) ……………………………….. 11

United States v Manneh, 645 F Supp 2d 98, 109 (E.D.N.Y. 2008) …………………….……… 9
U.S. Navy SEALs 1-26 v. Biden,
578 F. Supp. 3d 822 (N.D. Tex. 2022), affirmed, 27 F.4th 336, 339 (5th Cir. 2022) ……….24

United States v. Seeger, 380 U.S. 163 (1965) ……………………………………………… 10

Ventresca-Cohen v. DiFiore, 77 Misc. 3d 652, 177 N.Y.S.3d 853 (N.Y. Sup. Ct. 2022) ...…… 8

Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72 (2d Cir. 2015) ……………………….. 21

Welsh v. U.S., 398 U.S. 333, 343 (1970) ……………………………………………...…… 9, 10

We The Patriots USA, Inc. v. Hochul,
17 F.4th 266, 287 (2d Cir.), opinion clarified, 17 F.4th 368 (2d Cir. 2021),
and cert. denied sub nom. Dr. A. v. Hochul, 142 S. Ct. 2569, 213 L. Ed. 2d 1126 (2022)….. 14

Williams v. New York City Hous. Auth., 816 F. App'x 532, 534 (2d Cir. 2020) ………….… 15

Zelnick v. Fashion Inst. Tech., 464 F.3d 217 (2d Cir. 2006) ………………………….....… 13

**Statutes**

29 C.F.R. 1605.1 ………………………………………………………………………...… 9

42 U.S.C.2000e(j) ……………………………………………………………………….. 6, 12

42. U.S.C.A. § 2000e-2………………………………………………………….…………… 12, 13, 20

Fed.R.Civ.P. 8(a)(2) …………………………………………………………………….. 20

Fed.R.Civ.P. 12(b) …………………………………………………………………….....… 14

N.Y.C. Admin. Code § 8-101 ……………………………………………………………… 7

N.Y.C. Admin. Code § 8-102…………………………………………………………..... 17

Admin. Code § 8-130 …………………………………………………………………... 18

Restoration Act § 7 …………………………………………………………………..... 18

**Other Authorities**

Andrew R. Murphy, *Conscience and Community: Revisiting Toleration
and Religious Dissent in Early Modern England and America* (2001) ……………………… 10

*Commission Guidelines*, 29 C.F.R. § 1605.1 …………………………………………… 10

Michael W. McConnell,
*The Origins and Historical Understanding of Free Exercise of Religion*,
103 Harv. L. Rev. 1409 (1990) …………………………………………………..…..… 10

Steven D. Smith,
*What Does Religion Have to Do with Freedom of Conscience?*,
76 U. Colo. L. Rev. 911, 912 (2005) …………………………………………………..… 10

Stone, *The Conscientious Objector*, 21 Col.Univ.Q. 253 (1919) …………………………. 10

Report of the Governmental Affairs Division,
Committee on Civil Rights, December 18, 2017 …………………………………………..… 19

U.S. EQUAL EMP. OPPORTUNITY COMM'N, EEOC-NVTA-0000-20,
*What You Should Know: Workplace Religious Accommodation* (2014) ……………..…….. 6

Plaintiff Michael Rizzo, former Sanitation Worker for the New York City Department of Sanitation ("DSNY"), asserts his fundamental right to uphold sincerely held religious beliefs, particularly in the context of the denial of a religious accommodation to the COVID-19 vaccine mandate by the City of New York. This lawsuit hinges on the central issue of who determines the legitimacy of religious beliefs under the law. Plaintiff has presented plausible facts supporting viable claims under the Free Exercise Clause of the First Amendment, Title VII, NYSHRL, and NYCHRL, contrary to the Defendants' contention that the complaint fails to state a claim. The Defendants' motion to dismiss reflects their refusal to recognize Plaintiff as a member of a protected class and to acknowledge the legitimacy of his religious practices. This opposition underscores that the government cannot arbitrarily reject religious beliefs it disagrees with, highlighting the importance of protecting individual rights and religious freedom.

## STATEMENT OF FACTS

Plaintiff, Michael Rizzo, was employed as a Sanitation Worker for DSNY from approximately September 5, 2000, up until his wrongful termination on February 11, 2022. Compl. ¶ 1. On October 20, 2021, the City issued its Vaccine Mandate requiring employees of New York City ("City Workers") to receive a COVID-19 vaccine by October 29, 2021. Compl. ¶ 36. The Mandate allowed for religious and medical exemptions. Compl. ¶ 37. It was the Defendants' policy that employees who submitted accommodation requests would be allowed to continue working while their request was pending. Compl. ¶ 38. The City promulgated guidelines for City Workers – the City's FAQ on New York City Employees Vaccine Mandate – which recognized that "[a] sincerely held religious, moral or ethical belief may be a basis for a religious accommodation." Compl. ¶160. The City also promulgated guidance for private sector

employers regarding religious accommodation requests to the private sector mandate and acknowledged the religious refusal to receive the COVID-19 vaccine based upon the use of aborted fetal cell lines in the testing, research, development, and/or manufacturing of the vaccines. Compl. ¶221. DSNY's policy provided that employees granted reasonable accommodations must submit proof of a weekly negative PCR test result. Compl. ¶ 41. Defendants' policies and procedures required them to engage in an interactive process and cooperative dialogue with employees who requested reasonable accommodations. Compl. ¶228.

On October 27, 2021, Plaintiff notified DSNY that his sincerely held religious beliefs conflicted with the Vaccine Mandate and requested a reasonable accommodation to the Vaccine Mandate. Compl. ¶ 39. In response, DSNY sent him an e-mail where he was "encouraged to provide additional information regarding" how his objection was based on his religion. Compl. ¶ 42. Despite numerous attempts to seek clarification from DSNY, Plaintiff received no response. Compl. ¶ 44. Despite working twelve hour shifts seven days a week, Plaintiff e-mailed DSNY, clearly articulating his Catholic beliefs and how they conflicted with the Mandate. Compl. ¶ 45. He explained that, in adherence to his faith, he abstained from tattoos, drugs, alcohol, smoking, and certain medications and medical interventions. Compl. ¶ 45. He emphasized that receiving the COVID-19 vaccination would violate a specific tenet of his Catholic faith – his conscience. Compl. ¶ 45. He asserted that his conscience was his means of communication with God and referred to scriptural and doctrinal sources supporting his stance. Compl. ¶ 45. DSNY informed Plaintiff that he could work while unvaccinated during the consideration of his accommodation request, while submitting weekly negative PCR test results. Compl. ¶ 40. DSNY then denied his request, stating, "the information you provided in support of your request has not sufficiently demonstrated to DSNY that there is a basis for granting you an exemption".  Compl. ¶ 47.

Defendants accommodated other DSNY employees in the same employment position as Plaintiff with weekly PCR testing. Compl. ¶¶ 88; 145.

Plaintiff then appealed to the City's Vaccine Mandate Reasonable Accommodation Appeals Panel ("Citywide Panel"), thoroughly explaining his religious conflict with the Mandate and the tenets his religious practices were based on. Compl. ¶ 48-49. He does not desecrate his body with that which God would consider sinful, including vaccines that were created using aborted fetal cell lines. Compl. ¶ 49. He also explained that disobeying his conscience would be deliberate disobedience against God, leading to condemnation. Compl. ¶ 49. On January 24, 2022, the Citywide Panel denied Plaintiff's accommodation request without contacting him, stating "Does Not Meet Criteria" Compl. ¶ 51-52.

On January 27, 2022, Defendants then discharged Plaintiff from his workplace, writing his name in red letters at his work garage for all of his co-workers to see. Compl. ¶ 53. He was placed on unpaid leave and then terminated on February 11, 2022. Compl. ¶ 54-55.

In June 2022, DSNY offered Plaintiff to return to his employment if he would receive the vaccine but he refused. Compl. ¶ 56. In February 2023, the Mandate was amended so that those who do not provide proof of vaccination no longer need to be excluded from the premises. Compl. ¶ 57. Soon thereafter, Plaintiff contacted DSNY and requested to return to work. Compl. ¶ 58. DSNY then notified him that he would have to waive his right to backpay in order to return to work, but Plaintiff refused. Compl. ¶ 59.

## STANDARD OF LAW

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the Complaint are accepted as true, and all reasonable inferences must be drawn in the Plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.2007). The

Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985). The Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662 (2009). The Second Circuit "clarified that *Iqbal* does not require a plaintiff to plead a *prima facie* case. Instead, it simply requires a plaintiff to "assert [enough] nonconclusory factual matter ... to nudge [her] claim[ ] across the line from conceivable to plausible to proceed." Mandala v. NTT Data, Inc., 975 F.3d 202, 208–09 (2d Cir. 2020) (internal citations omitted).

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken." Jenkins v. New York City Transit Auth., 646 F. Supp. 2d 464, 467 (S.D.N.Y. 2009) (*citing* Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.2002).

## ARGUMENT

**POINT I: Plaintiff's refusal of the COVID-19 vaccine is a religious practice entitled to protection under the applicable statutes.**

Plaintiff's objection to the COVID-19 vaccine is undeniably religious in nature and falls within the protections guaranteed by the Free Exercise Clause of the First Amendment to the United States Constitution, Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

Defendants do not challenge the Plaintiff's sincerity; rather, Defendants argue that "Plaintiff did not articulate a religious objection to the vaccine mandate". Defs. Mem. of Law, p. 6.  In Plaintiff's request for a reasonable accommodation, he identifies himself as a Catholic and explains that refusing the COVID-19 vaccination would violate his religious beliefs because the COVID-19 vaccines were created using aborted fetal cell lines:

> What this means is that I keep my body clean as intended by God, I do not desecrate my body with that which God would consider sinful, including but not limited to vaccines that were created using human cell lines derived from abortion during any stage of the vaccine's development, including the testing phase. The bodies of innocent victims that were aborted deserve the same respect as any other person, not to be treated as a commodity to be scavenged for body parts. The body is the Temple, and we are compelled to protect it from defilement.

Compl. ¶ 50. In support, he cites to scripture that states that life is created by God in the womb[1] and also that his body is the temple of God, which must be glorified, and not destroyed[2].

Additionally, he explains that receiving the COVID-19 vaccine would violate his conscience, Compl. ¶ 45; 50. He explained:

> Conscience as the Catholic Church teaches us is the most secret core and sanctuary of a man, there he is alone with God, whose voice echoes in his depths.
> St Paul wrote: *"In all his activity a man is bound to follow his conscience in order that he may come to God, the end and purpose of life. It follows that he is not to be forced to act in a manner contrary to his conscience. Nor on the other hand, is he to be restrained from acting in accordance with his conscience especially in matters religious."*

Compl. ¶ 45 (emphasis in original). He further explained:

> What this means is that in the past when certain medical interventions have been recommended, I have chosen to decline them if I learn that they may be considered sinful in the eyes of God. The Church warns that we must always obey our conscience as this is where God's voice echoes to us and if we were to deliberately go against it, we would condemn ourselves.

---

[1] Plaintiff quotes Job 31:15: *"Did not he who made me in the womb make them? Did not the same one form us both within our mothers?"* and Psalm 127: 3: *"Children are heritage from the Lord, offspring a reward from him".* Compl. ¶ 50.
[2] Plaintiff quotes 1 Corinthians 3:16-17: *"You are God's temple and God's Spirit dwells in you. If anyone destroys God's temple, God will destroy him. For God's temple is Holy, and you are that temple."* and 1 Corinthians 6:19-20:*"Your body is a temple of the Holy Spirit within you, whom you have from God. You are not your own, for you were bought with a price, so glorify your body."* Compl. ¶ 45.

"Through prayer together God and I determine what life I am to lead that will result in joining my family in Heaven."

What this means is that I pray, I pray to God so that I can make certain that I am living my life as he intended. God blessed me with life, and I keep myself from intentionally sinning against him.

Compl. ¶ 50.

In support, he cited to the Catechism[3] of the Catholic Church, which states man "must not be forced to act contrary to his conscience". Compl. ¶ 45.

Plaintiff's beliefs are religious by any rational reading of the applicable definitions and case law. In his request for a reasonable accommodation, he explained his religious opposition to abortion and the connection to the COVID-19 vaccine, he also explained that his conscience led him to refuse the vaccine as well, and that he believes that his conscience is "God's voice echo[ing]" to him, and that if he were to "deliberately go against [his conscience" he would be "condemn[ed]". Compl. ¶ 50. He referenced Catholic church teachings as well as quoted from scripture and the Catechism of the Catholic Church to support both his beliefs regarding abortion and conscience. Compl. ¶ 45, 50.

"Under Title VII, a practice is religious if the employee's reason for the practice is religious." U.S. EQUAL EMP. OPPORTUNITY COMM'N, EEOC-NVTA-0000-20, *What You Should Know: Workplace Religious Accommodation* (2014). Plaintiff's practice of refusing the COVID-19 vaccination is based on his religious beliefs about abortion, in addition to his religious belief about conscience. Title VII defines religion broadly to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C.2000e(j). NYCHRL goes even

---

[3] The Catechism of the Catholic Church is reference work summarizing the Catholic Church's doctrine, promulgated by Pope John Paul II in 1992. *FAQ about the Catechism*, UNITED STATES CONFERENCE OF CATHOLIC BISHOPS, https://www.usccb.org/committees/subcommittee-catechism/faq-about-catechism (last accessed May 1, 2023).

further, protecting "creed"[4] as well as religion. N.Y.C. Admin. Code § 8-101.

Defendants aver that "Plaintiff has, without evidence, adopted the theory that COVID-19 vaccines are in some way connected to abortion." Defs. Mem. of Law, p. 7. First, Plaintiff does not have to prove that COVID-19 vaccines are in fact connected to abortion. All that matters is that Plaintiff believes this to be true. *See* Jolly v. Coughlin, 76 F.3d 468, 469 (2d Cir. 1996) (concluding that prison officials cannot impinge on sincere religious belief simply by showing that "as an objective matter, the plaintiff's belief is not accurate or logical").

Defendants' argument that "Plaintiff cites not one religious doctrine, dogma, nor tenet precluding inoculation" also must be rejected. Defs. Mem. of Law, p. 6. "Title VII protects more than the … practices specifically mandated by an employee's religion." Reyes v. New York State Off. of Child. & Fam. Servs., No. 00 CIV. 7693(SHS), 2003 WL 21709407, at *6 (S.D.N.Y. July 22, 2003), aff'd, 109 F. App'x 466 (2d Cir. 2004) (internal citations omitted).

> Furthermore, defendant's position would require this Court to make a determination as to whether or not a particular practice is or is not required by the tenets of the employee's religion. In Title VII cases concerning religious discrimination, as in questions regarding the free exercise of religion, it is only appropriate for a court to engage in an analysis of the sincerity of a plaintiff's religious beliefs, and not the verity of those beliefs.

Id. at *6 (*citing* Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 482 (2d Cir.1985)).

Plaintiff's objection is firmly rooted in religious beliefs that consider abortion sin and the use of aborted fetal cell lines defiling the aborted babies who he sees as innocent victims of murder. Compl. ¶ 50. This objection arises from a deeply held conviction that man is created by God in the womb, making abortion sinful. Compl. ¶ 50. The Plaintiff's stance is not a mere

---

[4] According to the City of New York, "Creed refers to a set of moral or ethical beliefs and the practices and observances associated with those beliefs. Although creed includes traditional religious beliefs, it also incorporates belief systems that may not be expressed by an organized religious group." Creed, The Law, CITY OF NEW YORK, available at https://www.nyc.gov/site/fairhousing/renters/creed.page#:~:text=Creed%20refers%20to%20a%20set,observances%20associated%20with%20those%20beliefs (last accessed September 24, 2023).

philosophical or personal preference but is explicitly tied to religious convictions, constituting a

valid basis for a claim under Title VII. Moreover,

> A survey of recent judicial decisions reveals that objections to COVID-19 vaccination
> because the vaccines are derived from research on fetal cell lines of aborted fetuses are
> common (see e.g. Does v. Mills , , 142 S. Ct. 17, 18-19 [2021, Gorsuch, J., dissenting];
> Dr. A v. Hochul, 142 S. Ct. 552, 553 [2021, Gorsuch, J., dissenting]; We the Patriots
> USA, Inc. v. Hochul, 17 F.4th 266, 272-273 [2021], opn clarified 17 F.4th 368 [2d Cir.
> 2021], cert denied —— U.S. ——, 142 S. Ct. 2569, 213 L.Ed.2d 1126 [2022]; Together
> Emps. v. Mass Gen. Brigham Inc., 19 F.4th 1, 4-6 [1st Cir. 2021]; Kane v. de Blasio, 575
> F. Supp. 3d 435, 442 [S.D.N.Y. 2021]; Ferrelli v. State of N.Y. Unified Court Sys., 2022
> U.S. Dist. LEXIS 39929, *8-9, 2022 WL 673863, *3 [N.D.N.Y., Mar. 7, 2022]; Marciano
> v. de Blasio, 2022 U.S. Dist. LEXIS 41151, 2022 WL 678779 [S.D.N.Y. 2022]).

Ventresca-Cohen v. DiFiore, 77 Misc. 3d 652, 664–65, 177 N.Y.S.3d 853, 864 (N.Y. Sup. Ct.
2022). And federal courts have long accepted Title VII claims for religious discrimination based
on religious objection to abortion. [5]

Of course, it is not required or even relevant how common the objection is or – as the

Defendants argue, whether the objection is "without evidence" or "based on personal

assumptions". Defs. Mem of Law, p. 6-7. All of that is beside the point. "It is not [Defendants']

place as an employer, nor [y]ours as a court, to question the correctness or even the plausibility

of [Plaintiff]'s religious understandings." *See* Emp't Div., Dep't of Human Res. of Or. v. Smith,

494 U.S. 872, 887, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) ("Repeatedly and in many different

contexts, we have warned that courts must not presume to determine ... the plausibility of a

religious claim.")." E.E.O.C. v. Consol Energy, Inc., 860 F.3d 131, 142–43 (4th Cir. 2017)

---

[5] Menges v. Blagojevich, 451 F.Supp.2d, 992, 1003 (C.D.Ill.2006) (pharmacists stated Title VII claim based on
religious opposition to abortion and emergency contraceptives); Shelton v. Univ. of Med. & Dentistry of New
Jersey, 223 F.3d 220, 225 (3d Cir. 2000) (held plaintiff who alleged her religious beliefs forbid her from
participating in any abortions of live fetuses established a *prima facie* case under Title VII); E.E.O.C. v. American
Federation of State, County and Mun. Employees, AFL–CIO, 937 F.Supp. 166 (N.D.N.Y.1996) (employee stated a
claim for religious discrimination under Title VII when employee's union required payment of an agency fee which
went to an organization that supported the death penalty and abortion and the employee's religious beliefs did not
support those issues); E.E.O.C v. University of Detroit, 904 F.2d 331 (6th Cir.1990) (finding a professor's claim
valid where professor alleged Title VII religious discrimination when professor's union required payment of an
agency fee which went to an organization that supported abortion).

(holding that the employer's failure to recognize the conflict between employee's sincere religious beliefs and the requirement to use a hand scanner system, constituted a violation of Title VII; the employee believed that participation in the employer's hand scanning system signaled allegiance to the Antichrist, and the court rejected the employer's arguments that the employee misunderstood the Book of Revelation as irrelevant and improper).

"The fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee." 29 C.F.R. 1605.1. Whether the Roman Catholic Church religiously proscribes vaccination is irrelevant. Welsh v. U.S., 398 U.S. 333, 343 (1970) (finding that petitioner's beliefs were religious in nature although the church to which he belonged did not teach those beliefs); Thomas v. Rev. Bd. Of Ind. Emp't Sec. Div., 450 U.S. 707, 715 (1981) (disagreement among sect workers as to whether their religion made it sinful to work in an armaments factory irrelevant to whether belief was religious in nature because "[t]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect.").

And Defendants argument that "Plaintiff's conscience, not his religion, led him to refuse the vaccine", Defs. Mem. of Law, p. 6, ignores his objection based upon his religious beliefs on abortion, and the religious framework within which Plaintiff's conscience operates. Significantly, according to Plaintiff's beliefs, conscience is a religious imperative.

> The definition of religion is not only subjective but also "expansive,", and includes "the feelings, acts, and experiences of individual men in their solitude, so far as they apprehend themselves to stand in relation to whatever they may consider the divine." In sum, *even "impulses prompted by dictates of conscience* as well as those engendered by divine commands are therefore safeguarded against secular intervention, so long as the claimant conceives of the beliefs as religious in nature."

United States v Manneh, 645 F Supp 98, 109 (E.D.N.Y. 2008) (*quoting* Patrick v LeFevre, 745 F2d 153, 158 (2d Cir 1984) (emphasis added).

His objection is firmly rooted in his religious beliefs and guided by scripture and church doctrine. The argument that his objection is merely secular morality in disguise overlooks the explicit religious foundation upon which his objection is built.[6] And anyway, under Title VII, "religious" includes in its definition "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views. 29 CFR §1605.1. "This standard was developed in [Seeger] and [Welsh]. The Commission has consistently applied this standard in its decisions." *Commission Guidelines*, 29 C.F.R. § 1605.1 In those cases, the United States Supreme Court interpreted the term "religious" broadly. In Seeger, the Supreme Court granted a religious exemption to a military conscientious objector, quoting later Chief Justice Harlan Fiske Stone:

> Both morals and sound policy require that the state should not violate the conscience of the individual. All our history gives confirmation to the view that liberty of conscience has a moral and social value which makes it worthy of preservation at the hands of the state. So deep in its significance and vital, indeed, is it to the integrity of man's moral and spiritual nature that nothing short of the self-preservation of the state should warrant its violation; and it may well be questioned whether the state which preserves its life by a settled policy of violation of the conscience of the individual will not in fact ultimately lose it by the process.

U.S. v. Seeger, 380 U.S. 163, 170 (1965) (quoting Stone, *The Conscientious Objector*, 21 Col.Univ.Q. 253, 269 (1919)).; *see also* Welsh, 398 U.S. at 340 (for an objection to be religious, it had to "stem from the registrant's moral, ethical, or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions."). Scholars and legal experts have long recognized the interconnectedness of "free exercise of religion" and "freedom of conscience," considering them as essentially interchangeable concepts.[7]

---

[6] Historical precedent supports the religious nature of conscience and its association with freedom of religion. Throughout history, the concept of "freedom of conscience" has been intricately tied to the promotion of religious freedom, and pleas for freedom of conscience have historically been made and understood in religious terms, representing an individual's right to practice his religious beliefs without coercion or infringement. *See generally* Andrew R. Murphy, *Conscience and Community: Revisiting Toleration and Religious Dissent in Early Modern England and America* (2001).

[7] Steven D. Smith, *What Does Religion Have to Do with Freedom of Conscience?,* 76 U. Colo. L. Rev. 911, 912 (2005). *See generally* Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 Harv. L. Rev. 1409, 1482-94 (1990).

But here, conscience is a tenet of Plaintiff's religious beliefs. He believes God is communicating with him directly through his conscience, and that if he disobeys his conscience he would be condemned by God. Compl. ¶ 50. By citing these religious doctrines regarding conscience and abortion, Plaintiff has clearly articulated that his objection to the vaccine is rooted in his deeply held religious beliefs. Plaintiff requests that the Court take judicial notice of the Amicus Brief submitted by the EEOC in an appeal in the Eighth Circuit, where the EEOC explains how individuals' aborted fetal cell line objections to COVID-19 vaccines are religious for Title VII purposes. A true and accurate copy of the Amicus Brief is attached as **Exhibit 1**.

**POINT II**: **Plaintiff's first, third, and fourth causes of action for failure to accommodate pursuant to Title VII, NYCHRL, and NYSHRL state viable claims for relief.**

Under Title VII and the NYSHRL[8], "it is an unlawful employment practice ... for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." <u>Baker v. The Home Depot</u>, 445 F.3d 541, 546 (2d Cir. 2006) *quoting* <u>Trans World Airlines. Inc. v. Hardison</u>, 432 U.S. 63, 74, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) (internal quotations omitted). "Accommodate ... means ... allowing the plaintiff to engage in her religious practice despite the employer's normal rules to the contrary." <u>E.E.O.C. v. Abercrombie & Fitch</u>, 135 S.Ct. 2028, 2032 n.2 (2015). The employer's obligation to accommodate the religious practices of its employees derives from 42 U.S.C. § 2000e–2(a)(1), which states: **"It shall be an unlawful employment practice for an employer-- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."**

---

[8] "The standards for recovery under the [NYSHRL] are the same as the federal standards under title VII." <u>Forrest v. Jewish Guild for the Blind</u>, 3 N.Y.3d 295, 786 N.Y.S.2d 382, 819 N.E.2d 998, 1006 n.3 (N.Y. 2004); <u>Lenzi v. Systemax, Inc.</u>, 944 F.3d 97, 107 n.7 (2d Cir. 2019).

"As originally enacted, Title VII did not spell out what it meant by discrimination "because of ... religion," <u>Groff v. DeJoy</u>, 600 U.S. 447, 457 (2023), however, the EEOC interpreted that provision over many decades as requiring employers to make reasonable accommodations, and then finally, "Congress amended Title VII in 1972" and "provided that '[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business'." <u>Groff</u>, 600 U.S. at 458 (*quoting* 42 U.S.C. § 2000e(j)).

Defendants' motion to dismiss Plaintiff's cause of action for failure to accommodate rests on two erroneous bases: (1) that Plaintiff does not have a bona fide belief, and (2) his termination was not considered discipline. In Part I, Plaintiff explains that his refusal of the COVID-19 vaccine fits squarely within the definition of religion under the applicable statutes, which counters Defendants' first argument and thus Plaintiff will not repeat those arguments here.

Title VII explicitly prohibits an employer from failing or refusing to hire, discharging, or otherwise discriminating against an individual with respect to his compensation, terms, conditions, or privileges of employment. 42. U.S.C.A. § 2000e-2. Discharge is explicitly articulated in the statute as prohibited conduct.

Defendants' arguments that Plaintiff's Title VII failure to accommodate claim fails because his termination does not constitute "discipline" is sophistry based on a myopic reading of the third prong in the *prima facie* test for failure to accommodate claims stated in <u>Baker</u>, 445 F.3d at 546. It is well settled that termination is a part of the prohibited conduct covered by 42 U.S.C.A. § 2000e-2. This Court clarified that an adverse employment action is sufficient to establish the

third element of a failure to accommodate case. *See* <u>Mines *v.* City of New York/DHS</u>, No. 11 Civ. 7886 (JGK), 2013 WL 5904067, at \*8 (S.D.N.Y. 2013).

> Although in the specific contexts of the *Knight* and *Philbrook* cases the Second Circuit referred to "discipline," the standard necessarily reaches a broader range of action by the employer. To be sure, a plaintiff must show that she has suffered a cognizable injury. *See Storey v. Burns International Security Services,* 390 F.3d 760, 764 (3d Cir.2004). But that injury may occur whenever, in the language of Title VII, the employer's action affects the employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). It is not limited to what is conventionally understood to be "discipline." Thus, courts generally characterize the requirement as one of demonstrating that the plaintiff has suffered an "adverse employment action." *See, e.g., Peterson,* 358 F.3d at 606; *Reyes v. New York State Office of Children and Family Services,* No. 00 Civ. 7693, 2003 WL 21709407, at \*7 (S.D.N.Y. July 22, 2003), *aff'd,* 109 Fed. Appx. 466 (2d Cir.2004); *Durant v. NYNEX,* 101 F.Supp.2d 227, 233 (S.D.N.Y.2000). Accordingly, actions not normally considered "discipline," such as a failure to hire, may give rise to liability when an employment requirement conflicts with an applicant's religious practices. *See, e.g., Gordon v. MCI Telecommunications Corp.,* 791 F.Supp. 431, 434-35 (S.D.N.Y.1992).

<u>Khan v. Fed. Rsrv. Bank of New York</u>, No. 02 CIV.8893(JCF), 2005 WL 273027, at \*5 (S.D.N.Y. Feb. 2, 2005); *see* <u>Zelnick v. Fashion Inst. Tech.</u>, 464 F.3d 217, 225 (2d Cir. 2006) (termination qualifies as adverse employment actions for purposes of Title VII claims); <u>Bowles v. New York City Transit Auth.</u>, 285 F. App'x 812, 813 (2d Cir. 2008) (discipline prong of failure to accommodate prima facie case satisfied by "adverse employment action, " which includes "termination of employment").

Moreover, Plaintiff also clearly pleaded that Defendants placed him on unpaid leave prior to his termination, which also satisfies the third prong. <u>Monterroso v. Sullivan & Cromwell, LLP</u>, 591 F. Supp. 2d 567, 583 (S.D.N.Y. 2008).

Defendants erroneously reference cases addressing terminations under the Vaccine Mandate that focus on due process claims related to disciplinary procedures. These cases are irrelevant to Plaintiff's failure-to-accommodate claims.[9]

---

[9] <u>Marciano v. de Blasio</u>, 589 F. Supp. 3d 423, 435 (S.D.N.Y. 2022), <u>appeal dismissed sub nom.</u> <u>Marciano v. Adams</u>, No. 22-570-CV, 2023 WL 3477119 (2d Cir. May 16, 2023), <u>cert. denied,</u> No. 23-144, 2023 WL 6558491 (U.S. Oct.

**POINT III: Defendants' undue hardship arguments are premature.**

Once a plaintiff makes a *prima facie* case for failure to accommodate pursuant to Title VII and NYSHRL, "the burden shifts to the employer to show that it cannot reasonably accommodate the plaintiff without undue hardship on the employer's business." Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 481 (2d Cir.1985). Defendants bear the burden of proving this affirmative defense to Plaintiff's failure to accommodate claims. Thus, it is procedurally improper for Defendants to bring up such defenses on a motion to dismiss. *See* Fed.R.Civ.P. 12(b). The absence of undue hardship on a defendant is not an essential element of a plaintiff's claim under Title VII; it is an affirmative defense. *See* Tabura v. Kellogg USA, 880 F.3d 544, 557 (10th Cir. 2018). Accordingly, dismissal on that ground is proper only if Defendants show some obvious bar to securing relief on the "face of the complaint". Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir.1998).

And "the NYCHRL presumes all accommodations to be reasonable until proven otherwise". LeBlanc v. United Parcel Serv., No. 11-cv-6983 (KPF), 2014 WL 1407706 at *18 (S.D.N.Y. 2014). The employer has the burden of proving undue hardship, which is defined as "a significant interference with the safe or efficient operation of the workplace". Admin. Code § 8-107(3)(b); *see also* Romanello v. Intesa Sanpaolo, *S.p.A.*, 22 N.Y.3d 881, 885 (N.Y. 2013).

Defendants cannot meet their burden of proving undue hardship on the face of the Complaint. Defendants rely on two arguments, neither of which demonstrate undue hardship: (1) that Plaintiff worked for a significant time during the pandemic without protective equipment, and (2) that Plaintiff rendered aid to the public. However, what the Complaint actually stated was

---

10, 2023); Kane v. de Blasio, 623 F. Supp. 3d 339, 363 (S.D.N.Y. 2022); Garland v. New York City Fire Dep't, 574 F.Supp.3d 120, 129 (E.D.N.Y. 2021); We The Patriots USA, Inc. v. Hochul, 17 F.4th 266, 287 (2d Cir.), opinion clarified, 17 F.4th 368 (2d Cir. 2021), and cert. denied sub nom. Dr. A. v. Hochul, 142 S. Ct. 2569, 213 L. Ed. 2d 1126 (2022).

that the Defendants did not *provide* the Plaintiff with Personal Protective Equipment. Compl.

¶33. With regard to rendering aid, the Complaint stated:

> Through weather conditions that tested the limits of human endurance, Mr. Rizzo's dedication to his duties never wavered. He navigated the myriad challenges of his role, from clearing snow-choked streets during the city's worst blizzards to rendering aid in emergencies ranging from car accidents to house fires, from thwarting robberies to aiding ambulances stranded in the snow.

Compl. ¶3.

However, even assuming Defendants' version of these facts were correct, there is no rule as a matter of law that working without personal protective equipment or rendering aid causes an undue hardship. Moreover, Defendants can never prove undue hardship because (1) other DSNY employees in the same position as Plaintiff were provided religious and medical exemptions by the DSNY and the City of New York and were allowed to submit PCR testing in lieu of vaccination, Compl. ¶¶ 88, 135, 148, 273; (2) Defendants accommodated Plaintiff himself with weekly PCR testing while his accommodation request was under consideration by DSNY and the Citywide Panel, Compl. ¶ 40; and (3) the City's own promulgated guidelines[10] provided that weekly PCR testing would not cause undue hardship:

> **What alternative to vaccination is allowed if an employee is granted a reasonable accommodation?** For requests filed after October 27, 2021, the only allowable accommodation from vaccination without causing an undue hardship and/or disruption is submission of a weekly negative test result.

Smith v. New York City Fire Dep't and City of New York, Index No. 533033/2022, NYSCEF Doc. No. 40, March 3, 2023, Defendants' Exhibit F, FAQ on New York City Employees Vaccine Mandate, ¶24, p. 7 of 14. A true and accurate copy of the FAQ is attached as **Exhibit 2**.

---

[10] Plaintiff asks that this Court take judicial notice of the City's guidelines (titled FAQ on New York City Employees Vaccine Mandate) which are public record and were filed by the Defendant City of New York in many state court proceedings, including Smith. Williams v. New York City Hous. Auth., 816 F. App'x 532, 534 (2d Cir. 2020); Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d. Cir. 2016). Additionally, the Plaintiff explicitly referenced this document in the Complaint. Compl. ¶160. Jenkins v. New York City Transit Auth., 646 F. Supp. 2d 464, 467 (S.D.N.Y. 2009) (*citing* Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.2002) (Court may consider documents Plaintiff references in Complaint).

Moreover, the Defendants cannot demonstrate undue hardship on the face of the complaint, where pursuant to Title VII, "courts must apply the [undue hardship] test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." Groff, 143 S. Ct. at 2281 (internal quotations omitted).

> Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations. This distinction matters. Faced with an accommodation request like Groff 's, it would not be enough for an employer to conclude that forcing other employees to work overtime would constitute an undue hardship. Consideration of other options, such as voluntary shift swapping, would also be necessary.

Id. at 2286 (internal citations omitted).

Such factors are not provided in the Complaint and not mentioned by Defendants who focused solely on a "blanket exemption[11]." In N.Y.C. Tr. Auth. v Exec. Dept., Div. of Human Rights, the Court of Appeals held that Transit Authority violated the NYSHRL by failing to accommodate an employee's religious beliefs where there was no showing by Transit that "a genuine search for reasonable alternatives was undertaken." 89 NY2d 79, 90 (N.Y. 1996). The employee requested an accommodation due to her Sabbath observance, which conflicted with the seniority-based schedule. Id. at 83-84. While Transit was not required to violate the collective bargaining agreement, Transit "failed to show that it tried at all to accommodate [the employee] in other ways". Id. at 90. Transit did not show that it negotiated with the union for either a blanket accommodation for Sabbath observers or an individual one, nor did it explore other options like early leave on Friday or late arrival on Saturday. Id. at 89. Additionally, Transit

---

[11] The argument that Plaintiff ever requested or expected a blanket exemption is also erroneous. Plaintiff was submitting weekly PCR test results as an accommodation for over three months from October 2021 through January 2022. Compl. ¶¶ 40, 54. And DSNY notified Plaintiff that any reasonable accommodation granted would require the employee to submit weekly PCR testing. Compl. ¶41.

didn't prove the impracticality of providing necessary training for tasks required for a different shift. *Id.* at 89. Transit also hadn't demonstrated the necessity of the employee's presence during her Sabbath and could not simply been dispensed with. *Id.* at 89. Therefore, it didn't meet its burden of proving undue hardship. *Id.* at 90. Here, Defendants cannot and do not address reasonable alternatives.

**POINT IV**:  **Plaintiff's fifth cause of action for the Defendants' failure to engage in a cooperative dialogue in violation of the NYCHRL states a viable claim for relief.**

Defendants' claim that they engaged in a cooperative dialogue contradicts the NYCHRL's clear language. "The statutory text is the clearest indicator of legislative intent and the words should be given their natural and obvious meaning." Matter of Mental Hygiene Legal Serv. v Daniels, 33 NY3d 44, 67 (NY 2019). Cooperative dialogue is clearly and unambiguously defined in the NYCHRL:

> The term "cooperative dialogue" means the process by which a covered entity and a person entitled to an accommodation, or who may be entitled to an accommodation under the law, engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity.

N.Y.C. Admin. Code § 8-102.

This comprehensive definition leaves no room for reinterpretation. "Unlike the State HRL where the employer must engage in interactions with the employee revealing at least some deliberation upon the viability of an accommodation, the City HRL clearly requires a more rigorous process." Hosking v Mem. Sloan-Kettering Cancer Ctr., 186 AD3d 58, 63 (1st Dept 2020) (internal quotations and citations omitted). The NYCHRL unequivocally required Defendants to engage in a dialogue concerning: (1) Plaintiff's accommodation needs; (2) Potential accommodations that may address Plaintiffs accommodation needs; (3) Alternatives to

Plaintiff's requested accommodation; and (4) Difficulties that such potential accommodations may pose for the Defendants. None of this information was discussed with Plaintiff, nor do the Defendants contend that any of this information was considered or discussed with Plaintiff. The Defendants did not do this, and their conduct does not satisfy their obligation under the NYCHRL. Goldman v Sol Goldman Invs. LLC, 2022 US Dist LEXIS 175353, at *12-13 (SDNY Sep. 27, 2022) (holding Defendants failed to engage in a cooperative dialogue where "[a] cooperative dialogue must discuss '*the person's* accommodation needs'" and "[t]he *general* accommodations Defendants made 'to protect employees from COVID-19' does not speak to the accommodations that *Plaintiff* required" and where Defendants did not "discuss alternative accommodations" with Plaintiff); Heiden v NY City Health & Hosps. Corp., 2023 US Dist LEXIS 5583, at *111 (SDNY Jan. 11, 2023) ("The only relevant interactions with Plaintiff were his submission of the request, the submission of Plaintiff's forms, and Ravenel [Defendant's HR] informing Plaintiff that they had denied his request. There was otherwise no exchange with Plaintiff exhibiting a 'cooperative dialogue,' particularly concerning his disability, any 'potential accommodations' or the 'difficulties for the covered entit[y]'.").

In 2005, the City Council amended the NYCHRL to require that its provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (*quoting* Restoration Act § 7). In 2016, the City Council made further amendments to the NYCHRL directing that "exceptions and exemptions…shall be construed narrowly in order to maximize deterrence of discriminatory conduct". Admin. Code § 8-130 (b).

In 2018, "to emphasize the seriousness by which employers must engage in the interactive process, the City Council amended the [NYC]HRL" to add a separate cause of action against employers who fail to engage in a cooperative dialogue with employees who request reasonable accommodations. Hosking, 186 AD3d at 63-64.

> This bill would clarify the reasonable accommodation requirement by expressly requiring, as a part of the reasonable accommodation process, that covered entities engage in a cooperative dialog with individuals who they know or should know may require accommodation.

Report of the Governmental Affairs Division, Committee on Civil Rights, December 18, 2017, p.4731 (noting that the bill would "legislatively modify the holding of Jacobsen v. New York City Health & Hospitals Corp., 22 N.Y.3d 824, 838 (2014), which held that refusal to engage in a good faith interactive process is not independently actionable under the HRL").

Nothing in the legislative history plausibly suggests that cooperative dialogue should be read to mean anything less than its statutory definition. Accepting Defendants' conduct as satisfying the NYCHRL would redefine cooperative dialogue, giving employee's less protection than the statute explicitly provides.

**POINT V: Plaintiff's second cause of action for disparate impact pursuant to Title VII states a viable claim for relief.**

Defendants contend "[t]he Complaint fails to show that non-religious employees who opposed the vaccine mandate for secular reasons were affected differently or treated more favorably than those who raised opposition on religious grounds." On this basis, Defendants argue that the cause of action should be dismissed. The Defendants are incorrect.

First, Plaintiff does not need to identify a comparator at the pleading stage. The Supreme Court clarified in Swierkiewicz that requiring plaintiffs to show a *prima facie* case of discrimination is an "evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510 (2002). To survive a motion to dismiss per Swierkiewicz, a plaintiff need only plead "a short and plain statement of the claim showing that the [plaintiff] is entitled to

relief" under Title VII.2 Id. at 508 (*quoting* FED. R. CIV. P. 8(a)(2)).  The Second Circuit clarified that the Supreme Court's later decision in Iqbal does not require a plaintiff to plead a *prima facie* case. Instead, it simply requires a plaintiff to "assert [enough] nonconclusory factual matter ... to nudge [her] claim[ ] across the line from conceivable to plausible to proceed." *See* EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014) (internal quotation marks and alterations omitted).

To plead a plausible claim of disparate impact, a plaintiff must allege 'that a facially neutral employment policy or practice has a significant disparate impact.' Brown v. Coach Stores, 163 F.3d 706, 712 (2d Cir. 1998). For plaintiffs to " 'nudge[ ] their claims across the line from conceivable to plausible,' they must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.' " Citizens United v. Schneiderman, 882 F.3d 374, 380 (2d Cir. 2018) (*quoting* Twombly, 550 U.S. at 570). Thus, Plaintiff is not required to plead (much less "show" or "prove") a *prima facie* case.

Plaintiff has properly pleaded his disparate impact cause of action. Title VII prohibits employers from limiting, segregating, or classifying applicants for employment or employees in any way that would tend to deprive individuals of employment opportunities because of their religion. 42 U.S.C. § 2000e–2(a)(2). When Defendants classified City Workers by vaccination status, it deprived individuals, including Plaintiff, of employment because of his religion. The Mandate therefore has a disparate impact on people whose religious beliefs prohibit vaccination with the COVID-19 vaccines. This is a facial violation of §2000e-2(a)(2). Plaintiff surely meets the "minimal burden" of alleging facts "suggesting" an "inference" of a disparate impact based on religion – facts that plausibly give rise to an inference that an employment practice "has the

effect of denying members of a protected class equal access to employment opportunities."
M.O.C.H.A. Soc'y, Inc. v. City of Buffalo, 689 F.3d 263, 273 (2d Cir. 2012); *see also* Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) ("On a motion to dismiss, the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.,* whether plaintiffs allege enough to 'nudge[ ] their claims across the line from conceivable to plausible.' ") (citations omitted).

And although not necessary, Plaintiff does plead the facts necessary to meet the *prima facie* test. In the Second Circuit, a *prima facie* showing of disparate impact requires the plaintiff to "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 151 (2d Cir. 2012). In the Complaint, Plaintiff identifies a specific employment practice – the City Worker Vaccine Mandate requiring all City Workers to provide proof of COVID-19 vaccination. Compl. ¶ 108. He also alleges that he was terminated because his religious beliefs, observances, and practices prevents him from complying with this policy. Compl. Compl. ¶ 83, 138, 140. Defendants accommodated others in the same or similar position as Plaintiff, Compl. ¶ 147 – including those with religious beliefs that conflicted with the Mandate. Compl. ¶271. Plaintiff pleaded that Defendants discriminated against him because he is Catholic[12], and that they simply rejected his religious beliefs, refusing to acknowledge them as worthy of solicitude. Compl. ¶144-145, 159.

It is impossible for Plaintiff to plead facts that are in the sole possession of control of the Defendants "[b]efore discovery has unearthed relevant facts and evidence." Swierkiewicz, 534

---

[12] Defendants also outrageously contend that Plaintiff is not a member of a protected class. However, Catholics are a protected class under the law.

U.S. at 512. In discovery, Plaintiff will seek pertinent information regarding the employee makeup of those who requested religious accommodations, the Defendants' firing patterns and practices with regard to unvaccinated City Workers, and the breakdown in religious accommodations that were granted on the basis of religious sect (i.e., Catholic) and religious reason for objecting to the Mandate (i.e. objection to abortion). This information will identify the Defendants' motivation for refusing to accommodate the Plaintiff and reveal which employees were similarly situated but remained unaffected by the Mandate (i.e., non-Catholics, employees of any religion without an abortion-based objection, employees of any religion without conscience-based objection, vaccinated employees without religious beliefs, etc.).

According to the City, "approximately 1,780 former employees were terminated for failing to submit proof of vaccination".[13] And in a FOIL response from the N.Y.C. Department of Citywide Administrative Services, the City revealed that 1,169 DSNY employees requested religious accommodations in 2021 and 858 were denied. A true and accurate copy of the FOIL response is attached as **Exhibit 3**.[14] Certainly, from this information the Court can infer that the Mandate caused a significant number of terminations on the basis of religion. If the Court requires this information to be explicitly included in the Complaint, then Plaintiff seeks leave to amend the Complaint to include it. However, Plaintiff maintains that such information is unnecessary at this stage of litigation. Jenkins, 646 F. Supp. 2d at 469 ("It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery.").

---

[13] *With Over 96 Percent of City Workers Fully Vaccinated, Mayor Adams Announces COVID-19 Vaccination Will Become Optional for City Workers,* City of New York, February 6, 2023, available at https://www.nyc.gov/office-of-the-mayor/news/092-23/with-96-percent-city-workers-fully-vaccinated-mayor-adams-covid-19-vaccination. Plaintiff requests that the Court take judicial notice of this fact.

[14] Given the nature and source of the content, the Plaintiff requests that the Court take judicial notice of the FOIL response from the City of New York. Cipolloni v. City of New York, 2018 WL 11462821, at *3 (E.D.N.Y. May 21, 2018), aff'd, 758 F. App'x 76 (2d Cir. 2018) (taking judicial notice of FOIL response from district attorney's office).

**POINT VI: Plaintiff's sixth cause of action for a Free Exercise violation states a viable claim for relief.**

"[A] law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." Church of the Lukumi Babalu Aye, Inc.v. Hialeah, 508 U.S. 520, 546 (1993). Because Defendants burdened Plaintiff's religious exercise through policies lacking neutrality and general applicability, Defendants' denial of Plaintiff's religious exemption is subject to strict scrutiny under the Free Exercise Clause. Lukumi, 508 U.S. at 531–532; Fulton v. City of Philadelphia, 141 S. Ct. 1868, 1877 (2021). Neutrality and general applicability are distinct concepts, and therefore challenged conduct could fail the separate test of general application even if it satisfied the neutrality criteria. Lukumi, 508 at 542 (referring to general applicability as a "second requirement of the Free Exercise Clause").

The Mandate is not generally applicable because Defendants provide both medical and religious exemptions. Compl. ¶272. "A law is not generally applicable if it 'invite[s] the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions.'" Fulton, 141 S. Ct. at 1877 (*quoting* Smith, 494 U.S. at 884). "[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." Smith, 494 U.S. at 884 (*quoting* Bowen v. Roy, 476 U.S. 693, 708 (1986)); Lukumi, 508 U.S. at 537 (same); *see also* Tandon v. Newsom, 593 U.S. 61, 64 (2021) ("California's Blueprint System contains myriad exceptions and accommodations for comparable activities, thus requiring the application of strict scrutiny"). "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given, because it 'invite[s]' the government to decide which reasons for not complying with the policy are worthy of solicitude,

Smith, 494 U.S. at 884, here at the [Defendants'] 'sole discretion'." Fulton, 141 S. Ct. at 1879; Dahl v. Bd. of Trustees of W. Michigan Univ., 15 F.4th 728, 733 (6th Cir. 2021) (denial of religious exemptions to student athletes subject to strict scrutiny because university considered medical and religious exemptions and accommodation on an individual basis).

And although Plaintiff does not need to additionally demonstrate hostility to get to strict scrutiny, Defendants have also demonstrated a hostility to religion by denying Plaintiff's religious exemption request. Specifically, the refusal to accept Plaintiff's religious beliefs as worthy of acknowledgment – granting others with religious beliefs exemptions but singling out Plaintiff's religious beliefs as undeserving – demonstrates a hostility to religion. Compl. ¶271. Defendants discriminated against Plaintiff – rejecting his religious beliefs – specifically because he is Catholic. Compl. ¶144-145. At this stage of the litigation, Plaintiff has made out a *prima facie* case for a Free Exercise violation.

Several courts have held that similar COVID-19 vaccination requirements were not neutral or generally applicable.[15] It is clearly plausible based on the complaint and without the benefit of factual development at this early stage of litigation, that the refusal to accommodate Plaintiff is subject to strict scrutiny. Dismissal is thus improper. Defendants cannot overcome strict scrutiny

---

[15] *See, e.g.,* Doster v. Kendall, No. 1:22-CV-84, 2022 WL 982299, at *14 (S.D. Ohio Mar. 31, 2022) ("COVID-19 vaccination mandate is not generally applicable because it allows for medical and administrative exemptions as well as religious exemptions); Air Force Officer v. Austin, No. 5:22-CV-00009-TES, 2022 WL 468799, at *12 (M.D. Ga. Feb. 15, 2022) (Air Force "Defendants' COVID-19 vaccination requirement is neither neutral towards religion nor generally applicable"); U.S. Navy SEALs 1-26 v. Biden, 578 F. Supp. 3d 822, 838 (N.D. Tex. 2022), affirmed, 27 F.4th 336, 339 (5th Cir. 2022) (determining that the Navy's mandate is not neutral and generally applicable; "by accepting individual applications for exemptions, the law invites an individualized assessment of the reasons why a servicemember is not vaccinated" and "the 'comparable secular activity' includes refusing the vaccine for medical reasons or participation in a clinical trial"); Poffenbarger v. Kendall, No. 3:22-CV-1, 2022 WL 594810, at *16 (S.D. Ohio Feb. 28, 2022), appeal dismissed, No. 22-3413, 2022 WL 3029325 (6th Cir. June 30, 2022) (Air Force's COVID-19 vaccine mandate policy is "subject to strict scrutiny because it is not neutral and generally applicable" where it "provides a mechanism for individualized exemptions" and "it distinguishes between religious and non-religious exemptions").

and certainly not when applying the Rule 12(b)(6) plausibility standard, considering only the Complaint.

Strict scrutiny requires the State to show that the Mandate is narrowly tailored to advance a compelling government interest. <u>Fulton</u>, 141 S. Ct. at 1881. "Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so." <u>Id.</u> Defendants do not argue that they can overcome strict scrutiny. Plaintiff specifically pled that the Defendants' *refusal to accommodate* the Plaintiff's religious beliefs substantially burdened Plaintiff's Free Exercise of Religion. Compl. ¶ 268. Defendants cannot demonstrate how or why they have a compelling interest in the vaccination of *the Plaintiff specifically* particularly where other similarly situated employees are provided exemptions. Compl. ¶273.  The Mandate "cannot be regarded as protecting an interest of the highest order . . . when it leaves appreciable damage to that supposedly vital interest unprohibited." <u>Republican Party of Minn. v. White</u>, 536 U.S. 765, 780 (2002). This is not a case where the employer refused to provide religious exemptions because of safety concerns, like for example, healthcare workers. Rather, here, other sanitation workers like Plaintiff were provided religious accommodations and permitted to submit weekly PCR testing. Compl. ¶135. Defendants cannot prove that terminating Plaintiff was the least restrictive means when he could have submitted PCR testing like the other sanitation workers. "Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so." <u>Fulton</u>, 141 S. Ct. at 1881.

## **CONCLUSION**

Defendants' motion to dismiss should be denied.

Dated: Staten Island, New York
December 22, 2023

Respectfully submitted,

_____
Christina Martinez, Esq.
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
ChristinaMartinezEsq@gmail.com

/s/ James Mermigis

_____

James G. Mermigis
The Mermigis Law Group, P.C.
85 Cold Spring Road, Suite 200
Syosset, New York 11791
T: (516) 353-0075
James@MermigisLaw.com

***Attorneys for Plaintiffs***