Civil Action No.  22-cv-7190-JMF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL RIZZO,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF
SANITATION and CITY OF NEW YORK

Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANTS' MOTION TO
DISMISS THE COMPLAINT**

***HON. SYLVIA O. HINDS-RADIX***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-141*
*New York, New York 10007*

*Of Counsel:  Rodalton Poole*
*Tel.:  (212) 356-2441*
*Matter No.:  2022-072359*

## PRELIMINARY STATEMENT

Defendants, the New York City Department of Sanitation ("DSNY") and City of New York ("City") (collectively, Defendants), submit this reply memorandum of law in further support of their motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff's allegations remain insufficient to state a cause of action.  For the reasons set forth in Defendants' original motion papers, as well as the reasons set forth below, Defendants' motion to dismiss should be granted in its entirety.

## ARGUMENT

### POINT I

### PLAINTIFF HAS FAILED TO STATE A CLAIM FOR DISPARATE IMPACT BECAUSE HE HAS NOT SUFFICIENTLY ALLEGED DISPROPORTIONATE EFFECT TO A PROTECTED CLASS

To begin, and as addressed in Defendants' opening brief, Plaintiff has failed to make any non-conclusory allegations to raise an inference of discrimination under Title VII disparate impact analysis. *See* Defendant New York City Department of Sanitation and Defendant City of New York's Memorandum of Law in Support of Their Motion to Dismiss the Complaint ("Def. Mot."), at p. 8-9. Therefore, his disparate impact claim must be dismissed. While Plaintiff relies on *Swierkiewicz v. Sorema N.A.* in an attempt to persuade the Court that assumptive assertions are sufficient to state a claim, his argument lacks merit. In *Swierkiewics*, the U.S. Supreme Court found that, pursuant to Federal Rule of Civil Procedure 8(a), a complaint need only give "notice of the basis for a petitioner's claim." 534 U.S. 506, 514 (2002). However, the Southern District has since clarified:

> When *Swierkiewics* was decided in 2002, *Conley v. Gibson* was good law and provided the motion to dismiss standard of review for evaluating the sufficiency of claims. Under *Conley's* liberal pleading standards, 'a complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Cocca-Rau v. Std. Ins. Co.*, 2020 WL 4207442; 2020 U.S. Dist. LEXIS 131429, at * 9 (S.D.N.Y. Jul. 22, 2020) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In *Cocca-Rau*, the Southern District noted that in *Swierkiewicz*, the Supreme Court had relied on *Conley v. Gibson* in its finding that "conclusory allegations of discrimination were enough for a Title VII Claimant to survive a motion to dismiss;" however, the Southern District emphasized that *Conley* had been abrogated by *Twombly* in 2007. *See* 2020 WL 4207442. Referencing the Second Circuit's decision in *Vega v. Hempstead Union Free Sch. Dist.*, decided in 2015, thirteen years after *Swierkiewicz*, the Southern District found that a plausibility standard had been applied to pleadings post *Twombly* and *Iqbal*. *Id.*; *see also Vega*, 801 F. 3d 72, 85-87 (2d Cir. 2015). That is, "a plaintiff must plausibly alleged that (1) the employer took adverse action against him and (2) his . . . religion . . . was a motivating factor in the employment decision." *Vega*, 801 F. 3d at 86. Plausibility was then defined by the Court: "[A] plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Further, "where the . . . facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not" shown the pleader is entitled to relief. *Iqbal*, 556 U.S. 662, 679 (2009).

Therefore, though a discrimination complaint "need not allege facts establishing each element of a prima facie case . . . it must at minimum assert nonconclusory factual matter sufficient to 'nudge [its] claim . . . across the line from conceivable to plausible. . ." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F. 3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680, quoting *Twombly*, 550 U.S. at 570). In *EEOC v. Port Auth.*, the Second Circuit recognized that the pleading standard

for employment discrimination cases established by the U.S. Supreme Court in *Swierkiewicz*, had been modified by *Bell Atlantic Corp* v. *Twombly* (2007) and *Ashcroft v. Iqbal* (2009). *See* 789 F. 3d 247, 254 (2d Cir. 2014). Thus, "a formulaic recitation of the elements of a cause of action [would] not due." *Twombly*, 550 U.S. at 555.

In the instant case, Plaintiff has failed to plead allegations that make liability plausible. He merely recites the elements for a cause of action for disparate impact based upon religion: "Those who did not religiously oppose the COVID-19 vaccination were able to continue working." Compl. ¶ 115. However, Defendants are left to ponder the many possible antecedents to the pronoun "those," based on the scantness of the Complaint at paragraph 115.

Under Title VII, "a complaining party can bring a disparate impact claim where [they] can 'demonstrate that a respondent uses a particular employment practice that causes a disparate impact on the basis of . . . religion . . .'" *Samuels v. William Morris Agency*, 2011 WL 2946708 (S.D.N.Y. Jul. 18, 2011). "[T]he basis for a successful disparate impact claim involves a comparison between two groups . . . " and "must reveal that although neutral, the policy in question imposes a significant adverse or disproportionate impact on a **protected group**." *Id.* (emphasis added). In this case, Plaintiff fails to make any non-conclusory allegations regarding those who might have been treated differently, and his pleading is predicated on his assumptions; this is evident given that, despite his numerous years of service with DSNY, he is unable to name a single comparator who was similarly situated and treated differently during DSNY's reasonable accommodation process.

It must also be noted that even in *Swierkiewicz*, the plaintiff, who was not held to the *Iqbal* plausibility standard, was able to provide demographic information, making his Title VII complaint less speculative than that in the instant case. *See* 534 U.S. 506, 514 ("His complaint . .

. included the ages and nationalities of at least some of the relevant persons involved with his termination.") In this case, because Plaintiff makes only conclusory allegations regarding the effect to his alleged class and the effect to those beyond it, his disparate impact claims fails. Further, it must be noted that Plaintiff's assertion that those with religious beliefs were accommodated (*see* P. Memo in Opp. to Motion to Dismiss, p 21) contradicts his allegations that "those who religiously oppose[d] the COVID-19 vaccination were unable to continue working." *See* Comp. ¶ 115. Plaintiff has made the assumption that, because he refused to follow a health and safety regulation, it necessarily follows that those  who were religious suffered discrimination by a city with a longstanding history of religious diversity and tolerance.  This is legally insufficient, and Plaintiff's disparate impact claim must be dismissed.

**POINT II**

**PLAINTIFF HAS DEMONSTRATED NEITHER THAT HE ARTICULATED A RELIGIOUS BELIEF IN CONFLICT WITH AN EMPLOYMENT POLICY NOR THAT THE TERMINATION OF HIS PUBLIC POSITION WAS AN ADVERSE ACT OCCURRING DUE TO RELIGION, UNDER FAILURE TO ACCOMMODATE ANALYSIS.**

Next, Plaintiff has failed to articulate a bona fide religious belief in conflict with an employment policy and to show that his termination from a public position constituted discipline during the COVID-19 emergency. Thus, his failure to accommodate claim must be dismissed. As an initial matter, it is well-settled that the vaccine mandate was issued not to impinge upon religious freedom but to protect the public during a public health crisis. *See Marciano v. De Blasio*, 589 F. Supp. 3d 423, 432 (S.D.N.Y. 2022) (The Court quoted the Health Commissioner in his reasoning: "A system of vaccination for individuals providing City services and working in City offices will potentially save lives, protect public health, and promote public safety").

Here, Plaintiff has presented a personal belief couched as one related to religion by citing bible verses, none of which clarified for DSNY the religious nature of his objection. A Plaintiff must show that his "espoused beliefs . . . stem from religious convictions and have not merely been framed in terms of religious beliefs . . . to gain the legal remedy desired." *Beickert v. N.Y.C. Dep't of Educ.*, 2023 Wl 6214236 (E.D.N.Y. Sept. 25, 2023). It was not Plaintiff's religious belief but his personal, unsubstantiated assumptions that vaccines are connected to abortion that prevented him from compliance. Medical and scientific beliefs are not a basis for religious accommodation. *See Beickert*, 2023 WL 6214236; *see also Check ex rel. MC v. New York City Dep't of Educ.*, 2013 WL 2181045, at *3 (E.D.N.Y. May 20, 2013). Thus, Plaintiff has not demonstrated a bona fide religious belief.

Furthermore, because Plaintiff failed to meet the conditions of his job by refusing vaccination, his termination cannot be considered discipline. Vaccination was made a condition of employment during the pandemic in an effort to keep New York City safe. *See Marciano*, 589 F. Supp. 3d at 432. While the plaintiff in *Marciano* brought a case for Due Process violation, this Court still weighed in on the validity of a vaccine mandate for public employees. *See id*. ("The NYPD's officers regularly interact with the public . . . often in emergency situations where close contact is unavoidable.") Thus, it was found that the vaccine mandate was, in fact, a condition of employment for public employees. *See id*. In this case, because Plaintiff failed to meet his job qualifications, which were temporarily altered to address a public health concern, his termination was not an act of discipline. Also, it must be noted that, in opposing this position, Plaintiff relies on cases that predate the COVID-19 crisis, do not relate to public employees, or otherwise come from sister circuits providing non-binding precedent. *See* P. Opp. Motion, p. 13.

Additionally, and contrary to Plaintiff's argument (*see* P. Opp. Motion, p. 14-17), Defendants' undue hardship argument is not premature given the allegations provided in the Complaint. Though an undue hardship is an affirmative defense, it may be raised in a pre-answer motion to dismiss when the facts establishing it are clear. *Lowman v. NVI LLC*, 821 F. App'x 29, 31-32 (2d Cir. 2020); *Beickert v. N.Y.C. Dep't of Educ.*, 2023 WL 6214236 *8 (E.D.N.Y. Sept. 25, 2023). The Complaint makes clear that Plaintiff had first-responder duties in his position with DSNY. *See* Compl. ¶ 3. ("he navigated the myriad challenges of his role, from clearing snow-choked streets . . . to **rendering aid in emergencies ranging from car accidents to house fires** . . .) (emphasis added). Thus, Defendants take the common-sense position that being unvaccinated in the midst of an unprecedented health crises, when one interacts with members of the public on an emergency basis, posed an undue risk to members of the public. Weekly PCR tests could not possibly ensure a COVID-free operation for employees working day-to-day with members of the public in such an unpredictable manner. Therefore, undue hardship has been established.

## POINT III

### DEFENDANTS ENGAGED IN COOPERATIVE DIALOGUE WITH PLAINTIFF, PURSUANT TO NYC HUMAN RIGHTS LAW.

Next, Plaintiff has failed to state a claim under NYC Human Rights Law because Defendants engaged in cooperative dialogue. Though Plaintiff references the plain language of the Administrative Code, this does nothing to show that Defendants failed to comply with the law. Plaintiff's chief contention is that Defendants failed to discuss his accommodation needs. *See* P. Memo in Opp. to Motion to Dismiss, p. 18. However, Plaintiff relies on two disability discrimination cases, which are not applicable here. *See Id*.; *see also Goldman v. Sol Goldman Invs. LLC*, 2022 U.S. Dist. LEXIS 175353 (S.D.N.Y. Sept. 27, 2022); *see also Heiden v. New York City Health & Hosps. Corp.*, 2022 WL17188 (S.D.N.Y. Jan. 11, 2023).  In *Goldman*, for example,

when asked whether she had engaged with the plaintiff in an interactive process, the defendant admitted that she had not. 2022 WL 4482296 (S.D.N.Y. 27, 2022); 2022 U.S. Dist. LEXIS 175353, at *10 (S.D.N.Y. Sept. 27, 2022).  Nor did the defendant in *Goldman* request information regarding the plaintiff's requested accommodation. *See Id*.  Additionally, in *Heiden*, the Court determined that Defendants immediately rejected the plaintiff's request to work from home without requesting any information regarding his disability. *See* 2023 WL 171888 (S.D.N.Y. Jan. 11, 2023), 2023 U.S. Dist. LEXIS 5583, at * 109-10 (S.D.N.Y. Jan. 11, 2023).  In the instant case, DSNY went through its established interactive process - Plaintiff first submitted a request for an accommodation, then, upon DSNY's request, submitted additional information to assist the agency in understanding the nature of his objection. *See* Compl. ¶¶ 39-47. Defendants understood well that Plaintiff was requesting an exemption from the mandate given his stated objection. *See id*. ¶ 39. Given his position as an essential work who dealt directly with the public, there was no alternative to discuss. The City did, however, give Plaintiff the opportunity to appeal and again lay out his position and his needs, and Plaintiff availed himself to this opportunity. *See id*. ¶¶ 48-50. Further, when an employer publicly offers information on the process for reviewing accommodation requests and informing employees on how to submit applications and appeal denials, it has satisfied the City Human Rights Law. *See Lynch v. Bd. Of Educ. Of N.Y.*, 2023 NYLJ LEXIS 1815 (N.Y. Sup. Ct. Jul. 13, 2023). Here, the accommodation process had been fully published and promoted, and this is how Plaintiff knew how and when to submit his request in the first place. *See* Compl. ¶ 38.

**POINT IV**

**PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE FIRST AMENDMENT BECAUSE THE MANDATE WAS NEUTRAL AND GENERALLY APPLICABLE**

7

Finally, as it pertains to Plaintiff's Free Exercise argument, rational basis is to be applied, not strict scrutiny as Plaintiff argues in opposition to Defendants' motion. *See* P. Memo in Opp. to Motion to Dismiss, p. 23-25.  To state a claim under the Free Exercise Clause, Plaintiff must establish that the object of the law in question was to infringe upon or restrict practices because of religious motivation or to otherwise restrict religious conduct. *See Okewedy v. Molinari*, 69 Fed. Appx. 482, 484 (2d Cir. 2003). Moreover, a "law that incidentally burdens religious exercise is constitutional when it (1) is neutral and generally applicable and (2) satisfies rational basis review." *Mora v. N.Y. State Unified Ct. Sys.*, 2023 WL 6126486 (Sept. 19, 2023). "The minimum requirement of neutrality is that a law not discriminate on its face." *Id*.  Plaintiff argues that the exemptions made the mandate non-generally appliable. P. Memo in Opp. to Motion to Dismiss, p. 23.  However, the Southern District has found that "an exemption is not individualized simply because it contains express exceptions for objectively defined categories of persons." *Id*. (quoting *Kane v. De Balsio*, 19 F. 4th 152, 165 (2d Cir. 2021)). As the City has made clear, the purpose of the vaccine mandate was to protect public health and take "reasonable measures to reduce the transmission of COVID-19 when providing" services to New Yorkers." *See  nyc.gov/assets/doh/downloads/pdf/covid-19-vaccination-requirement-city-employees.pdf*.  It applied to all City employees and contractors and in no way singled out those who declined vaccines on religious grounds. Thus, and for the reasons stated in Defendants Memorandum in Support of a Motion to Dismiss, the policy is neutral on its face and should thereby be given a rational basis review. *See Mora*, 2023 WL 6126486 (finding that the COVID-19 vaccine mandate issued by the N.Y. Unified Court System was neutral and generally applicable  because it did not single out religious employees nor had the plaintiff argued that its purpose was to suppress religion.) Further, the Court in *Mora* emphasized that, "by permitting exemptions for [employees]

who put forth sincerely held religious beliefs,' the Vaccine Mandate '[went] beyond what the Constitution requires." *Id*. Therefore, Plaintiff's assertion that the City's exemption policy made the mandate not generally applicable is incorrect.

Plaintiff cites *Fulton v. City of Philadelphia* out of context and in error. *See* P. Memo, p. 23. To explain, in *Fulton* the City of Philadelphia declined to work with a Catholic foster agency that refused to consider gay and lesbian applicants wanting to serve as foster parents. 141 S. Ct. 1868, 1876 (2021). The challenged policy was the city's foster care contract, which read: "Provider shall not reject a child or family . . . for services based upon . . . sexual orientation . . . unless an exception is granted by the Commissioner . . . **in his/her sole discretion**." *Id*. at 1878 (emphasis added). It was the "entirely discretionary exemptions" that rendered that law "not generally applicable." *Id*. In other words, the Commissioner had the opportunity to treat every foster agency as an applicant differently. *See id*. The instant case is different in that it applied to all employees but allowed for medical and religious exemptions only. That is, so long as employees articulated a legitimate medical or religious need, they were granted an exemption, thereby avoiding any burden to religion. The choice to grant exemptions was not left to the discretion of any City official. Exemptions were made in accordance with the provision of the mandate, and no discretionary decisions were made. Thus, there was no infringement upon religion, and Plaintiff's Free Exercise claim fails.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, and those set forth in Defendants' memorandum of law in support of their motion to dismiss, Defendants respectfully request that their motion to dismiss be granted, that the Complaint be dismissed in its entirety, that the Plaintiff's request for relief be denied in all respects, that judgment be entered for Defendants, and

that Defendants be granted costs, fees and disbursements together with such other and further relief

as the Court deems just and necessary.

Dated:        New York, New York
              Jan. 5, 2024

                                   **SYLVIA O. HINDS-RADIX**
                                   Corporation Counsel of the
                                      City of New York
                                   Attorney for Defendants
                                   100 Church Street, Room 2-141
                                   New York, New York 10007-2601
                                   (212) 356-2441
                                   ropoole@law.nyc.gov

                          By:   /s/
                                _____
                                   Rodalton J. Poole
                                   Assistant Corporation Counsel