UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
:
MICHAEL RIZZO, :
:
Plaintiff, :
: 23-CV-7190 (JMF)
-v- :
: OPINION AND ORDER
NEW YORK CITY DEPARTMENT OF :
SANITATION et al., :
:
Defendants. :
:
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Michael Rizzo ("Rizzo") was a sanitation worker with the New York City Department of Sanitation ("DSNY"). In October 2021, Rizzo applied for a religious exemption from DSNY's COVID-19 vaccination mandate on the ground that the vaccination violated his sincerely held Catholic beliefs. In November 2021, DSNY denied the application and, weeks later, placed Rizzo on leave without pay; thereafter, it terminated him. As a result of these events, Rizzo brings claims for religious discrimination in violation of federal, state, and local law against DSNY and the City of New York (the "City"). Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss his Complaint. For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following brief factual summary is drawn from the facts alleged in the Complaint, which are taken as true and construed in the light most favorable to Rizzo for purposes of this motion, as well as from documents attached to, and incorporated by reference in, the Complaint. *See, e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018).

Rizzo worked at DSNY from September 2000 to February 2022.  *See* ECF No. 1 ("Compl."), ¶ 25.  On October 20, 2021, in response to the then-ongoing COVID-19 pandemic, the City's Commissioner of Health and Mental Hygiene issued a vaccine mandate that required all City employees to get vaccinated by October 29, 2021.  *See id*. ¶ 36.  DSNY implemented the City's policy, and, on October 23, 2021, notified employees that those who did not comply with the mandate would be placed on leave without pay.  *See id*. ¶ 38.  Employees could, however, request exemptions from the mandate for medical or religious reasons, *id*. ¶ 38, and submit weekly negative COVID-19 PCR test results in lieu of providing proof of vaccination, *see id.* ¶ 35, an accommodation that DSNY granted to some DSNY employees, *see id.* ¶ 135.  On October 27, 2021, following DSNY's directions, *see id.* ¶ 38, Rizzo notified DSNY that the mandate conflicted with his sincerely held religious belief and requested an accommodation, *see id*. ¶ 39.  On November 5, 2021, DSNY emailed Rizzo seeking supplemental information regarding his accommodation request.  *See id*. ¶¶ 42, 45.  Upon receiving this request, Rizzo promptly called DSNY officers and left a voicemail asking for further guidance on what to provide as supplemental information, but he never heard back.  *See id.* ¶ 44.  Despite DSNY's silence, Rizzo provided an email response to the request for supplemental information, stating that, "[t]he Catholic [c]hurch teaches [him] that a person may refuse medical intervention"; that his Catholic teachings "morally require[d]" him to obey his conscience; and that he had "practiced [his] faith by declining medical interventions in the past."  *Id.* ¶ 45.

Without acknowledging Rizzo's supplemental submission, DSNY denied his accommodation request on November 18, 2021, stating that "the information [he] provided . . . has not sufficiently demonstrated to DSNY that there is a basis for granting [the] exemption."  *Id.* ¶ 47.  Rizzo again called and emailed DSNY officers regarding the denial but, once again,

received no response. *See id.* ¶ 49. Rizzo then appealed to the New York City Vaccine Mandate Reasonable Accommodation Appeals Panel ("Citywide Panel"), which ultimately denied his appeal, providing only that he "[did] not meet criteria." *Id*. ¶¶ 50-51. On January 28, 2022, DSNY placed Rizzo on leave without pay and finally terminated his employment on February 11, 2022. *See id*. ¶¶ 54-55.

On the basis of these events, Rizzo brings a failure to accommodate claim and a disparate impact claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"). *See* Compl. ¶¶ 69-244. He also brings a claim for failure to engage in a cooperative dialogue under the NYCHRL and alleges a violation of the Free Exercise Clause of the First Amendment of the Constitution. *See id.* ¶¶ 245-92. He seeks both compensatory damages and punitive damages. *See id.* Prayer for Relief.

## LEGAL STANDARDS

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018). A court will not dismiss any claims unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) — that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Further, if the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.  Where, as here, a plaintiff brings claims of employment discrimination, however, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination.  They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

## DISCUSSION

Defendants move to dismiss all of Rizzo's claims for failure to state a claim.  *See* ECF No. 20.  They independently move to dismiss all claims against DSNY on the ground that it is not a suable entity and to dismiss Rizzo's request for punitive damages on the ground that they are unavailable against a municipality.  *See* ECF No. 21 ("Defs.' Mem."), at 17-18.  Rizzo fails to respond to either of these independent arguments.  Accordingly, his claims against DSNY and his request for punitive damages are deemed abandoned.  *See, e.g.*, *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *7 (S.D.N.Y. Sept. 26, 2019) ("It is well established that a district court may, and generally will, deem a claim abandoned when a counseled plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (cleaned up) (citing cases)), *aff'd*, 829 F. App'x 533 (2d Cir. 2020) (summary order).  With that, the Court will turn to Rizzo's claims against the City, taking each in turn.

### A. Failure to Accommodate

The Court begins with Rizzo's failure-to-accommodate claims.  *See* Compl. ¶¶ 69-102.  To make out a *prima facie* case of religious discrimination based on a failure to accommodate in

4

violation of Title VII, Rizzo must allege that "(1) [he] held a bona fide religious belief conflicting with an employment requirement; (2) [he] informed [his] employers of this belief; and (3) [he was] disciplined for failure to comply with the conflicting employment requirement." *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006). Rizzo's allegations are plainly sufficient to meet this test. He explicitly alleges that his sincerely held religious beliefs conflicted with the vaccine mandate. Compl. ¶ 39. He informed DSNY of that belief, *id.* ¶¶ 39, 45, citing multiple passages from Christian Scripture, stating that he was "raised Catholic" and had "practiced [his] faith by declining medical interventions in the past," and that "if a Catholic comes to an informed judgment they should not receive a vaccine, then the Catholic Church requires that the person . . . refuse the vaccine," *id.* ¶ 45. And he was disciplined for failing to comply with the vaccine mandate, first by being placed on leave without pay and later by being fired. *Id.* ¶¶ 54-55. That is enough to establish a *prima facie* claim. *See, e.g.*, *Adams v. N.Y. State Unified Ct. Sys.*, No. 22-CV-9739 (JMF), 2023 WL 5003593, at *2 (S.D.N.Y. Aug. 4, 2023); *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 508 (S.D.N.Y. 2023), *aff'd*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024) (summary order); *Corrales v. Montefiore Med. Ctr.*, No. 22-CV-3219 (LAP), 2023 WL 2711415, at *5-6 (S.D.N.Y. Mar. 30, 2023); *Riley v. N.Y.C. Health & Hosps. Corp.*, No. 22-CV-2736 (JGK), 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023).

The City's arguments to the contrary are frivolous. First, the City contends that Rizzo's objection to the vaccine mandate was based on conscience, not religion. *See* Defs.' Mem. 6-7.[1]

---

[1] The City's memorandum of law states that Rizzo "has failed to meet his pleading burden because . . . he failed to inform his employer of a bona fide belief." Defs.' Mem. 10. Although that statement is a reference to the second prong of the *prima facie* test, it is plain that the City's real argument pertains to the first prong. In either case, the City's argument fails.

But Rizzo's submissions to DSNY made repeated reference to Christian Scripture, asserted that his Catholic teachings "morally require[d]" him to obey his conscience, and noted that he had "practiced [his] faith by declining medical interventions in the past." Compl. ¶ 45. That is more than enough to satisfy the first and second prongs of the *prima facie* test at this stage. *See, e.g.*, *Camp v. L.A. Arena Company, LLC*, No. ED-CV-22-2220 (JGB), 2023 WL 4680797, at \*2, 7 (C.D. Cal. June 15, 2023) (concluding that the plaintiff pled adequate facts to support his failure to accommodate claim where he alleged he was a Christian and "believes that his body belongs to God and is a temple of the Holy Spirit" and "that it is against his religion to ingest or inject his body with possible harmful substances"). Second, the City contends that Rizzo fails to satisfy the third prong of the *prima facie* test because following the vaccine mandate was a "mandatory condition of employment," and termination for "failure to satisfy a qualification of employment" is not discipline. Defs.' Mem. 10-13. But that is just flat wrong. *See, e.g.*, *Algarin*, 678 F. Supp. 3d at 509 ("Allegations of termination of employment for failure to comply with the conflicting employment requirement of mandatory vaccination are sufficient to plead the final element of the *prima facie* case of religious discrimination for failure to accommodate."); *Corrales*, 2023 WL 2711415, at \*5-6 (same). The cases that the City cites to the contrary are wholly inapposite. *See, e.g.*, *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 436 (S.D.N.Y. 2022) (discussing the N.Y.C. Administrative Code's disciplinary procedures, not Title VII); *Garland v. N.Y.C. Fire Dep't*, 574 F. Supp. 3d 120, 127 (E.D.N.Y. 2021) (same).

   As a fallback, the City contends that, even if Rizzo has established a *prima facie* case, his claim must be dismissed because granting him an exemption would have caused DSNY to suffer an "undue hardship." Defs.' Mem. 13-15. But that contention fares no better. Undue hardship is an affirmative defense, so it may be raised on a pre-answer motion to dismiss only if "the facts

6

establishing it are clear from the face of the complaint." *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929 (CS), 2023 WL 3467143, at *5 (S.D.N.Y. May 15, 2023). That is not the case here. Among other things, DSNY's own mandate allowed for "reasonable accommodations," Defs.' Mem. 2-3, and DSNY granted such accommodations for other employees similarly situated to Rizzo, *see* Compl. ¶¶ 88, 135, 147-148, 273. In fact, DSNY permitted Rizzo to work with accommodations — namely, submission of weekly negative PCR test results — while his request for an exemption was pending. *Id.* ¶ 40. Thus, this is a far cry from the main case on which the City relies, which held that providing religious accommodations would result in "undue hardship" to the City because the plaintiffs were teachers who "[could not] physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population." *Kane v. de Blasio*, 623 F. Supp. 3d 339, 362-63 (S.D.N.Y. 2022). At a minimum, the City's undue burden argument cannot be resolved at this stage of the litigation.

For these reasons, the City's motion to dismiss Rizzo's Title VII failure-to-accommodate claim must be and is denied. It follows that the City's motion to dismiss Rizzo's analogous claims under the NYSHRL and the NYCHRL must also be denied, as the standards applicable to those claims are either the same or more employee-friendly than the standards applicable to Title VII. *See, e.g.*, *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019) (noting that Second Circuit typically treats Title VII and NYSHRL claims as "analytically identical, applying the same standard of proof to both claims"); *Bivens v. Inst. for Cmty. Living*, No. 14-CV-7173 (PAE), 2016 WL 11701799, at *1 (S.D.N.Y. Feb. 3, 2016) ("[W]hile federal and state civil rights laws set a floor below which the NYCHRL cannot fall, the NYCHRL may be construed more favorably to plaintiffs in certain particulars than its federal and state counterparts." (citing

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)); *see also Hatzimihalis v. SMBC Nikko Sec. Am., Inc.*, No. 20-CV-8037 (JPC), 2023 WL 3764823, at *11 (S.D.N.Y. June 1, 2023) (noting that the NYSHRL was amended in 2019 in a way that courts have construed to make "the standard for claims closer to the standard of the NYCHRL" (quoting *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021) (cleaned up))).

### B. Failure to Engage in Cooperative Dialogue

Next, Rizzo brings a claim for failure to engage in cooperative dialogue as required by the NYCHRL. Compl. ¶¶ 245-62. That statute provides, in relevant part, that "it shall be an unlawful discriminatory practice for an employer . . . to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation." N.Y.C. Admin. Code § 8-107(28)(a). A "cooperative dialogue" is defined, in turn, as "the process by which a covered entity and a person entitled to an accommodation, or who may be entitled to an accommodation . . . engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8-102. The dialogue "may involve a 'meeting with the employee who requests an accommodation, requesting information about the condition and what limitations the employee has, asking the employee what he or she specifically wants, showing some sign of having considered the employee's request, and offering and discussing available alternatives when the request is too burdensome." *Vangas v. Montefiore Med. Cent.*, 6 F. Supp. 3d 400, 420 (S.D.N.Y. 2014) (quoting *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 218-19 (2d Cir. 2001)). Critically, the NYCHRL is to be construed "broadly in favor of discrimination

plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

Measured against these standards, Rizzo's allegations are sufficient to state a claim. Among other things, Rizzo alleges that, upon receiving a request for supplemental information, he called DSNY for guidance and never heard back, Compl. ¶ 44; that DSNY denied his request for accommodation in conclusory fashion, saying only that "the information" he had provided did not "sufficiently demonstrate[]" that there was a basis for exemption, *id.* ¶ 47; that he then called and emailed DSNY's Associate Counsel, but never received a response, *id.* ¶ 49; and that the Citywide Panel also rejected his appeal in conclusory fashion, saying only that he "[did] not meet criteria," *id.* ¶ 51 (capitalization altered).  This is "a long way from the framework of cooperative problem solving based on open and individualized exchange in the workplace that" the NYCHRL intended.  *Phillips v. City of N.Y.*, 66 A.D.3d 170, 175 (1st Dep't 2009); *see Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 186 A.D.3d 58, 63-64 (1st Dep't 2020) (observing that, in 2018, the New York City Council amended the NYCHRL "to codify *Phillips*").  DSNY failed to respond to multiple requests from Rizzo for information and guidance; failed to explain in any meaningful way "why his application did not qualify for an accommodation," *Marsteller v. City of New York*, 217 A.D.3d 543, 545 (2023); and failed to communicate why granting Rizzo an exemption would result in hardship for DSNY.  The NYCHRL "clearly requires a more rigorous process" than the one alleged by Rizzo here. *Hosking*, 186 A.D.3d at 63.  Accordingly, the City's motion to dismiss Rizzo's cooperative dialogue claim must be and is denied.

## C. Disparate Impact

Rizzo's final statutory claim is a disparate impact claim under Title VII.  *See* Compl. ¶¶ 103-18.  As relevant here, the statute prohibits employment practices that are facially neutral but disparately impact a protected group and cannot be justified by a business necessity.  *See Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 620 (S.D.N.Y. 2009); *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 52 (2d Cir. 1999).  To establish a *prima facie* case of disparate impact, a plaintiff "must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two."  *Malave v. Potter*, 320 F.3d 321, 325 (2d Cir. 2003).  A disparate impact plaintiff must establish that a comparison between individuals affected and unaffected by the questioned policy reveals "that although neutral, the policy in question imposes a significantly adverse or disproportionate impact on a protected group of individuals."  *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003) (internal quotation marks omitted).  At the motion-to-dismiss stage, a plaintiff need not "plead a *prima facie* case.  Instead," the plaintiff need only "assert enough nonconclusory factual matter to nudge his claim across the line from conceivable to plausible to proceed.'"  *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020) (cleaned up).  But that does require the plaintiff to "at least set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim."  *Id.* at 209.

Rizzo fails to do so.  In particular, he fails to demonstrate a disparity between those in his protected class and an appropriate comparator group.  To succeed on a disparate impact claim, a plaintiff must "utilize the appropriate comparison groups."  *Watson v. N.Y. Pressman's Union No. 2*, 444 F. App'x 500, 501 (2d Cir. 2011) (summary order); *see also Malone v. N.Y. Pressman's Union No. 2*, No. 07-CV-9583 (LTS), 2011 WL 2150551, at *7-8 (S.D.N.Y. May

31, 2011).  The complaint must "identify members of a protected group that are affected by the neutral policy and then identify similarly situated persons who are unaffected by the policy."  *Watson*, 444 F. App'x at 501.  At best, Rizzo alleges only that "[t]hose who religiously oppose the COVID-19 vaccination were unable to continue working due to the [v]accine [m]andate" and "[t]hose who did not religiously oppose the COVID-19 vaccination were able to continue working."  Compl. ¶¶ 115-16.  But this allegation falls short in multiple ways.  First, the relevant comparator group is not "[t]hose employees who did not religiously oppose the COVID-19 vaccination," but those who opposed the vaccine for *non-religious* reasons.  Rizzo's comparator group includes employees who did not oppose the vaccine *at all* and, thus, does nothing to cast doubt on whether all DSNY employees who declined to take the vaccine, including non-religious opponents, were affected by the mandate equally — regardless of religion.  *See Watson*, 444 F. App'x at 501-02.

Second, and more fundamentally, Rizzo's own allegations doom his claim.  Rizzo alleges "other DSNY employees in the same position as Plaintiff were provided religious and medical exemptions by the DSNY and the City of New York and were allowed to submit PCR testing in lieu of vaccination."  ECF No. 23 ("Pl.'s Opp'n"), at 15; *see also* Compl. ¶ 135 ("Defendants accommodated other DSNY employees with weekly PCR testing."); *id*. ¶ 147 ("Defendants accommodated other DSNY employees in the same or similar position as [] Mr. Rizzo."); *id*. ¶ 273 ("[O]ther employees are provided reasonable accommodations for both religious and medical reasons.").  In other words, Rizzo himself concedes that employees in the same protected class were granted religious exemptions.  And nowhere does he allege that Catholics, or Christians generally, were affected differently by the mandate than other religious groups — or even non-religious groups, for that matter.  Put simply, Rizzo "cannot establish that he was

11

terminated in circumstances giving rise to an inference of discrimination where the similarly situated comparators are of the same protected class." *Toussaint v. N.Y. Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 212-13 (S.D.N.Y. 2017) (citing cases), *aff'd*, 706 F. App'x 44 (2d Cir. 2017) (summary order). Accordingly, Rizzo's disparate impact claim fails as a matter of law and must be dismissed.

### D. Free Exercise

Rizzo's final claim — for violation of the Free Exercise Clause of the First Amendment — also fails. The Free Exercise Clause "protects an individual's private right to religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion." *Kane v. de Blasio*, 19 F.4th 152, 163-64 (2d Cir. 2021) (internal quotation marks omitted). But this protection "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Employment Div. v. Smith*, 494 U.S. 872, 879 (1990). In such cases, the government "need only demonstrate a rational basis for its enforcement." *Fifth Ave. Presbyterian Church v. City of N.Y.*, 293 F.3d 570, 574 (2d Cir. 2002). Applying that framework, the Second Circuit has at least twice rejected challenges to COVID-19 vaccine mandates that, like the one here, applied to all of an agency's employees and provided for medical and religious accommodations. *See Kane*, 19 F.4th at 164-67; *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281-90 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021). Following suit, district courts within the Circuit have overwhelmingly, if not unanimously, also rejected such challenges. *See, e.g.*, *Bonilla v. City of New York*, No. 22-CV-7113 (AT), 2023 WL 8372859, at *3-5 (S.D.N.Y. Dec. 4, 2023); *Milford Christian Church v. Russell-Tucker*, No. 23-CV-304 (VAB), 2023 WL 8358016, at *5-12 (D. Conn. Dec. 1, 2023); *Mora v. N.Y. State Unified Ct. Sys.*, No. 22-CV-10322 (VB), 2023 WL 6126486, at *11-12 (S.D.N.Y. Sept. 19,

2023); *Algarin*, 678 F. Supp. 3d at 508-18; *Riley*, 2023 WL 2118073, at *5-6; *Collins v. City Univ. of N.Y.*, No. 21-CV-9544 (NRB), 2023 WL 1818547, at *7-9 (S.D.N.Y. Feb. 8, 2023); *Ferrelli v. N.Y. Unified Ct. Sys.*, No. 22-CV-68 (LEK), 2022 WL 673863, at *5-9 (N.D.N.Y. Mar. 7, 2022).

Rizzo's challenge is foreclosed by this precedent. As in *Kane*, the DSNY mandate applied to "all" staff and "d[id] not single out employees who decline[d] vaccination on religious grounds." 19 F.4th at 164; *see* Compl. ¶ 35. And here, "as in *Kane*, the Vaccination Policy [did] not favor any secular activity over a religious one." *Collins*, 2023 WL 1818547, at *9. Indeed, as discussed above, Rizzo "makes no allegation that [the City] . . . favored secular medical exemption requests over religious exemption requests." *Id.* In arguing otherwise, Rizzo points to the fact that the DSNY mandate "provide[d] both medical and religious exemptions." Pl.'s Opp'n 23 (citing Compl. ¶ 272). But the Second Circuit has held that the "mere existence of an exemption procedure . . . is not enough to render a law not generally applicable and subject to strict scrutiny." *We The Patriots USA*, 17 F.4th at 288-89. To hold otherwise, in fact, would "create a perverse incentive for government entities to provide no religious exemption process in order to avoid strict scrutiny." *Ferrelli*, 2022 WL 673863, at *7.[2] It follows that the mandate is subject only to rational basis review, a bar that the City clears with room to spare. *See* ECF No. 24 ("Def.'s Reply"), at 8 (explaining that mandate was intended to further the public health goal of "reduc[ing] the transmission of COVID-19 when providing services to New Yorkers"

---

[2]     The mandate here is "different in kind from a standardless case-by-case system" found in the mostly out-of-circuit cases cited by Rizzo. *Roman Cath. Diocese of Albany v. Vullo*, No. 45, 2024 WL 2278222, at *8 (N.Y. May 21, 2024); *see* Pl.'s Opp'n 23-24 & n.15. The vaccine mandate did not sanction exemptions on an entirely discretionary basis like the policies in *Fulton v. City of Philadelphia*, 593 U.S. 522, 523 (2021), and *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 733 (6th Cir. 2021); or favor secular reasons over religious reasons as the policy did in *Air Force Officer v. Austin*, 588 F. Supp. 3d 1338, 1355 (M.D. Ga. 2022).

(cleaned up)); *see also, e.g.*, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) ("Stemming the spread of COVID–19 is unquestionably a compelling interest."). Accordingly, Defendants' motion to dismiss Rizzo's free exercise claim must be and is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, Rizzo's claims against the City for failure to accommodate under Title VII, NYSHRL, and NYCHRL and for failure to engage in a cooperative dialogue under the NYCHRL survive. All of Rizzo's other claims, including all of his claims against DSNY, as well as his request for punitive damages, are dismissed.

Leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), but it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). And here, there are several reasons to exercise that discretion to deny leave to amend as to the claims that have been dismissed. First, the Court already granted Rizzo an opportunity to amend and explicitly warned that he would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 22; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)). Second, Rizzo does not suggest any facts in his possession that would remedy the defects in his claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint."). And third, the problems with Rizzo's claims against DSNY, as well as his disparate impact and free

14

exercise claims are substantive.  Accordingly, amendment of those claims would almost certainly be futile.  *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases).  Accordingly, the Court declines to grant Rizzo leave to amend to revive the claims that have been dismissed.

Unless and until the Court orders otherwise, the City shall (in light of the upcoming holiday) answer Rizzo's remaining claims **within three weeks** of the date of this Opinion and Order.  *See* Fed. R. Civ. P. 12(a)(4)(A).  In addition, the initial pretrial conference is hereby reinstated and RESCHEDULED for **August 1, 2024**, at **9:00 a.m.**  The conference will be held remotely in accordance with the Court's Individual Rules and Practices in Civil Cases, available at https://nysd.uscourts.gov/hon-jesse-m-furman.  The parties are reminded that, no later than the Thursday before the initial pretrial conference, they are required to submit a joint status letter and proposed Case Management Plan.  *See* ECF No. 4.

The Clerk of Court is directed to terminate ECF No. 20 and to terminate DSNY as a party.

SO ORDERED.

Dated: July 2, 2024
New York, New York

_____
JESSE M. FURMAN
United States District Judge