Docket No. 1:23-cv-7190-JAV

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL RIZZO,

                              Plaintiff,

            v.


NEW YORK CITY DEPARTMENT OF SANITATION
AND CITY OF NEW YORK,

                              Defendants.


# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Christina Martinez, Esq.
*Attorney for Plaintiff*
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
E-mail: ChristinaMartinezEsq@gmail.com

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ………………………………………………………… iii

PRELIMINARY STATEMENT …………………………………….……….….. 1

STANDARD OF REVIEW ………………………………………….……….. 1

STATEMENT OF FACTS ………………………………………………........ 2

LEGAL FRAMEWORK …………………………………………….………. 11

ARGUMENT …………………………………………………………….... 12

I.    There Is No Undue Hardship Defense in This Case. …………………………… 12

II.   Rizzo's Sincerely Held Religious Objection to the COVID-19 Vaccine
      —and DSNY's Notice of It—Are Undisputed. …………………………….. 15

      A.  Rizzo Clearly Explained His Religious Conflict; Defendants
          Acknowledged Understanding. …………………………………………15

          1.  DSNY's 30(b)(6) testimony ……………………………………..….. 16

          2.  The City's 30(b)(6) Testimony ………………………………………… 17

      B.  Defendant's Reasons for Denial Violate Title VII, NYSHRL
          and NYCHRL as a Matter of Law. …………………………………………18

          1.  DSNY Had Notice of Rizzo's Sincerely Held Religious
              Conflict but Required Supplemental Information
              Because He is a Catholic. …………………………………………… 18

          2.  The Law Forbids the Citywide Panel's Centrality and Verity Rationales. … 21

III.  It Is Undisputed That Rizzo Was Terminated For Failing To
      Comply With the Vaccine Mandate. ……………………………………….. 25

IV.   It Is Undisputed That the Defendant Failed To Engage In A Cooperative Dialogue. 26

      CONCLUSION …………………………………………………………... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Adams v. New York State Unified Court System,
2024 WL 4767029 (S.D.N.Y. Nov. 13, 2024) ……………………………………….…….. 15

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ……………………………….......…1

Baker v. Home Depot, 445 F.3d 541 (2d Cir. 2006) ……………………………………..…  12

Bergin v. N.Y. State Unified Ct. Sys., 2024 WL 4444434 (E.D.N.Y. Oct. 8, 2024) .… 14, 20, 21

Bowles v. New York City Transit Auth., 2006 WL 1418602 (S.D.N.Y. May 23, 2006),
aff'd, 285 F. App'x 812 (2d Cir. 2008)
…………………………………………………………………………….………. 22, 25

Brown v. Polk Cnty., Iowa, 61 F.3d 650 (8th Cir. 1995) ……………………….…………….. 15

EEOC v. United Health Programs of America, Inc., 213 F. Supp.3d 377 (E.D.N.Y. 2016) …. 19

Emp. Div., Dep't of Hum. Res. of Oregon v. Smith, 494 U.S. 872 (1990) …………………… 20

Gardner-Alfred v. Fed. Rsrv. Bank of New York, 143 F.4th 51, 65 (2d Cir. 2025) ………….. 19

Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570 (2d Cir. 2002) …………. 20

Frazee v. Ill. Dep't of Emp't Sec., 489 U.S. 829, 833 (1989) ……………………………... 1, 24

Goldman v. Sol Goldman Invs. LLC, 2022 WL 6564021 (S.D.N.Y. Aug. 5, 2022) …………. 28

Heiden v N.Y.C. Health & Hosps. Corp., 2023 WL 171888 (S.D.N.Y. Jan. 11, 2023) ……... 28

Hernandez v. Commissioner, 490 U.S. 680 (1989) ……………………………………….…... 20

Hickey v. State Univ. of N.Y. at Stony Brook Hosp.,
2012 WL 3064170 (E.D.N.Y. July 27, 2012) …………………………………………….… 15

Hosking v. Memorial Sloan-Kettering Cancer Ctr., 186 A.D.3d 58 (1st Dep't 2020) ……. 26, 28

Jacobsen v. N.Y.C. Health & Hosps. Corp., 22 N.Y.3d 824 (2014) …………………….…… 26

Kane v. De Blasio, 19 F.4th 152 (2d Cir. 2021) ……………………………………..…. 19, 20

Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir.2001) ………………………12

## TABLE OF AUTHORITIES (CONT.)

**Page(s)**

**Cases**

Lucky v. Landmark Med. of Michigan, P.C., 103 F.4th 1241 (6th Cir. 2024) ……………….. 25

Marsteller v. City of New York, 217 A.D.3d 543 (2023) ……………………………………….. 28

Muhammad v. New York City Transit Auth., 52 F. Supp. 3d 468 (E.D.N.Y. 2014) …………. 24

New Yorkers for Religious Liberty, Inc. v. City of New York, 125 F.4th 319 (2d Cir. 2025)….22

Passarella v. Aspirus, Inc., 108 F.4th 1005 (7th Cir. 2024) …………………………………… 25

Patrick v. LeFevre, 745 F.2d 153 (2d Cir. 1984) …………………………….…………….... 15, 24, 25

Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 482 (2d Cir. 1985),
aff'd and remanded, 479 U.S. 60 (1986) …………………………………………..…….... 15, 24

Phillips v. City of New York, 66 A.D.3d 170 (1st Dep't 2009) ……………………..… 15, 16, 28

Redmond v. GAF Corp., 574 F.2d 897 (7th Cir.1978) ……………………………………..…· 23

Reyes v. New York State Off. of Child. & Fam. Servs.,
2003 WL 21709407 (S.D.N.Y. July 22, 2003), aff'd, 109 F. App'x 466 (2d Cir. 2004) ……… 22

Richins v. Hofstra Univ., 2018 WL 11227619 (E.D.N.Y. Aug. 17, 2018) ……………………· 16

Ringhofer v. Mayo Clinic, Ambulance, 102 F.4th 894 (8th Cir. 2024) ……………………….. 25

Rivera v. Choice Courier Sys., 2004 WL 1444852 (S.D.N.Y. June 25, 2004) …………..…… 19

Rizzo v. New York City Dep't of Sanitation, 2024 WL 3274455 (S.D.N.Y. July 2, 2024) …... 28

Shultz v. Congregation Shearith Israel of City of New York, 867 F.3d 298 (2d Cir. 2017) ….. 26

Sughrim v. New York, 690 F. Supp. 3d 355 (S.D.N.Y. 2023) ……………………………..14, 23

Thomas v. Rev. Bd. of Indiana Emp. Sec. Div., 450 U.S. 707 (1981) ………………….… 1, 20

United States v Manneh, 645 F Supp 2d 98 (E.D.N.Y. 2008) ………………………………... 25

Welsh v. U.S., 398 U.S. 333 (1970) …………………………………………………….…… 20

Zelnick v. Fashion Inst. Tech., 464 F.3d 217 (2d Cir. 2006) …………………………..…… 25

**TABLE OF AUTHORITIES (CONT.)**

Page(s)

**Statutes**

42 U.S.C. § 2000e ………………………………………………………..…….. 11, 23, 24, 25

Federal Rule of Civil Procedure 56(a) …………………………………………………... 1

Local Civil Rights Restoration Act of 2005 ……………………………………………..… 12

N.Y. Executive Law § 296 ……………………………………………………….… 12

N.Y. Executive Law § 300 …………………………………………………...……... 12

N.Y.C. Admin. Code § 8–107 …………………………………………………….….. 12, 26

N.Y.C. Admin. Code § 8-130 ………………………………………………….….. 12, 16

N.Y.C. Admin. Code § 8-502 …………………………………………………...………... 26

## PRELIMINARY STATEMENT

This case presents a settled rule: government may not decide what a Catholic's faith "really" requires. Title VII protects "all aspects of religious observance and practice, as well as belief," 42 U.S.C. § 2000e(j), and that protection does not turn on whether a practice is mandated by, or central to, a church. See Thomas v. Review Bd., 450 U.S. 707, 715–16 (1981); Frazee v. Ill. Dep't of Emp't Sec., 489 U.S. 829, 833 (1989).

Plaintiff Michael Rizzo, a twenty-year DSNY Sanitation Worker and practicing Catholic, was found sincere by the Citywide Panel. Yet the Panel denied his request by recasting his conscience-based obedience to God as a merely "individualized" choice and faulting him for not identifying a church-wide rule precluding vaccination—an impermissible centrality test and a forbidden verity inquiry. The record is undisputed: form denials, no communication, no answers to his clarification requests, and no undue-hardship defense. Summary judgment should enter for Rizzo on his failure-to-accommodate claims under Title VII, New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"), and on his NYCHRL cooperative-dialogue claim.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." Id. A material fact is one that "might affect the outcome of the suit under

1

the governing law," and a dispute is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 284.

## STATEMENT OF FACTS

### Plaintiff and his sincerely held religious beliefs

Rizzo was employed as a DSNY Sanitation Worker from September 5, 2000 until he was terminated in February of 2022 after he was denied a religious accommodation to the Vaccine Mandate. (SOMF[1] ¶1; Answer, ECF No. 43 ¶14, 25, 26; see ¶1; Ex. 1, Rizzo Dep. 16:15-23; SOMF ¶155; Ex. 19, Termination Notices, p. 2; Ex. 1, Rizzo Dep. 94:23-95:8; see Answer, ECF No. 43 ¶54). Rizzo has been a Catholic his entire life and is a member of Corpus Christi Roman Catholic Church. (SOMF ¶4-5; Ex. 1, Rizzo Dep. 12:5-10, 12:15-13:15).

Rizzo believes that his body is a "Temple of the Holy Spirit", and thus must be protected from defilement and desecration, and he further believes that receiving vaccines that were created using human cell lines derived from abortion during any stage of the vaccine's development would desecrate his body "which God would consider sinful". (SOMF ¶8; Ex. 15, Appeal Statement at Pl. 00045). Rizzo believes that fetuses are a "gift from God", which are supposed to be cherished, and is opposed to abortion. (SOMF ¶9; Ex. 1, Rizzo Dep. 82:3-21; 55:24-56:11). Rizzo believes that, because of how the COVID-19 vaccines were developed and tested using aborted fetal cell lines, receiving one would violate his conscience and constitute sin. (SOMF ¶10-11; Ex. 1, Rizzo Dep. 59:21–25, 60:14–19, 63:23-64:1; Ex. 10, Pl.'s Requests for Admission, No. 22, deemed admitted). Rizzo believes that the Church teaches he "must always obey" his conscience, which he believes is "God's voice", and if he were to deliberately

---

[1] Citations to "SOMF" refer to Plaintiff's Local Civil Rule 56.1 Statement of Material Facts, filed contemporaneously with this memorandum.

go against his conscience he would "condemn" himself. (SOMF ¶12; Ex. 15, Appeal Statement at Pl. 00046).

**The Vaccine Mandate and Defendants' Policies and Review Process**

On October 20, 2021, the City issued it Vaccine Mandate, requiring City Workers, including Rizzo, to receive the COVID-19 vaccine, unless they were granted a reasonable accommodation. (SOMF ¶13-14; Ex. 6, Vaccine Mandate).  The City's written policy provided that "weekly testing in lieu of vaccination" would be allowed if an employer has granted an employee a reasonable accommodation and would not cause "undue hardship and/or disruption". (SOMF ¶15-16; Ex. 7, City FAQ at ¶1, 21-22, 24).

Ryan David, the Director of the Office of Diversity, Equity and Inclusion ("OEDI") for DSNY, made the final determination on every accommodation request to the City's Vaccine Mandate. (SOMF ¶23; Ex. 11, DSNY 30(b)(6) Witness Dep. 41:19-23; see also 43:21-44:3).

Plaintiff's request was assigned to Christopher Morella, who conducted the initial review, issued requests for information as needed, and recommended approval or denial to Ryan David. (SOMF ¶26; Ex. 11, DSNY 30(b)(6) Witness Dep. 47:22-48:7; 47:8-13; 47:14-19; 99:25-100:8). Morella did not work for OEDI and had no experience handling reasonable accommodations. (SOMF ¶27; Ex. 11, DSNY 30(b)(6) Witness Dep. 98:2-99:11; 66:9-18). Ryan David and DSNY's General Counsel provided templates to the reviewers with requests for information ("RFI") templates. (SOMF ¶28; Ex. 11, DSNY 30(b)(6) Witness Dep. 60:2-19). Morella, as the reviewer, decided whether to seek additional information; if needed, he issued a template-based RFI selecting follow-up questions and sending them to the employee. (SOMF ¶29; Ex. 11, DSNY 30(b)(6) Witness Dep. 81:11-82:3; 57:11-59:5).

**Plaintiff's Initial Request for Accommodation**

On October 27, 2021, Rizzo requested a reasonable accommodation to the Vaccine Mandate based on his religious beliefs, practices, and observances by sending an e-mail to DSNY. (SOMF ¶30; Ex. 9, Accommodation Request; see Answer, ECF No. 43 ¶6).

David understood from Rizzo's accommodation request that he was a practicing Catholic "involved with his church from day one". (SOMF ¶33; Ex. 11, DSNY 30(b)(6) Witness Dep. 104:14-105:2; 105:17-24), which was a formal expression of participation in the Catholic faith (Id. at 105:3-16), and constituted a religion under Title VII, the NYSHRL, and the NYCHRL. (SOMF ¶34; Ex. 11, DSNY 30(b)(6) Witness Dep. 103:8-104:4).

David interpreted Rizzo's initial request to mean that he believes taking the vaccine would violate his conscience. (SOMF ¶50; Ex. 11, DSNY 30(b)(6) Witness Dep. 116:3-8). David understood that Rizzo was basing his accommodation request on the Catholic doctrine of conscience, which is a religious objection to the Vaccine Mandate, and is religious in nature, not purely personal, ethical, or political. (SOMF ¶50-51; Ex. 11, DSNY 30(b)(6) Witness Dep. 116:17-117:6). David agreed that if a Catholic quotes the Catechism in a request for a religious accommodation, he is referencing an authoritative religious belief, and that is the case for Rizzo's request. (SOMF ¶40; Ex. 11, DSNY 30(b)(6) Witness Dep. 108:5-9). David testified that the Catholic Church teaches that conscience is how God speaks to the individual (SOMF ¶41; Ex. 11, DSNY 30(b)(6) Witness Dep. 110:21–25), that following one's conscience is a religious obligation. (SOMF ¶42; Ex. 11, DSNY 30(b)(6) Witness Dep. 111:1–4; see SOMF ¶44; Ex. 11, DSNY 30(b)(6) Witness Dep. 112:19-113:5), and that obeying God's voice as one understands it is a religious practice. (SOMF ¶43; Ex. 11, DSNY 30(b)(6) Witness Dep.111:5-9). David understood from reading Rizzo's request that the Catholic Church teaches that following one's conscience is a religious obligation because conscience is the voice of God. (SOMF ¶47;

4

Ex. 11, DSNY 30(b)(6) Witness Dep. 115:13-17). David testified that in Catholicism, conscience is not just a general sense of right and wrong, but a doctrinally grounded religious belief and as Rizzo described it, a religious tenet. (SOMF ¶48-49; Ex. 11, DSNY 30(b)(6) Witness Dep. 115:18-116:2).

After reviewing his initial request, David had "absolutely no[]" reason to doubt the religiosity of Rizzo's beliefs. (SOMF ¶52; Ex. 11, DSNY 30(b)(6) Witness Dep. 121:24-122:6). David did not conclude after reading his original request that Rizzo was insincere. (SOMF ¶53; Ex. 11, DSNY 30(b)(6) Witness Dep. 141:15-20). David had no basis, after reading his original request, to believe that Rizzo's objection was based on social views. (SOMF ¶54; Ex. 11, DSNY 30(b)(6) Witness Dep. 141:21-142:7). However, David determined that Rizzo's initial request was insufficient because he was required to explain as a Catholic why his religious beliefs differed from the Pope's: "I need you to expand upon and actually tell me, how does it go against your moral conscience. I don't understand because you identify as Catholic. Your faith leader is telling you that it's okay to get the vaccine. I would like to think that the majority of Catholics probably ended up agreeing and getting the vaccine. I need to understand how your beliefs are different." (SOMF ¶55; Ex. 11, DSNY 30(b)(6) Witness Dep. 149:8-15; 122:24-123:20) (Because, keep in mind, again, when it comes to being Catholic here, during this time period, you had the Pope saying you can get the vaccine. You had a large majority of Catholics - you had a lot of Catholics getting the vaccine."); see also id. at 143:8-144:3 ("I need to understand more how getting the vaccine goes against your moral conscience…Because again he's not part of a religion, a religion of one, you know. I forgot, in his initial he identified as Catholic, right, so you have faith leaders saying it's okay to get the vaccine".)

**Request for Information ("RFI") and Rizzo's Supplemental Statement**

Morella, Associate Counsel for DSNY, contacted Rizzo by e-mail and, using the RFI templates provided by DSNY, requested "supplemental information to assist DSNY with making a determination". (SOMF ¶57; Ex. 11, DSNY 30(b)(6) Witness Dep. 144:12-17; Ex. 12, RFI). Rizzo called Morella twice to get more information on what supplemental information was needed because he did not understand what information DSNY wanted. (SOMF ¶58; Ex. 1, Rizzo Dep. 70:1-3; 70:5-12; 73:21-74:4; 70:19-21). Morella did not return his calls. (SOMF ¶59; Ex. 1, Rizzo Dep. 75:1-4; see SOMF ¶85-86). After he did not hear back, Rizzo did not want to miss his deadline so he attempted to help DSNY understand to the best of his ability despite still not understanding what was wanted from him. (SOMF ¶60; Ex. 1, Rizzo Dep. 75:8-10).

In his e-mailed response, Rizzo stated that he was confused as to what supplemental information DSNY requested. (SOMF ¶ 61-62; Ex. 1, Rizzo Dep. 80:17-25; Ex. 11, DSNY 30(b)(6) Witness Dep. 170:7-171:6; see Ex. 13, Supplemental Information). Rizzo specifically asked whether DSNY wanted him to submit documentation of his completed Sacraments. (SOMF ¶63; Ex. 13, Supplemental Information). He also provided additional information about being a life-long Catholic, (SOMF ¶67; Ex. 11, DSNY 30(b)(6) Witness Dep. 171:7-13) and that he was a Godfather, which David understood as being relevant to show that he is a practicing Catholic and what it "means to him". (SOMF ¶65; Ex. 11, DSNY 30(b)(6) Witness Dep. 174:10-20). Rizzo viewed this as significant because, to serve as a godfather, the Church verifies receipt of all sacraments and imposes instruction—including a quiz—and ongoing responsibilities in Catholicism. (SOMF ¶66; Ex. 1, Rizzo Dep. 75:11-20).

Responding to the RFI stating "how your belief has impacted other medical decisions you have made in the past" (SOMF ¶68; Ex. 12, RFI), Rizzo wrote:

> I am a simple man, I keep my body clean from tattoos, drugs, alcohol, smoking, meds, and
> other substances that would alter me, my body, or go against my beliefs. My religious beliefs

and practices have strengthened throughout my life experiences as well as through my
continued prayer with God. Through prayer together God and I determine what life I am to
lead that will result in joining my family in Heaven.
1 Corinthians 3:16-17: "You are God's temple and God's spirit dwells in you. If anyone
destroys God's temple, God will destroy him. For God's temple is Holy, and you are that
temple."

(SOMF ¶68; Ex. 13, Supplemental Information, p. 1). David testified that there is no objective

basis to believe that Rizzo is keeping his body clean out of a fear for his health or due to medical

concerns. (SOMF ¶68; Ex. 11, DSNY 30(b)(6) Witness Dep. 195:7-15). David testified that

Rizzo responded to Morella's RFI exactly as asked. (SOMF ¶70; Ex. 11, DSNY 30(b)(6)

Witness Dep. 220:4-21, 221:2-23; 199:7-24).

David understood that Rizzo believes he has discussions with God and God communicates

with him. (SOMF ¶74; Ex. 11, DSNY 30(b)(6) Witness Dep. 207:15-208:3). David testified that

the belief that conscience is the result of communication with God is a religious belief, and that

following one's conscience is a religious act. (SOMF ¶76-77; Ex. 11, DSNY 30(b)(6) Witness

Dep. 208:17-25).

David testified that Rizzo believes that the Catholic Church requires a person to follow his

conscience through prayer. (SOMF ¶81; Ex. 11, DSNY 30(b)(6) Witness Dep. 229:2-230:5), and

that Rizzo stated that a Catholic must refuse a vaccine if his conscience directs him. (SOMF ¶82;

Ex. 11, DSNY 30(b)(6) Witness Dep. 230:6-9). David testified that Rizzo connected his beliefs

on conscience with the COVID vaccine. (SOMF ¶83; Ex. 11, DSNY 30(b)(6) Witness Dep.

230:10-16).

David did not find any inconsistencies in Rizzo's religious practices based on anything he

submitted to DSNY, and no one at DSNY asked Rizzo to clarify anything further or followed up

with Rizzo about any of his concerns. (SOMF ¶84-85; Ex. 11, DSNY 30(b)(6) Witness Dep.

237:3-16). David had the ultimate discretion to grant or deny the reasonable accommodation at

the agency level. (SOMF ¶ 88; Ex. 11, DSNY 30(b)(6) Witness Dep. 52:15-53:2). Yet, after reading the entire request and response to RFI (all of the information submitted to DSNY), David concluded: "Again, looking at it in totality, I'm not sitting here saying that he does not have sincerely held religious beliefs. I'm just going based off the information provided between the initial request and the RFI. What we have right now is we have insufficient information to grant the request." (SOMF ¶87; Ex. 11, DSNY 30(b)(6) Witness Dep. 233:11-18). David does not find Rizzo to be insincere. (Id. at 233:19-23).

**DSNY's Denial and Rizzo's Appeal to the Citywide Panel**

Without any communication with Rizzo (SOMF ¶152-153; Ex. 11, DSNY 30(b)(6) Witness Dep. 139:9-15, 139:21-140:5; see Ex. 20, Defendants' Response to Plaintiff's Interrogatories, Response No. 16[2]), DSNY denied Plaintiff's request (Answer, ECF No. 43 ¶7) with a boilerplate letter with no reasoning provided. (Ex. 11, DSNY 30(b)(6) Witness Dep. 242:15-243:14; 243:16-23; 240:18-23; see Ex. 14, DSNY Denial). But this denial was not the end of the road for Rizzo; He had another opportunity to have his accommodation request approved through an appeal to the Citywide Panel. (SOMF ¶90-91; Ex. 14, DSNY Denial; Ex. 11, DSNY 30(b)(6) Witness Dep. 248:8-9). Rizzo appealed the decision to the Citywide Panel, which was established by the City to decide employees' appeals from agency denials of Vaccine Mandate accommodation requests. (SOMF ¶97, 99; Answer, ECF No. 43 ¶7; Ex. 16, City 30(b)(6) Witness Dep. 10:19-11:23).

Eric Eichenholtz—the City's Rule 30(b)(6) designee—serves as a Managing Attorney at the New York City Law Department, and is primarily responsible for defending the City in

---

[2] The only communications listed in Defendant's Interrogatory Response is the termination letter and Morella's RFI.

employment litigation, helped create the Citywide Panel and handled Rizzo's appeal. (SOMF ¶101-102, 105; Ex. 16, City 30(b)(6) Witness Dep. 6:18-25; 7:9-14; 9:25-10:13; 10:19-11:6, 12:16-18; 13:8-10; 24:24-25:6).

In Rizzo's appeal statement[3], Plaintiff indicated that he "never received clarification on the additional information required and replied with [his] understanding to the vaguely posted questions to the best of [his] ability". (SOMF ¶104, Ex. 15, Appeal Statement). Plaintiff explained that he "continually sought God's guidance" to learn "what we must do to please God." Id. He elucidated that: "in the past when certain medical interventions have been recommended, I have chosen to decline them if I learn that they may be considered sinful in the eyes of God. The Church warns that we must always obey our conscience as this is where God's voice echoes to us and if we were to deliberately go against it, we would condemn ourselves." Id. He also explained that he "pray[s] to God" to "make certain that [he is] living [his] life as he intended, and to "keep … from intentionally sinning against him" Id. Additionally, he wrote:

> What this means is that I keep my body clean as intended by God, I do not desecrate my body with that which God would consider sinful, including but not limited to vaccines that were created using human cell lines derived from abortion during any stage of the vaccine's development, including the testing phase. The bodies of innocent victims that were aborted deserve the same respect as any other person, not to be treated as a commodity to be scavenged for body parts. The body is the Temple, and we are compelled to protect it from defilement.

Id.

Eichenholtz testified that the Citywide Panel universally held that Rizzo is a practicing Catholic who holds sincerely held beliefs grounded in Catholicism (SOMF ¶107; Ex. 16, City 30(b)(6) Witness Dep. 30:17-21); see also id. at 30:6-11 (The Citywide Panel did *not* determine

---

[3] The Court is respectfully referred to Plaintiff's Exhibit 15 for Plaintiff's entire Appeal Statement. Pertinent excerpts are cited herein and it is reproduced in the Rule 56.1 Statement. (SOMF 104; Ex. 15, Appeal Statement).

that Rizzo's beliefs were not sincere *or* not religious in nature), and that none of the Citywide

Panel members believed Rizzo was insincere. (SOMF ¶109; Ex. 16, City 30(b)(6) Witness Dep.

31:21-5). Eichenholtz testified that it was "evident from the record" that "Mr. Rizzo is a

practicing Catholic and has sincerely held beliefs grounded in Catholicism", "and that is what he

articulated". (SOMF ¶108; Ex. 16, City 30(b)(6) Witness Dep. 31:5-10).

Eichenholtz testified that it was understood by the Citywide Panel that Rizzo believes his

body is a Temple of the Holy Spirit, which is a tenet of the Catholic faith. (SOMF ¶115; Ex. 16,

City 30(b)(6) Witness Dep. 49:5-10).

Eichenholtz's written denial reason was: "Articulated beliefs (practicing Catholic) does

not preclude vaccination. Despite agency inquiry, employee did not identify a religious practice

that precludes vaccination" (SOMF ¶111; Ex. 17, Citywide Panel Vote Report; Ex. 16 City

30(b)(6) Witness Dep. 28:21-29:14)**.**

Eichenholtz acknowledged that Rizzo wrote that "the Church warns we must always obey

our conscience … where God's voice echoes", and that Rizzo believed there would be "spiritual

repercussion based on his religious beliefs" if he "went against" his conscience. (SOMF ¶119;

Ex. 16, City 30(b)(6) Witness Dep. 59:25-60:15). Yet, because the Panel viewed this as "his

personal reflection and understanding of what God's voice is saying", it deemed his refusal

"individual decisions" (SOMF ¶120; Ex. 16, City 30(b)(6) Witness Dep. 60:20-61:4), and thus

not a "practice[] that would *prohibit* vaccination." (SOMF ¶113; Ex. 16, City 30(b)(6) Witness

Dep. 35:8-13).

Eichenholtz testified that "what he [Rizzo] states is that he believes that his conscience is

informed by what he thinks God would want for him. Whether or not he believes that that is a

direct communication from God is not really relevant here, because, again, a direct

communication from God with respect to an individual circumstance is an individual religious teaching. It is not a particular – it is not a belief system. If it – if what someone is saying is 'I communicate and I believe God informs me what choices I should make circumstantially,' that is not a sincerely held religious practice or belief, that can be used for religious accommodation purposes because it can be applied to anything individually one way or the other." (SOMF ¶118; Ex. 16, City 30(b)(6) Witness Dep. 57:18-58:12).

While Rizzo's religious accommodation request was pending with DSNY and the Citywide Panel, he continued to work while submitting weekly testing. (SOMF ¶56, 98; Ex. 11, DSNY 30(b)(6) Witness Dep. 30: 10-19, 244:12-245:9). This was a Citywide policy. (Id.; Ex. 7, City FAQ at ¶26, 28).

**Citywide Panel denial, LWOP, and Termination**

The Citywide panel denied Rizzo's request (SOMF ¶126; Answer, ECF No. 43 ¶7). On January 24, 2022, Rizzo received an e-mail with no rationale, stating he had three days to be vaccinated or he would be placed on leave without pay ("LWOP"). (SOMF ¶127-128; Ex. 18, Citywide Panel Denial). He was then placed on LWOP. (SOMF ¶129; Ex. 1, Rizzo Dep. 93:14-23). On February 11, 2022, he was terminated due to his failure to comply with the Vaccine Mandate. (SOMF ¶154-155; Ex. 19, Termination Notices, p. 2; Ex. 1, Rizzo Dep. 94:23-95:8; see Answer, ECF No. 43 ¶53-54). The Vaccine Mandate was lifted on February 9, 2023. (SOMF ¶156).

**LEGAL FRAMEWORK**

Title VII requires employers to reasonably accommodate an employee's religious observance, practice, or belief unless doing so would impose an undue hardship on the conduct of the employer's business. 42 U.S.C. § 2000e(j). The NYSHRL and NYCHRL likewise prohibit

conditioning employment on violating a sincerely held religious practice and require reasonable accommodation absent undue hardship. N.Y. Executive Law § 296(10)(a); N.Y.C. Admin. Code § 8–107(3)(a). Both are construed more liberally than federal law: the NYSHRL directs courts to liberally construe the statute "regardless" of federal interpretations, N.Y. Exec. Law § 300, and the NYCHRL mandates liberal construction with exemptions construed narrowly. N.Y.C. Admin. Code § 8-130(a)–(b). "[I]nterpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of the [NYCHRL], viewing similarly worded provisions of federal and state civil rights laws as *a floor below which the [NYCHRL] cannot fall*, rather than a ceiling above which the local law cannot rise". Local Civil Rights Restoration Act of 2005, Local Law No. 85 of the City of New York, §1 (2005).

To establish that the employer failed to provide a reasonable accommodation, plaintiffs must establish a *prima facie* case by showing that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir.2001) (Title VII); Baker v. Home Depot, 445 F.3d 541, 546 (2d Cir. 2006) (NYSHRL).  Once a *prima facie* case is established by the employee, "the burden then shifts to the employer to show it could not accommodate the employees' religious beliefs without undue hardship." Id.

**ARGUMENT**

**I.    There Is No Undue Hardship Defense in This Case.**

As a threshold matter, undue hardship – which Defendant bears the burden of proving – is not at issue here. David, DSNY's 30(b)(6) witness, testified that DSNY *could not* deny a reasonable accommodation to the Vaccine Mandate based on undue hardship. (SOMF ¶130; Ex.

11, DSNY 30(b)(6) Witness Dep. 72:3-25). The City – via the Department of Citywide Services ("DCAS") and the Law Department – instructed DSNY that undue hardship was not a consideration in deciding accommodation requests to the Vaccine Mandate and that "there is no undue burden" by granting accommodations to the Vaccine Mandate. (SOMF ¶133; Ex. 11, DSNY 30(b)(6) Witness Dep 95:12-96:16; 244:5-11). The City "mandated" that City Workers granted accommodations to the Vaccine Mandate be accommodated with weekly testing. (SOMF ¶146; Ex. 11, DSNY 30(b)(6) Witness Dep. 25:2-26:11). This "came from the City." (Id.)

Thus, DSNY advised the reviewers of accommodation requests that they would not be considering undue hardship. (SOMF ¶ 134; Ex. 11, DSNY 30(b)(6) Witness Dep. 73:2-14). Sanitation workers who were granted religious accommodations to the Vaccine Mandate were provided the accommodation of weekly PCR testing. (SOMF ¶131; Ex. 10, Pl.'s Requests for Admission, No. 10, deemed admitted; Ex. 11, DSNY 30(b)(6) Witness Dep. 20:21-21:5; 27:12-23; 22:18-22) ("If you had an approved accommodation from my office for exemption from the COVID-19 vaccine mandate, the alternative then would be that you would submit a weekly test."). Weekly PCR testing was a feasible accommodation for Sanitation Workers who were granted religious accommodations to the Vaccine Mandate. (SOMF ¶142; Ex. 10, Pl.'s Requests for Admission, No. 16, deemed admitted). Rizzo himself was permitted to continue working the entire time his religious accommodation request was pending with DSNY and the Citywide Panel, while submitting weekly testing. (SOMF ¶137; Ex. 11, DSNY 30(b)(6) Witness Dep. 244:12-245-9). And Sanitation workers with the same job duties as Rizzo were granted religious accommodations to the Vaccine Mandate. (SOMF ¶135; Ex. 10, Pl.'s Requests for Admission, No. 8-9, deemed admitted; see also Ex. 11, DSNY 30(b)(6) Witness Dep 75:2-8).

Rizzo was not denied by DSNY based on undue hardship. (SOMF ¶138; Ex. 8, DSNY 30(b)(6) Witness Dep. 244:2-4). And if the Citywide Panel approved Rizzo's appeal, he would have been accommodated with weekly PCR testing. (Ex. 11, DSNY 30(b)(6) Witness Dep. 247:14-18).

Additionally, the City's written policy provided that "the only allowable accommodation from vaccination without causing an undue hardship and/or disruption is submission of a weekly negative test result". (SOMF ¶16; Ex. 7, City FAQ at ¶21-22; 24). DSNY's Policy likewise provided that the "allowable accommodation from vaccination is submission of proof of a weekly negative COVID-19 PCR test result". (SOMF ¶19; Ex. 8, DSNY Vaccine Mandate Policy at Pl. 0003). Weekly testing was chosen as the accommodation as a strategy used by the City to minimize the risk of COVID-19 infections to others while keeping the work force going without disruption to operations. (SOMF ¶144-145; Ex. 11, DSNY 30(b)(6) Witness Dep. 25:2-26:7, 26:14-19).

Therefore, "no reasonable juror could conclude that [the defendant] has experienced, or will experience, undue hardship by continuing to allow [Plaintiff]" to submit weekly testing. Sughrim v. New York, 690 F. Supp. 3d 355, 380 (S.D.N.Y. 2023) (granting summary judgment to the plaintiff on Title VII failure to accommodate claims); see Bergin v. New York State Unified Ct. Sys., No. 22-CV-5264 (BMC), 2024 WL 4444434, at *4 (E.D.N.Y. Oct. 8, 2024) (granting summary judgment to court officer who was denied religious accommodation to COVID-19 vaccine mandate where defendant "permit[ted] accommodations of the same sort requested by plaintiff" and "has since rescinded its vaccination policy").

## II.    Rizzo's Sincerely Held Religious Objection to the COVID-19 Vaccine—and DSNY's Notice of It—Are Undisputed.

### A.  Rizzo Clearly Explained His Religious Conflict; Defendants Acknowledged Understanding.

Rizzo's sincerely held religious objection to the COVID-19 vaccine mandate is undisputed, and the record overwhelmingly satisfies his burden on these elements. The burden to establish a sincerely held religious belief "is not a heavy one." Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 482 (2d Cir. 1985), aff'd and remanded, 479 U.S. 60 (1986). And "[a]n employer need have 'only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements.'" Hickey v. State Univ. of N.Y. at Stony Brook Hosp., 2012 WL 3064170, at *7 (E.D.N.Y. July 27, 2012) (quoting Brown v. Polk Cnty., Iowa, 61 F.3d 650, 654 (8th Cir. 1995)). Plaintiff's religious accommodation request statements clearly articulated a conflict between his religious beliefs (that the body is a temple of the Holy Spirit, opposition to bodily defilement, the guidance he received from God, and his opposition to abortion) and the COVID-19 vaccine mandate, satisfying his legal burden. (SOMF ¶104; Ex. 15, Appeal Statement; see Ex. 13, Supplemental Information).

A court's inquiry "properly extends to determining whether the beliefs professed by a claimant are sincerely held and whether they are, in his own scheme of things, religious." Kravitz v. Purcell, 87 F.4th 111, 127 (2d Cir. 2023) (quoting Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984) (internal quotation marks omitted).  For purposes of a Title VII vaccine accommodation claim, "all that matters is that [the plaintiff's] opposition to the vaccine was sincere and grounded in religious belief."  Adams v. New York State Unified Court System, 22-CV-9739-JMF, 2024 WL 4767029, at *2 (S.D.N.Y. Nov. 13, 2024); Phillips v. City of New

York, 66 A.D.3d 170, 173 (1st Dep't 2009) (NYSHRL). The NYCHRL, construed even more expansively, demands "an exceedingly liberal standard" favoring accommodation. Richins v. Hofstra Univ., 2018 WL 11227619, at *5 (E.D.N.Y. Aug. 17, 2018); N.Y.C. Admin. Code § 8-130(a).

Defendant's own admissions foreclose any sincerity dispute:

### 1. DSNY's 30(b)(6) testimony

DSNY's 30(b)(6) witness, Ryan David, testified that he understood Rizzo's initial request to assert that taking the COVID-19 vaccine would violate his conscience, and that—under Catholic doctrine—conscience is God's voice, following it is a religious obligation (which is religious in nature, not purely personal, ethical, or political), and obeying God's voice is a religious practice. (SOMF ¶¶42, 43, 47, 50, 51; Ex. 11, DSNY 30(b)(6) Witness Dep. 111:1–9, 116:3-8, 116:17-117:6, 115:13-17). David testified that in Catholicism, conscience is a doctrinally grounded religious belief, and as Rizzo described it, a religious tenet. (SOMF ¶48-49; Ex. 11, DSNY 30(b)(6) Witness Dep. 115:18-116:2).

He further understood that Rizzo identified himself as a lifelong, practicing Catholic; that Catholicism is a religion under Title VII/NYSHRL/NYCHRL; and that Rizzo's references to the Catechism and St. Paul reflected authoritative Catholic teachings. (SOMF ¶¶33-34, 40, 45-46; Ex. 11, DSNY 30(b)(6) Witness Dep. 104:14-105:6; 105:17-24, 103:8-104:4, 108:5-9, 114:1-8, 114:11-17).

After reviewing his request, David testified that had "absolutely no[]" reason to doubt the religiosity of Rizzo's beliefs, did not conclude that he was insincere, and had no basis to deem the objection social or political. (SOMF ¶52-54; Ex. 11, DSNY 30(b)(6) Witness Dep. 121:24-122:6, 141:15-142:7).

As to Morella's RFI, David testified that it asked how Rizzo's belief affected other medical decisions and that Rizzo answered: his conscience had led him to decline medical interventions in the past; David identified no objective health-based or medical motive.  (SOMF ¶68, 70; Ex. 11, DSNY 30(b)(6) Witness Dep. 220:4-21, 221:2-23; 199:7-24, 195:7-15). David also acknowledged that Rizzo set forth the Catholic teaching of conscience—i.e., that he believes God communicates with him—and that following conscience is a religious act required by the Catholic Church; that prayerful discernment require refusing a vaccine; and that Rizzo connected those beliefs specifically to the COVID-19 vaccine. (SOMF ¶¶71–72, 74, 76–77, 81–83; Ex. 11, DSNY 30(b)(6) Witness Dep. 205:15–206:7, 207:15–208:3, 208:17-25, 229:2–230:16)

David found no inconsistencies in Rizzo's religious practice, DSNY did not seek further clarification, and while David said the file contained "insufficient information to grant," he did not find Rizzo insincere. (SOMF ¶¶84-85, 87; Ex. 11, DSNY 30(b)(6) Witness Dep. 237:3-16, 233:11-23).

### 2.  The City's 30(b)(6) Testimony

And the City's designated 30(b)(6) witness, Eric Eichenholtz, testified that the Citywide Panel universally held that it was "evident from the record" that "Mr. Rizzo is a practicing Catholic and has sincerely held beliefs grounded in Catholicism", "and that is what he articulated"—and the Panel did not find him insincere. (SOMF ¶¶107–109; Ex. 16, City 30(b)(6) Witness Dep. 30:6–11, 30:17–21, 31:5–10, 31:21–25.)

Eichenholtz testified that it was understood by the Citywide Panel that Rizzo believes his body is a Temple of the Holy Spirit, which is a tenet of the Catholic faith. (SOMF ¶115; Ex. 16, City 30(b)(6) Witness Dep. 49:5-10). And Eichenholtz testified that he understood that Rizzo stated "the Church warns we must always obey our conscience as this is where God's voice

echoes to us and if we were to deliberately go against it, we would condemn ourselves", and that he understood Rizzo's reference to "condemn himself" to mean "that there could be some spiritual repercussion based on his religious beliefs." (SOMF ¶119; Ex. 16, City 30(b)(6) Witness Dep. 59:25-60:15). "He's saying he's informed by his reflection and understanding of what God would want for him." (SOMF ¶121; Ex. 16, City 30(b)(6) Witness Dep. 61:8-10).

With no factual basis to contest sincerity or religiosity—and Defendant explicitly conceding it—this Court need not re-examine these elements; the inquiry shifts to Defendants' denial rationales, which hinge on unlawful grounds.

## B. Defendant's Reasons for Denial Violate Title VII, NYSHRL and NYCHRL as a Matter of Law.

The City's admitted rationales for denying Rizzo's accommodation not only fail to rebut the *prima facie* case but violate Title VII, NYSHRL and NYCHRL as a matter of law.

### 1. DSNY Had Notice of Rizzo's Sincerely Held Religious Conflict but Required Supplemental Information Because He is a Catholic.

David, DSNY's Rule 30(b)(6) witness, testified that he fully understood Rizzo's religious beliefs from Rizzo's initial accommodation submission. (See (II)(A)(1) above). Nevertheless, David testified that he required more from Rizzo because he was Catholic and his views differed from the Pope's, and thus he was required to provide supplemental information: "I need you to expand upon and actually tell me, how does it go against your moral conscience. I don't understand because you identify as Catholic. Your faith leader is telling you that it's okay to get the vaccine. I would like to think that the majority of Catholics probably ended up agreeing and getting the vaccine. I need to understand how your beliefs are different." (SOMF ¶55; Ex. 11, DSNY 30(b)(6) Witness Dep. 149:8-15; 122:24-123:20) (Because, keep in mind, again, when it comes to being Catholic here, during this time period, you had the Pope saying you can get the

vaccine. You had a large majority of Catholics - you had a lot of Catholics getting the vaccine."); see also id. at 143:8-144:3 ("I need to understand more how getting the vaccine goes against your moral conscience…Because again he's not part of a religion, a religion of one, you know. I forgot, in his initial he identified as Catholic, right, so you have faith leaders saying it's okay to get the vaccine".

This inquiry impermissibly substitutes the agency's view of Catholic doctrine for the individual's own sincerely held religious belief. "It is axiomatic that 'the guarantee of free exercise is not limited to beliefs which are shared by all members of a religious sect.'" Gardner-Alfred v. Fed. Rsrv. Bank of New York, 143 F.4th 51, 65 (2d Cir. 2025) (quoting Thomas, 450 U.S. at 715–16. By demanding that Rizzo justify his divergence from other Catholics, DSNY unconstitutionally overstepped its proper role. "It accordingly *does not matter* whether [Rizzo's] views align with the dogma articulated by a particular representative of Catholicism; what matters is that []he believed that receiving the Covid-19 vaccine would be inconsistent with the teachings of the Catholic Church." Gardner-Alfred, 143 F.4th at 65 (emphasis added).

In Kane, the Second Circuit held that denying accommodation requests "where the leader of the religious organization has spoken publicly in favor of the vaccine" or telling an employee that his religious beliefs "were merely personal, because there are other Orthodox Christians who choose to get vaccinated" "cannot survive strict scrutiny" under the Free Exercise Clause[4]. Kane v. De Blasio, 19 F.4th 152, 168-169 (2d Cir. 2021). "Denying an individual a religious

---

[4] These well-established First Amendment principles apply equally to Title VII claims. Rivera v. Choice Courier Sys., 2004 WL 1444852, at *5 (S.D.N.Y. June 25, 2004) ("A Court's limited role in determining whether a belief is 'religious' is the same under Title VII as it is under the Free Exercise Clause of the First Amendment"); see, e.g., EEOC v. United Health Programs of America, Inc., 213 F. Supp.3d 377, 393-394 (E.D.N.Y. 2016) (citing cases) (analyzing meaning of "religion" under Title VII).

accommodation based on someone else's publicly expressed religious views — even the leader of [his] faith —runs afoul of the Supreme Court's teaching that "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds*." Id. at 168 (emphasis in original) (quoting Hernandez v. Commissioner, 490 U.S. 680, 699 (1989).

"Because the free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires, courts are not *permitted* to inquire into the centrality of a professed belief to the adherent's religion." Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570, 574 (2d Cir. 2002). Such a policy flatly contradicts decades of binding Supreme Court precedent, which prohibits the government from evaluating the centrality of a belief to a faith or comparing an individual's sincerity to a religious hierarchy. See Emp. Div., Dep't of Hum. Res. of Oregon v. Smith, 494 U.S. 872, 887 (1990) ("Judging the centrality of different religious practices is akin to the unacceptable business of evaluating the relative merits of differing religious claims."); Thomas, 450 U.S. at 715-716 ("It is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith."); Welsh v. U.S., 398 U.S. 333, 343 (1970) (petitioner's beliefs were religious in nature although the church to which he belonged did not teach those beliefs). Here, DSNY does exactly what the Supreme Court forbids: it makes the legitimacy of a belief contingent on whether the Pope agrees with it. But Title VII protects individual conscience, not institutional conformity.

The facts here are directly analogous to Bergin, where the plaintiff submitted a religious accommodation form, personal statement, and a statement from her pastor. 2024 WL 4444434. The court held this was sufficient to inform the employer of her sincerely held religious beliefs

in conflict with the vaccine mandate. Id. at *3–4. The plaintiff's failure to fully complete a supplemental questionnaire did not undermine her showing. The court explained that the initial request was adequate to demonstrate a religious belief, and once the employer's own witnesses conceded that point, the questionnaire was "superfluous." Id. at *3–4. Here David conceded that he did not find Rizzo to be insincere and that he clearly understood the religious nature of Rizzo's objection. Requiring more information simply because Rizzo is Catholic is not only superfluous, but also unconstitutional.

2. **The Law Forbids the Citywide Panel's Centrality and Verity Rationales.**

Despite finding it "evident from the record" that "Mr. Rizzo is a practicing Catholic and has sincerely held beliefs grounded in Catholicism"(SOMF ¶108; Ex. 16, City 30(b)(6) Witness Dep. 31:5-10), the Citywide Panel denied Rizzo's appeal because it characterized Rizzo following guidance from God to reject the COVID-19 vaccine as an individualized choice, rather than a practice prohibited by Catholicism – a centrality/verity approach the law forbids.

The Citywide Panel's approach is reflected in its designee's testimony. Eichenholtz testified that "what he [Rizzo] states is that he believes that his conscience is informed by what he thinks God would want for him. Whether or not he believes that that is a direct communication from God is not really relevant here, because, again, a direct communication from God with respect to an individual circumstance is an individual religious teaching. It is not a particular – it is not a belief system. If it – if what someone is saying is 'I communicate and I believe God informs me what choices I should make circumstantially,' that is not a sincerely held religious practice or belief, that can be used for religious accommodation purposes because it can be applied to anything individually one way or the other." (SOMF ¶118; Ex. 16, City 30(b)(6) Witness Dep. 57:18-58:12).

The Second Circuit has recently condemned this very reasoning, holding that there was a "sufficient basis to infer that [plaintiff] was wrongfully denied a religious accommodation" where "the Citywide Panel rejected her appeal because it characterized [plaintiff's] receiving guidance from the Holy Spirit as allowing [plaintiff] to follow individualized guidance, and thus concluded that [plaintiff's] beliefs were not religious in nature." New Yorkers for Religious Liberty, Inc. v. City of New York, 125 F.4th 319, 335 (2d Cir. 2025) (cleaned up, internal quotations and citations omitted). The court likewise reinstated a Free Exercise claim for a teacher who "rel[ied] on her personal relationship with God as a guide". Id. at 334.

Eichenholtz acknowledged that Rizzo wrote that "the Church warns we must always obey our conscience … where God's voice echoes", and that Rizzo believed there would be "spiritual repercussion based on his religious beliefs" if he "went against" his conscience. (SOMF ¶119; Ex. 16, City 30(b)(6) Witness Dep. 59:25-60:15). Yet, because the Panel viewed this as "his personal reflection and understanding of what God's voice is saying", it deemed his refusal an "individual decision[]" (SOMF ¶120; Ex. 16, City 30(b)(6) Witness Dep. 60:20-61:4), and thus not a "practice[] that would *prohibit* vaccination." (SOMF ¶113; Ex. 16, City 30(b)(6) Witness Dep. 35:8-13). That is centrality by another name. "Title VII protects more than the… practices specifically mandated by an employee's religion." Reyes v. New York State Off. of Child. & Fam. Servs., 2003 WL 21709407, at *6 (S.D.N.Y. July 22, 2003), aff'd, 109 F. App'x 466 (2d Cir. 2004) (rejecting state agency employer's argument that plaintiff's religious practice was "voluntary" because "defendant's position would require this Court to make a determination as to whether or not a particular practice is or is not required by the tenets of the employee's religion"). Whether the Church prohibits what Rizzo believes it prohibits is irrelevant. Bowles v. New York City Transit Auth., 2006 WL 1418602, at *9 n.18 (S.D.N.Y. May 23, 2006), aff'd, 285 F. App'x 812

(2d Cir. 2008); See Sughrim, 690 F. Supp. 3d at 374 (government employer's practice of denying accommodation requests based on its own assessment as to whether the religious conduct is a "requirement of an applicant's faith" "plainly runs afoul of the First Amendment"); Redmond v. GAF Corp., 574 F.2d 897, 900 (7th Cir.1978) ("[T]o restrict [Title VII to protecting] those practices which are mandated or prohibited by a tenet of the religion would involve the court in determining not only what are the tenets of a particular religion ... but would frequently require the courts to decide whether a particular practice is or is not required by the tenets of the religion.").

The record also undercuts the City's framing of "conscience" as mere preference. Eichenholtz admitted that in Catholicism, conscience is guided by the "Catholic religion", "doctrine," and "Catholic religious teaching" and that this is confirmed by the "hierarchy of the Church". (SOMF ¶123; Ex. 16, City 30(b)(6) Witness Dep. 63:7-24). And Rizzo expressly grounded his refusal not only in the duty to obey conscience, but also in Catholic tenets concerning the sanctity of life (objection to abortion-derived cell lines) and the duty to keep the body—the "Temple of the Holy Spirit"—free from defilement. (SOMF ¶104; Ex. 15, Appeal Statement; see SOMF ¶116: Ex. 16, City 30(b)(6) Witness Dep. 49:21-5).

Eichenholtz testified "that as a Catholic, a Catholic could make a choice informed by Catholic doctrine of whether it's prayerful contemplation, whether it's reviewing Scripture, etc. etc., that with respect to the COVID vaccine they don't want to take the vaccine." (SOMF ¶114; Ex. 16, City 30(b)(6) Witness Dep 35:2-8.). This rationale embodies the Panel's legal error: it conditions protection on whether Catholicism *categorically* precludes vaccination (a forbidden centrality test), and it re-labels Rizzo's conscience-grounded refusal as a mere personal choice (a verity move substituting the City's theological judgment for Rizzo's). But Title VII protects "all aspects of religious observance and practice, as well as belief," 42 U.S.C.

23

§ 2000e(j), even when not church-mandated or universally shared. By denying unless Catholicism "requires" abstention and calling the rest "choice," the Panel applied centrality and verity in tandem.

The written denial reason — "Articulated beliefs (practicing Catholic) does not preclude vaccination. Despite agency inquiry, employee did not identify a religious practice that precludes vaccination" (SOMF ¶111; Ex. 17, Citywide Panel Vote Report; Ex. 16 City 30(b)(6) Witness Dep. 28:21-29:14) —is also illustrative of both an impermissible centrality test and a forbidden verity inquiry: it conditions protection on whether Catholicism categorically precludes vaccination and substitutes the City's theological judgment for Rizzo's sincere belief.

Government employers are limited to assessing sincerity, not verity: "the inquiry must focus on whether a plaintiff is 'fraudulently hiding secular interests behind a veil of religious doctrine,' and not on 'the factfinder's own idea of what a religion should resemble.'" Muhammad v. New York City Transit Auth., 52 F. Supp. 3d 468, 481 (E.D.N.Y. 2014) (quoting Philbrook, 757 F.2d at 481-82).

The City has taken it upon itself to (wrongly) assert that Rizzo's religion does not require him to refuse the vaccine and recharacterize his objection as a personal choice rather than a religious practice. Recasting a religious practice as a mere preference because it is individualized is discrimination as a matter of law. Frazee, 489 U.S. at 833 ("Never did we suggest that unless a claimant belongs to a sect that forbids what his job requires, his belief, however sincere, must be deemed a purely personal preference rather than a religious belief.").

The definition of religion is not only subjective but also "expansive," Patrick, 745 F.2d at 158, and includes "the feelings, acts, and experiences of individual men in their solitude, so far as they apprehend themselves to stand in relation to whatever they may consider the divine." Id. (quoting W. James, The Varieties of Religious Experience 31 (1910)). In sum, even "impulses prompted by dictates of conscience as well as those engendered by divine commands are therefore safeguarded against secular intervention, so long as the

claimant conceives of the beliefs as religious in nature."

United States v Manneh, 645 F Supp 2d 98, 109 (E.D.N.Y. 2008) (quoting Patrick, 745 F2d at 158).

And conscience-based religious objections to the COVID-19 vaccine have been upheld by Courts of Appeals across the country. Passarella v. Aspirus, Inc., 108 F.4th 1005, 1007 (7th Cir. 2024); Ringhofer v. Mayo Clinic, Ambulance, 102 F.4th 894, 901 (8th Cir. 2024); Lucky v. Landmark Med. of Michigan, P.C., 103 F.4th 1241, 1243 (6th Cir. 2024).

The City concedes sincerity but insists Catholicism lacks a rule precluding vaccination and relabels Rizzo's faith-based refusal as individual choice. Those centrality and verity errors are dispositive.

## III. It Is Undisputed That Rizzo Was Terminated For Failing To Comply With the Vaccine Mandate.

Title VII makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise discriminate … with respect to compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Defendant's termination of Rizzo's employment is an adverse employment action. Zelnick v. Fashion Inst. Tech., 464 F.3d 217, 225 (2d Cir. 2006) (termination qualifies as adverse employment actions for purposes of Title VII claims); Bowles v. New York City Transit Auth., 285 F. App'x 812, 813 (2d Cir. 2008) (discipline prong of failure to accommodate prima facie case satisfied by "adverse employment action," which includes "termination of employment").

After denying his accommodation, the City emailed Rizzo to provide proof of vaccination within three days or be placed on leave without pay; it then placed him on unpaid leave and issued termination notices citing noncompliance with the Vaccine Mandate. (SOMF ¶128; Ex. 18, Citywide Panel Denial; SOMF ¶154; Ex. 19, Termination Notices, p. 1). The Second Circuit

recognizes "that the notice of termination itself constitutes an adverse employment action".

Shultz v. Congregation Shearith Israel of City of New York, 867 F.3d 298, 305–06 (2d Cir.

2017). The City then terminated Rizzo's employment, explicitly due to the failure to comply

with the Vaccine Mandate (SOMF ¶1; Answer, ECF No. 43 ¶14; SOMF ¶ 155; Ex. 19,

Termination Notices, p. 2; Ex. 1, Rizzo Dep. 94:23-95:8; see Answer, ECF No. 43 ¶54) —a basis

the City admits in its Answer. (SOMF ¶154-155; Answer, ECF No. 43 ¶53-54). This constitutes

an adverse employment action.

Moreover, the NYCHRL does not require that Rizzo demonstrate that was subjected to an

adverse employment action. N.Y.C. Admin. Code § 8–107(3)(a). "A person is aggrieved even if

that person's only injury is the deprivation of a right granted" by the NYCHRL, including the

right to a reasonable accommodation. Admin. Code §8-502(h)(2).

**IV.    It Is Undisputed That the Defendant Failed To Engage In A Cooperative Dialogue.**

The NYCHRL requires a timely, individualized cooperative dialogue before an employer

denies an accommodation. N.Y.C. Admin. Code § 8-107(28). The Council enacted this mandate

to make the dialogue independently actionable, correcting prior case law. See Hosking v.

Memorial Sloan-Kettering Cancer Ctr., 186 A.D.3d 58, 63–64 (1st Dep't 2020); Jacobsen v.

N.Y.C. Health & Hosps. Corp., 22 N.Y.3d 824, 838 (2014); See Report of the Governmental

Affairs Division, Comm. on Civil Rights, at 4731.

The Defendant admits that it is obligated to engage in cooperative dialogue with employees

who sought a reasonable accommodation related to the Vaccine Mandate. (SOMF ¶147; Answer,

ECF No. 43 ¶248). Yet no one from DSNY discussed Rizzo's request with him beyond a

template RFI. (SOMF ¶152-153; Ex. 11, DSNY 30(b)(6) Witness Dep. 139:9-15, 139:21-140:5;

see also Ex. 20, Defendants' Response to Plaintiff's Interrogatories, Response No. 16. And the

Citywide Panel did not communicate with Rizzo at all. (Ex. 16, City 30(b)(6) Witness Dep. 38:21-24; Ex. 10, Pl.'s Requests for Admission, No. 7, deemed admitted).[5]

After receiving the RFI, Rizzo called Morella to clarify what DSNY wanted so he could "supply exactly what they needed," then called again; no one returned his calls. (SOMF ¶158-159; Ex. 1, Rizzo Dep. 70:1-3; 70:5-12; 73:21-74:4; 70:19-21, 75:75:1-4; SOMF ¶85-86, Ex. 1, Rizzo Dep. 71:1-19; Ex. 10, Pl.'s Requests for Admission, No. 17-18, deemed admitted; Ex. 11, DSNY 30(b)(6) Witness Dep. 237:3-11). Lacking guidance, Rizzo "put together what [he] thought was pretty good at the time, trying to explain something that's very hard to explain," stating he did not understand what DSNY wanted and explicitly asking whether DSNY sought particular materials (e.g., proof of completion of his Sacraments). (SOMF ¶ 60-61; Ex. 1, Rizzo Dep. 71:1-19, 75:8-10; SOMF ¶71, 73; Ex. 13, Supplemental Information, p. 1; Ex. 11, DSNY 30(b)(6) Witness Dep. 207:12-14). No one responded to any of Rizzo's questions or followed up. (SOMF ¶85-86; Ex. 11, DSNY 30(b)(6) Witness Dep. 237:3-11; Ex. 1, Rizzo Dep. 71:1-19; Ex. 10, Pl.'s Requests for Admission, No. 17-18, deemed admitted; see SOMF ¶153; Ex. 11, DSNY 30(b)(6) Witness Dep. 139:21-140:5); see also Ex. 20, Defendants' Response to Plaintiff's Interrogatories, Response No. 16).

DSNY then denied Rizzo's request with a boilerplate letter with no rationale (SOMF ¶89; Answer, ECF No. 43 ¶7; Ex. 11, DSNY 30(b)(6) Witness Dep. 242:15-243:14; 243:16-23; 240:18-23; see Ex. 14, DSNY Denial), admittedly without ever communicating with Rizzo about his request. (SOMF ¶152; Ex. 11, DSNY 30(b)(6) Witness Dep. 139:9-15). The Citywide Panel

---

[5] And to be clear, none of these statutorily required topics were *ever* discussed with Rizzo. The Defendants did not communicate with Plaintiff regarding his accommodation needs, potential accommodations that may address his accommodation needs, or the difficulties that potential accommodations to the Vaccine Mandate may pose. (SOMF ¶148-150; Ex. 10, Pl.'s Requests for Admission, No. 7, 19-21, deemed admitted; see Ex. 16, City 30(b)(6) Witness Dep. 38:21-24).

likewise denied his request, also admittedly without communicating with him, issuing a letter stating only that the request "does not meet criteria". (SOMF ¶151; Ex. 16, City 30(b)(6) Witness Dep. 38:21-24; Ex. 10, Pl.'s Requests for Admission, No. 7, deemed admitted; SOMF ¶127; Ex. 18, Citywide Panel Denial). Even the denial letters gave Rizzo no indication "why his application did not qualify for an accommodation." Compare Marsteller v. City of New York, 217 A.D.3d 543, 545 (2023).

As this Court has already observed, this is "a long way from the framework of cooperative problem solving based on open and individualized exchange in the workplace that" the NYCHRL requires. Rizzo v. New York City Dep't of Sanitation, 2024 WL 3274455, at *4 (S.D.N.Y. July 2, 2024) (quoting Phillips, 66 A.D.3d at 175). The NYCHRL "clearly requires a more rigorous process" than what occurred here. Rizzo, 2024 WL 3274455, at *4 (quoting Hosking, 186 A.D.3d at 63); see Goldman v. Sol Goldman Invs. LLC, 2022 WL 6564021, at *9 (S.D.N.Y. Aug. 5, 2022), report and recommendation adopted, No. 1:20-CV-06727-MKV-SN, 2022 WL 4482296 (S.D.N.Y. Sept. 27, 2022) (finding no cooperative dialogue where Defendants failed to address Plaintiff's specific accommodation needs, relying instead on general COVID-19 measures, and did not discuss alternative accommodations); Heiden v N.Y.C. Health & Hosps. Corp., 2023 WL 171888, at *33–34 (S.D.N.Y. Jan. 11, 2023) (finding no cooperative dialogue where no discussion of his disability, potential accommodations, or employer's challenges).

## CONCLUSION

Because the undisputed record establishes Rizzo's prima facie case and the City's denial rests only on impermissible centrality/verity rationales (with no undue-hardship defense), the Court should grant summary judgment on his Title VII, NYSHRL, and NYCHRL failure-to-accommodate claims and on his NYCHRL cooperative-dialogue claim.

28

Dated:  Staten Island, New York

      August 22, 2025                                Respectfully submitted,

                                                  _____

                                                  Christina Martinez, Esq.
                                                  Law Offices of Christina Martinez
                                                  245 Bricktown Way, Suite J
                                                  Staten Island, NY 10309
                                                  T: (347) 215-4543
                                                  ChristinaMartinezEsq@gmail.com

29

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITS

Pursuant to the Court's Individual Rules and Practices and Local Civil Rule 7.1, I certify that Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment contains 8,674 words, as determined by the word-count function of Microsoft Word.

In making this certification, I have included all text in the body and footnotes and excluded the caption, table of contents, table of authorities, signature block, and this certificate, consistent with the Court's rules. I further certify that the brief uses 12-point font throughout, including footnotes.

Dated: Staten Island, New York          Respectfully submitted,
           August 22, 2025

                                         _____
                                         Christina Martinez, Esq.
                                         245 Bricktown Way, Suite J
                                         Staten Island NY 10309
                                         T: (347) 215-4543
                                         ChristinaMartinezEsq@gmail.com

                                         *Attorney for Plaintiff*